# United States Court of Appeals

*for the*

# Fifth Circuit

Case No. 25-11185

In the Matter of HIGHLAND CAPITAL MANAGEMENT, L.P.

*Debtor,*

NEXPOINT REAL ESTATE PARTNERS, L.L.C.,

*Appellant,*

v.

HIGHLAND CAPITAL MANAGEMENT, L.P.,

*Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS IN CASE NO. 3:24-CV-1479,
KAREN GREN SCHOLER, U.S. DISTRICT JUDGE

## BRIEF FOR APPELLANT

AMY LYNNE RUHLAND
BENJAMIN L. BERNELL
PILLSBURY WINTHROP SHAW
    PITTMAN, L.L.P.
*Attorneys for Appellant NexPoint
    Real Estate Partners, LLC (f/k/a
    HCRE Partners, LLC)*
401 West 4th Street, Suite 3200
Austin, Texas 78701
(512) 580-9600
amy.ruhland@pillsburylaw.com
ben.bernell@pillsburylaw.com

# CERTIFICATE OF INTERESTED PERSONS AND DISCLOSURE STATEMENT

The undersigned counsel of record certifies that the following persons and entities as described in the fourth sentence of Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal

Appellant:
NexPoint Real Estate Partners, LLC f/k/a HCRE Partners, LLC

*Counsel for Appellant in the Fifth Circuit*:
Amy L. Ruhland
Pillsbury Winthrop Shaw Pittman LLP

*Counsel for Appellant NexPoint Real Estate Partners, LLC f/k/a HCRE Partners, LLC in the District Court proceedings*:
Amy L. Ruhland
Pillsbury Winthrop Shaw Pittman LLP

Charles W. Gameros Jr.
Douglas Wade Carvell
Hoge & Gameros, LLP

Appellee:
Highland Capital Management, L.P.

*Counsel for Appellee:*
John A. Morris
Jeffery N. Pomerantz
Gregory V. Demo
Hayley R. Winograd
Pachulski Stang Ziehl & Jones LLP

Zachary Annable
Melissa Sue Hayward
Hayward Law Firm

/ s / Benjamin L. Bernell
Benjamin L. Bernell

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument would aid the Court's decisional process. This is an appeal from a bankruptcy proceeding unnecessarily complicated by multiple erroneous rulings of the bankruptcy court. Those errors resulted in an unnecessarily substantial record on appeal. In pertinent part, the bankruptcy court refused to allow Appellant NexPoint Real Estate Partners, LLC (f/k/a HCRE Partners, LLC) ("HCRE") to withdraw a proof of claim it no longer wished to pursue, forcing HCRE to continue discovery and argue for a win at an evidentiary hearing it affirmatively tried to avoid. The bankruptcy court then used the evidentiary hearing that it foisted upon HCRE to support sanctions against the company, reasoning that HCRE's effort to withdraw the claim and continued pursuit of it was in bad faith. On this basis, the bankruptcy court concluded that HCRE should pay the bulk of the fees and costs Appellee Highland Capital Management, L.P. ("Highland") incurred in connection with the proof of claim. Oral argument will allow the Court to better understand the complex timeline and procedural background involved and why reversal is the necessary and just outcome.

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION ............................................................ 1

INTRODUCTION ................................................................................... 3

ISSUES PRESENTED ........................................................................... 5

I.     STATEMENT OF THE CASE ...................................................... 6

   A.  The Parties and Underlying Bankruptcy .............................. 7

   B.  HCRE Files a Single, Indefinite Proof of Claim in the
       Highland Bankruptcy ................................................................ 9

   C.  Highland Objects to the POC, and HCRE Hires
       Independent Counsel to Pursue the Claim ............................ 10

   D.  Highland Belatedly Moves to Disqualify HCRE's Counsel,
       Triggering Months of Litigation .............................................. 12

   E.  HCRE Retains New Counsel, and the Parties Engage in
       Further Discovery ..................................................................... 13

   F.  HCRE Moves to Withdraw the POC, Highland Objects,
       and the Bankruptcy Court Denies the Motion ........................ 14

   G.  The Bankruptcy Court Denies HCRE's Motion to
       Withdraw and Forces HCRE to Defend Itself in an
       Evidentiary Hearing ................................................................. 24

   H.  The Bankruptcy Court Disallows HCRE's POC, and
       Highland Files its Bad Faith Motion ...................................... 25

   I.  The Bankruptcy Court Grants Highland's Request for a
       Bad Faith Finding and Sanctions and Denies
       Reconsideration ....................................................................... 27

       1.  The Bad Faith Finding ...................................................... 27

       2.  The Reconsideration Order ................................................ 31

II.    STANDARD OF REVIEW ........................................................... 32

III.   SUMMARY OF THE ARGUMENT ........................................... 34

IV.  ARGUMENT AND AUTHORITIES ........................................ 38

i

A. The Bankruptcy Court Erred in Issuing the Sanctions
Order ....................................................................................38

1. There Is No Clear and Convincing Evidence to Support
the Bankruptcy Court's Bad Faith Findings and
Invocation of its Inherent Powers .....................................39

a. HCRE did not file the POC in bad faith. ......................40

b. HCRE did not pursue the POC in bad faith. ................43

2. The Bankruptcy Court's Punitive Sanction Exceeded
its Authority Under Bankruptcy Code § 105 ....................52

B. The Bankruptcy Court Repeated Its Errors in Denying
Reconsideration ....................................................................59

C. The District Court Abused its Discretion by Affirming the
Bankruptcy Court's Decisions.................................................62

CONCLUSION ........................................................................65

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Am. Unites for Kids v. Rousseau*,
    985 F.3d 1075 (9th Cir. 2021) ............................................................. 63

*B & H Med., L.L.C. v. ABP Admin., Inc.*,
    354 F. Supp. 2d 746 (E.D. Mich. 2005), aff'd, 526 F.3d 257
    (6th Cir. 2008) ................................................................................. 48

*BDT Products, Inc. v. Lexmark Intern., Inc.*,
    602 F.3d 742 (6th Cir. 2010) ............................................................ 48

*Matter of Carroll*,
    850 F.3d 811 (5th Cir. 2017) ............................................................ 33

*Chaves v. M/V Medina Star*,
    47 F.3d 153 (5th Cir. 1995) .............................................................. 34

*In re Cushman*,
    589 B.R. 469 (Bankr. D. Me. 2018) ........................................... 41, 42

*In re Dunn*,
    620 B.R. 228 (S.D.N.Y. 2020) .......................................................... 64

*In re Frantz*,
    655 B.R. 594 (B.A.P. 9th Cir. 2023) ................................................ 64

*Ex Parte Garland*,
    71 U.S. 333 (1866) ........................................................................... 19

*Goldin v. Bartholow*,
    166 F.3d 710 (5th Cir. 1999) ............................................................ 34

*Goodyear Tire & Rubber Co. v. Haeger*,
    581 U.S. 1010 (2017) ....................................................................... 63

*In re Highland Capital Mgmt., L.P.*,
   No. 19-34054-sgj (Bankr. N.D. Tex.), Dkt. 3 ............................. 7, 8, 17

*Int'l Union, United Mine Workers of Am. v. Bagwell*,
   512 U.S. 821 (1994) ............................................................... 52

*In re Isom*,
   321 B.R. 756 (Bankr. N.D. Ga. 2005) ................................. 42

*J.C. Penney Corp., Inc. v. Oxford Mall, LLC*,
   100 F.4th 130 (11th Cir. 2024) .......................................... 55

*LeCompte v. Mr. Chip, Inc.*,
   528 F.2d 601 (5th Cir. 1976) ....................................... 15, 16

*In re Lowenschuss*,
   67 F.3d 1394 (9th Cir. 1995) ............................................. 50

*Maguire Oil Co. v. City of Houston*,
   143 F.3d 205 (5th Cir. 1998) ............................................. 55

*In re McCoy*,
   666 F.3d 924 (5th Cir. 2012) ............................................. 32

*McKesson Corp. v. Syracuse Hematology Oncology, P.C.*,
   No. CIVA 3:08-CV-01357-0 2008 WL 3992301 (N.D. Tex.
   Aug. 27, 2008) ................................................................... 16

*Moody v. Amoco Oil Co.*,
   734 F.2d 1200 (7th Cir. 1984) ........................................... 62

*In re Moore*,
   739 F.3d 724 (5th Cir. 2014) ..................................... *passim*

*In re Moore*,
   739 F.3d at 729–30 .............................................. 33, 39, 51

*NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P.*,
   48 F.4th 419 (5th Cir. 2022) ............................................. 56

iv

*Matter of Overly-Hautz Co.*,
   81 B.R. 434 (Bankr. N.D. Ohio 1987) ...............................................56

*In re Snyder*,
   472 U.S. 644 (1985)...................................................................... 19, 23

*The Charitable DAF Fund. L.P. v. Highland Capital
   Management, L.P.*,
   98 F.4th 170 (5th Cir. 2024) ..................................................... *passim*

## Federal Statutes

United States Code
   Title 11, Section 105 ................................................................ *passim*
   Title 28, Section 57(b)(1).....................................................................1
   Title 28, Section 57(b)(2)(A)...............................................................1
   Title 28, Section 57(b)(2)(B)...............................................................1
   Title 28, Section 57(b)(2)(O)...............................................................1
   Title 28, Section 158(d)(1)...................................................................2

## Rules

Federal Rules of Appellate Procedure
   Rule 32 ...............................................................................................66

Federal Rules of Bankruptcy Procedure
   Rule 3006 ..................................................................................... 17, 60
   Rule 3006(b) ................................................................................. 56, 60
   Rule 8002(a)(1) ..................................................................................32
   Rule 8015(a)(5) ..................................................................................66
   Rule 8015(a)(7)(B) .............................................................................66
   Rule 9011 ..................................................................... 12, 18, 40, 44
   Rule 9011(b) ................................................................................. 40, 41

# STATEMENT OF JURISDICTION

The United States Bankruptcy Court for the Northern District of Texas, Dallas Division exercised jurisdiction under 28 U.S.C. § 157(b)(1) and (b)(2)(A), (B), and (O).  On March 5, 2024, the bankruptcy court entered its Memorandum Opinion and Order Granting Highland Capital Management, L.P.'s Motion for (A) Bad Faith Finding and (B) Attorneys' Fees Against NexPoint Real Estate Partners, LLC (f/k/a HCRE Partners, LLC) in Connection with Proof of Claim # 146 ("Sanctions Order").  On March 20, 2024, Appellant NexPoint Real Estate Partners, LLC (f/k/a HCRE Partners, LLC) ("HCRE") timely filed a notice of appeal of the Sanctions Order.  ROA.394.

On March 18, 2024, HCRE timely filed a Motion for Relief from Order seeking reconsideration of the Sanctions Order.  ROA.12397.  On May 21, 2024, the bankruptcy court issued its Order Denying Motion of NexPoint Real Estate Partners, LLC (f/k/a HCRE Partners, LLC) Seeking Relief from Order Pursuant to Fed. R. Bankr. P. 9024 and Fed. R. Civ. P. 60(b)(1) and (6) ("Reconsideration Order").  ROA.12484.  On June 4, 2024, HCRE timely filed an amended notice of appeal seeking review of the Reconsideration Order in addition to the Sanctions Order.

1

ROA.468.  On September 22, 2025, the district court issued its order affirming the Sanctions Order and the Reconsideration Order. ROA.17579.  HCRE timely filed a notice of appeal on October 22, 2025. ROA.17586.

Accordingly, this Court has jurisdiction under 28 U.S.C. § 158(d)(1) over this appeal from a final decision of the district court.

# INTRODUCTION

This appeal stems from an order issued by the bankruptcy court sanctioning Appellant NexPoint Real Estate Partners, LLC (f/k/a HCRE Partners, LLC) ("HCRE") approximately $825,000 for filing (and then attempting to withdraw) a single proof of claim in bankruptcy. Much like *The Charitable DAF Fund. L.P. v. Highland Capital Management, L.P.*, 98 F.4th 170, 176–77 (5th Cir. 2024)—where this Court vacated a sanctions order because the costs incurred by Highland Capital Management, L.P. ("Highland") were caused by a bankruptcy court-sanctioned witch-hunt—the costs incurred by Highland in this case were largely by Highland and the bankruptcy court's baseless speculation about HCRE's motives and the court's desire to punish HCRE's manager, James Dondero.[1]

In issuing the Sanctions Order, the bankruptcy court reasoned that, because Dondero did not personally investigate the proof of claim or read the claim form prior to authorizing outside counsel to affix his electronic

---

[1] This is a playbook invoked recurrently by the bankruptcy court in the Highland bankruptcy, as Dondero and various other bankruptcy constituents have repeatedly complained. Notably, in response to several judicial misconduct complaints and censure by this Court, Chief Judge Jernigan recently recused herself from pending proceedings in the Highland bankruptcy. *See* Dkt. 4491.

3

signature to it, HCRE must have acted in bad faith in filing the claim. The bankruptcy court reached that conclusion even though nobody has ever suggested that the proof of claim was inaccurate or false. The bankruptcy court further determined that HCRE pursued the proof of claim in bad faith, notwithstanding its employment of sophisticated outside counsel (including former Bankruptcy Judge D. Michael Lynn) and notwithstanding HCRE's good faith attempt to withdraw the proof of claim with prejudice before discovery had closed and **months before** any potential evidentiary hearing on the claim. The bankruptcy court refused to allow withdrawal, largely because Highland vigorously opposed it, forcing HCRE to continue discovery and attend an evidentiary hearing it tried to avoid. The bankruptcy court then used the evidentiary hearing forced on HCRE to support a bad faith finding, reasoning that HCRE's hearing evidence did not support the claim, and thus, HCRE must have pursued the claim in bad faith.

On this basis, the bankruptcy court ordered HCRE to pay the bulk of the fees and costs Highland incurred in connection with the claim proceedings. The district court rubber stamped the bankruptcy court's decision, stating without analysis that the bankruptcy court's rulings

4

were correct.

As the evidence demonstrates, the only reason that Highland incurred more than $825,000 in fees and costs is because Highland chose to continue down an unnecessary warpath, opposing HCRE's effort to withdraw the proof of claim. And because the bankruptcy court, true to form, was content to blame Dondero for all of HCRE's actions, the court facilitated and encouraged Highland's actions every step of the way. Simply put, Highland and the bankruptcy court forced HCRE to pursue a claim it sought to withdraw, and the bankruptcy court's resulting punitive sanctions award against HCRE should be reversed.

## ISSUES PRESENTED

1.    Did the bankruptcy court err by finding clear and convincing evidence that HCRE filed Proof of Claim # 146 (the "POC") in bad faith when it is undisputed that HCRE acted on the advice of counsel in filing the POC, where the POC explicitly disclosed that it was indefinite and dependent upon discovery, and where there is no evidence that anything in the POC was false or inaccurate?

2.    Did the bankruptcy court err by finding clear and convincing evidence that HCRE pursued the POC in bad faith even though

5

Highland's sanctions motion did not make that argument and even though HCRE indisputably attempted to withdraw the POC **with prejudice** before the close of discovery and months before any evidentiary hearing on the POC?

3.     Did the bankruptcy court exceed its authority under Bankruptcy Code § 105 by awarding Highland fees it incurred after thwarting HCRE's request for a with-prejudice withdrawal of the POC on the theory that HCRE caused those fees?

4.     Did the bankruptcy court abuse its discretion in denying reconsideration?

5.     Did the district court abdicate its responsibility to conduct a de novo review of the bankruptcy court's findings of bad faith and a causal connection between the alleged misconduct and the sanctions awarded, such that the district court erred in affirming the bankruptcy court's Sanctions Order and Reconsideration Order?

## I.     STATEMENT OF THE CASE

This appeal arises from an order of the bankruptcy court invoking its inherent powers under 11 U.S.C. § 105 to sanction HCRE more than $825,000 for its supposed "bad faith" in filing and pursuing a single proof

of claim in bankruptcy. On appeal, the district court affirmed the sanction without engaging in any analysis or identifying evidence supporting its conclusions. The history of that proof of claim, and the procedural turmoil that followed, are central to the issues on appeal.

## A. The Parties and Underlying Bankruptcy

Highland filed a Chapter 11 petition in bankruptcy in October 2019. *In re Highland Capital Mgmt., L.P.,* No. 19-34054-sgj (Bankr. N.D. Tex.), Dkt. 3. Prior to bankruptcy, Highland's business consisted primarily of advising investors and managing investments totaling billions of dollars. ROA.1814.

In the summer of 2018, HCRE and Highland created a company called SE Multifamily Holdings, LLC ("SE Multifamily). ROA.1815–16. SE Multifamily was governed by a Limited Liability Company Agreement ("LLC Agreement") and was created to hold properties being acquired by HCRE. ROA.1815.

To obtain third-party financing for the property acquisitions, HCRE (as lead borrower), Highland, and five other entities agreed to become co-borrowers on a bridge loan for about half the total purchase price. ROA.1816.

7

Several months after the transaction closed, SE Multifamily's LLC Agreement was amended retroactively ("Amended LLC Agreement"). ROA.1818. Highland prepared the Amended LLC Agreement, which reflected membership interests grossly inconsistent with the parties' respective contributed consideration. ROA.1818. Specifically, Schedule A to the Amended LLC Agreement reflected capital contributions and membership interests as follows:

<u>Schedule A</u>

**Capital Contributions and Percentage Interests**

| Member Name | Capital Contribution | Percentage Interest |
|---|---|---|
| HCRE Partners, LLC | $ 291,146,036 | 47.94% |
| Highland Capital Management, L.P. | $ 49,000 | 46.06% |
| BH Management | $ 21,213,721 | 6.00% |

ROA.1817. HCRE filed a proof of claim in bankruptcy because it believed the SE Multifamily's organizational documents improperly allocated the members' ownership percentages. ROA.1210–1211. In pursuing its POC, HCRE argued that the parties had intended to further amend SEC Multifamily's LLC Agreement to reallocate ownership interests consistent with the members' capital contributions. ROA.1818. But before they could do so, Highland filed its Chapter 11 petition, and no further amendment was possible.

8

### B.     HCRE Files a Single, Indefinite Proof of Claim in the Highland Bankruptcy

With the assistance of outside counsel, HCRE timely filed its POC.

ROA.1214–18.  Exhibit A to the POC described the claim as follows:

> Claimant ***may be*** entitled to distributions out of SE Multifamily, but such distributions have not been made because of the actions or inactions of the Debtor. Additionally, Claimant contends that all or a portion of Debtor's equity, ownership, economic rights, equitable or beneficial interests in SE Multifamily does belong to the Debtor or ***may be*** the property of Claimant. Accordingly, Claimant ***may have*** a claim against the Debtor. Claimant has requested information from the Debtor to ascertain the exact amount of its claim. ***This process is on-going.*** Additionally, this process has been delayed due to the outbreak of the Coronavirus. Claimant is continuing to work to ascertain the exact amount of its claim and will update its claim in the next ninety days.

ROA.1218 (emphasis added).  The POC—which was couched in indefinite language expressly conveying that HCRE was still exploring the claim— did not specify any amount, did not specify any legal theory, and did not specify any basis for the claim.

James Dondero, HCRE's sole manager, and Matt McGraner, HCRE's vice president, testified that outside counsel (Bonds Ellis Eppich Shafer Jones, LLP ("Bonds Ellis"), led by former Bankruptcy Judge Lynn) prepared the POC, including its Exhibit A, and that HCRE relied on counsel's advice that filing the POC was necessary to protect the

company's interests. *See* ROA.16815–16 at 54:24–55:25, ROA.16817–18 at 59:11–60:5, ROA.16820 at 62:9–15, ROA.16821–22 at 74:23–75:8, ROA.16823–24 at 109:10–110:6. Highland never sought to depose Bonds Ellis about its investigation, nor did Highland seek to depose the in-house counsel responsible for communicating with Bonds Ellis about the POC. ROA.16815–16, 16818–19, 16820, 16821-22, 16823–24.

Indeed, nobody has ever suggested that the POC as filed was false or inaccurate in any respect. Nor did Highland, the bankruptcy court, or anyone else ever suggest that Bonds Ellis or Judge Lynn acted unethically or should be sanctioned for filing it.

## C. Highland Objects to the POC, and HCRE Hires Independent Counsel to Pursue the Claim

Highland objected to HCRE's POC in July 2020 as part of an omnibus objection to dozens of claims. ROA.1662. Highland identified 63 proofs of claim filed by a range of individuals and entities that Highland contended were "no liability claims" because the liability was not reflected in Highland's records. ROA.16626–27 at ¶ 22. HCRE's POC was among those 63 claims. *See* ROA.16640. Although many of the "no liability claims" Highland identified were either unliquidated, not specified, or later withdrawn—as is standard in complex bankruptcy

proceedings—HCRE is the only party Highland accused of acting in "bad faith" for filing a claim.

In the interim, HCRE hired new outside counsel, Wick Phillips, to pursue the POC. That October, the firm filed a response to Highland's omnibus objection that further explained the basis for the POC. ROA.16643. Specifically, the response stated:

> After reviewing what documentation is available to HCRE[] with the Debtor, HCRE[] believes the organizational documents relating to SE Multifamily Holdings, LLC … improperly allocate[] the ownership percentages of the members thereto due to mutual mistake, lack of consideration, and/or failure of consideration. As such, HCRE[] has a claim to reform, rescind and/or modify the agreement.

ROA.16644. Wick Phillips also clarified that HCRE required "additional discovery to determine what happened in connection with the memorialization of the parties' agreement and improper distribution provisions, evaluate the amount of its claim against the Debtor, and protect its interests under the agreement." ROA.16645. Crucially, Dondero did not execute an amended POC containing this language, and nobody at the time suggested that Wick Phillips filed the response in bad faith or violated its duties under Federal Rule of Bankruptcy Procedure 9011 by failing to perform a proper investigation before filing the

response.

**D.    Highland Belatedly Moves to Disqualify HCRE's Counsel, Triggering Months of Litigation**

Two months after Wick Phillips filed its response, the bankruptcy court entered a stipulated scheduling order.  Dkt. 1568.  The parties then exchanged written discovery and served deposition notices.    But Highland later adjourned the scheduled depositions.    Then, in April 2021—nearly a year after Wick Phillips appeared in the case and six months after it filed its response—Highland moved to disqualify the firm, claiming to have discovered that Wick Phillips represented Highland in one or more transactions underlying the POC.  *See* ROA.16657 at ¶ 4.

By that point, it made little sense for HCRE to dispense with its chosen counsel—especially since, as Wick Phillips reasonably believed and as Texas ethics expert Ben Selman testified, the alleged conflict was not one requiring the firm's disqualification.  *See* ROA.16811–12 at 57:7–59:17.  Neither the bankruptcy court nor anyone else has ever suggested that Wick Phillips took an unethical or sanctionable position in opposing disqualification.

At both parties' urging, the bankruptcy court entered a scheduling order permitting limited discovery into Wick Phillips' prior

12

representation of Highland and requiring the parties to file additional briefing.  Dkt. 2361; *see also* Dkt. 2757.  At the end of that process, in December 2021, the Court granted Highland's disqualification motion while denying Highland's request for reimbursement of its costs and attorneys' fees incurred in connection with the motion.  ROA.2202–03. Highland did not renew that request when it later sought sanctions against HCRE.  ROA.2203.

Even though Highland initiated that detour by moving to disqualify Wick Phillips nearly a year into the case, the bankruptcy court would later justify its Sanctions Order in part by claiming that **HCRE** "initiated a more than six-month period of expensive discovery and side litigation" in opposing Highland's disqualification motion.  *See* ROA.1717.

### E.    HCRE Retains New Counsel, and the Parties Engage in Further Discovery

After the disqualification of Wick Phillips, HCRE retained Hoge & Gameros, LLP, and in June 2022, the bankruptcy court entered a new scheduling order, which the parties later amended by agreement.  *See* Dkts. 3356, 3368, 3438.  At one point, the schedule called for fact and expert discovery to close in August ahead of a two-day evidentiary hearing in November 2022.  *See* Dkt. 3368.  But after HCRE timely

13

disclosed its expert, Highland indicated it would seek to strike that expert, so the parties agreed to push back the schedule to accommodate Highland's motion. *See* Dkt. 3438. The amended schedule provided for briefing on the motion to strike to be completed in September 2022, *see* Dkt. 3438 at ¶ 1, after which the schedule would depend on the bankruptcy court's resolution of the motion. If the bankruptcy court granted the motion, Highland would move for summary judgment within 14 days. *Id.* ¶ 2. Otherwise, Highland would file a rebuttal expert report within 21 days of the denial, after which HCRE would make its expert available for deposition. *Id.* ¶¶ 2–3. And the parties would confer on a new date for the evidentiary hearing. *Id.*

Meanwhile, limited discovery had taken place and at least two fact depositions remained to be taken: a deposition of James Dondero, and a deposition of Matt McGraner, both in his individual capacity and as a 30(b)(6) witness for HCRE. *See* Dkts. 3415, 3416, 3418.

In other words, much remained to be done, by both parties, and the case was still months away from any evidentiary hearing.

### F.   HCRE Moves to Withdraw the POC, Highland Objects, and the Bankruptcy Court Denies the Motion

Three days after the bankruptcy court amended the schedule to

14

accommodate Highland's contemplated motion to strike, on August 12, 2022, HCRE filed its Motion to Withdraw Proof of Claim ("Motion to Withdraw"). ROA.2204–12. HCRE did so after consultation with outside counsel, and "in consideration of the cost and uncertainty of continuing to pursue the Claim in the face of Debtor's objection." *See* ROA.2205. Although HCRE sought Highland's agreement to the withdrawal prior to filing the motion, Highland declined. *See* ROA.2212.

As HCRE explained in its Motion to Withdraw, the Fifth Circuit has held that "dismissal should be allowed unless the defendant will suffer some plain prejudice other than the mere prospect of a second lawsuit." ROA.2207 (citing *LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 604 (5th Cir. 1976)). Further, there are "only a limited number of circumstances that will warrant denial" of a motion to dismiss or withdraw a claim, "since 'the [court] should not require that a plaintiff continue to prosecute an action that it no longer desires to pursue'" *McKesson Corp. v. Syracuse Hematology Oncology, P.C.*, No. CIVA 3:08-CV-01357-0 2008 WL 3992301, at *2 (N.D. Tex. Aug. 27, 2008). As a result, "the prospect of a second lawsuit" or the perception of some other

"tactical advantage" are not bases to deny a motion to withdraw. *LeCompte*, 528 F.2d at 604; *see also* ROA.2207.

HCRE explained that it easily met the standards for withdrawal. ROA.2207. Again, the tasks to be completed and the costs to be incurred included fact and potential expert depositions, motion practice (including a motion to strike and a motion for summary judgment), potential rebuttal expert discovery, preparations for an evidentiary hearing, and a contemplated two-day evidentiary hearing. *See* Dkts. 3368, 3438. More importantly, the April 2020 deadline for all entities holding claims against Highland to file proofs of claim had long since passed. Dkt. 488. Had Highland consented to the withdrawal, litigation over the POC would have ended once and for all.

Nonetheless, Highland opposed withdrawal, speculating that HCRE "clearly ha[d] undisclosed motives" for its motion and hypothesizing that HCRE's "true intent" was to "avoid[] depositions now, leav[e] the specter of future litigation hanging over Highland's head, and preserv[e] the ability to re-file its claim later." *See* ROA.2231–32 at ¶¶

16

63, 67.[2] Highland thus asked the bankruptcy court to impose "terms and conditions" on HCRE's withdrawal pursuant to Bankruptcy Rule 3006, including, by issuing an "order that the withdrawal of HCRE's POC be **with** prejudice" or, "alternatively," by making clear that the bankruptcy court would "retain jurisdiction over all claims initially raised in HCRE's POC such that any refiling of such claims must be in this Court." ROA.2218 at ¶ 4.[3]

In its reply supporting the Motion to Withdraw, HCRE denied any ulterior motive and emphasized:

> HCRE has not threatened to renew litigation over the matters alleged in the Claim. Indeed, HCRE averred in the Motion [to Withdraw] that the proof of claim process is *sui generis*, that the claims bar date passed long ago, and that the Claim is not the subject of any other pending action, proceeding, or matter. There is no tactical advantage for the withdrawal, and there is no litigation that would be duplicated as a result of the

---

[2] Highland also argued that HCRE's "concerns about costs" were "not credible," since "all that remains is a few depositions and a short trial." ROA.2232 at ¶ 65. But as the scheduling orders make clear, that was untrue. *See* Dkts. 3368, 3438. Indeed, while arguing there was almost nothing left to do, Highland simultaneously indicated its intention to file a summary judgment motion, which alone would have caused both parties to incur substantial additional cost. *See* ROA.2216 at ¶ 1.

[3] The alternative relief requested by Highland was unnecessary because the bankruptcy court already had barred HCRE from "directly or indirectly" commencing or pursuing any claim for relief of any kind "against or affecting the Debtor or the property of the Debtor" without first seeking a determination by the bankruptcy court that such claim was "colorable" and obtaining the court's authorization to file such claim. *See In re Highland Capital Mgmt., L.P.*, No. 19-34054-sgj (Bankr. N.D. Tex.), Dkt. 1943 at Ex. A, Art. IX.F.

withdrawal.

ROA.2688.  In other words, there was no evidence that HCRE had some

nefarious intent (or even any strategic benefit to gain from withdrawing

the claim).  To the contrary, the bankruptcy court had before it the

representations of HCRE's counsel (made in a filing governed by Federal

Rule of Bankruptcy Procedure 9011) that the company did ***not*** seek to

pursue the POC in a different forum and only Highland's contrary

unsupported speculation that HCRE must have bad intent.

The court held a hearing on HCRE's Motion to Withdraw in

September 2022.  Dkt. 3511.  At that hearing, HCRE explained it was

seeking a withdrawal that "essentially says they [Highland] win.  So the

proof of claim is resolved in their favor except we're withdrawing it

instead of going through all of the exercise to get a hearing."  ROA.3271

at 7:4–9, *see also* ROA.3295 at 31:1–4 ("we've already said the [c]ourt

should allow us to withdraw the proof of claim and condition it with

prejudice").  Further, HCRE's counsel told the court, "to the extent the

court wishes to condition it, condition it with prejudice."  ROA.3271 at

7:18–20.

Yet Highland's counsel posited his "speculat[ion]" that HCRE (and

18

by extension, its counsel) was not "being candid with the [c]ourt," and must have filed the Motion to Withdraw "because [HCRE] hoped to do this trial in a different forum at a different time elsewhere." ROA.3285 at 21:21–24. In response, multiple lawyers for HCRE and Dondero each represented on the record that HCRE was willing to withdraw its POC **with prejudice** and to refrain from challenging Highland's interest in SE Multifamily. For example, at the hearing, the following exchanges occurred:

> The Court: . . . .Would you agree to a condition on the withdrawal of your proof of claim that your client agrees that Highland has a 46-point whatever it was percent interest in SE Multifamily Holdings and your client waives any right in the future to challenge that interest?
>
> Mr. Gameros[4]: Your Honor, if that's what the Court wants to put in an order and I have a chance to confer with my client on it, I'm pretty sure that would be agreeable.
>
> The Court: Today's the day. I'm not going to continue.
>
> Mr. Gameros: Your Honor, we'd agree with that.

---

[4] Gameros, as counsel for HCRE and as an attorney licensed in the state of Texas and admitted to practice in the United States Bankruptcy Court for the Northern District of Texas, was an officer of the court with authority to bind HCRE. Indeed, the Supreme Court of the United States has recognized this principle for more than a century. *See Ex Parte Garland*, 71 U.S. 333 (1866) ("Attorneys and counsellors are . . . officers of the court, admitted as such by its order upon evidence of their possessing sufficient legal learning and fair private character."); *In re Snyder*, 472 U.S. 644 (1985) (officers of the court enjoy singular powers that others do not possess).

> Mr. Morris: Your Honor, I'm sorry to interrupt, but waiver of any appeal too. . . .
>
> And what the debtor needs in order to avoid legal prejudice is the complete elimination of any uncertainty that it owns 46.06 percent of SE Multifamily. . . .
>
> Mr. Gameros: Your Honor, we'll agree to it.
>
> The Court: Well, you know what, this is such a big deal I really need a client representative to say that. . . .

ROA.3297 at 33:23–34:5. At that point, the bankruptcy court recessed so

that HCRE's counsel could get a client representative to make the same

representation Gameros had made:

> Mr. Gameros: Your Honor wanted me to get a representative of NexPoint Real Estate Partners to state that they agree that the estate has its 46 percent interest in the company agreement subject to the company agreement. And I've got Mr. Sauter here who has authority to speak on behalf of NexPoint Real Estate Partners.
>
> The Court: All right. Well so what is his position with HCRE?
>
> Mr. Sauter: Your Honor, I don't have – this is D.C. Sauter. I don't have an official position with HCRE, but I have spoken with Mr. Dondero and he has authorized me to appear here today and agree to the conditions that Mr. Gameros just outlined.

ROA.3299 at 35:16–36:3. That still was not sufficient for the bankruptcy

court, which characterized Sauter's representation on the record in open

20

court as "hearsay." ROA.3300 at 36:4–8.[5]  Although HCRE's counsel, to further mollify the court, he then elicited the following testimony from Dondero:

DIRECT EXAMINATION

By Mr. Gameros:

Q:    Mr. Dondero, on behalf of HCRE, do you agree as a condition for withdrawing the proof of claim that HCRE will not challenge the estate's ownership or equity interest in SE Multifamily subject to the company agreement?

A:    Yes.

Q:    Do you agree that you will not appeal and that, therefore, HCRE is waiving any appeal right to that determination as a condition of withdrawing the proof of claim?

A:    Yes.

ROA.3304 at 40:8–17.

By Mr. Gameros:

Q:    Mr. Dondero, you desire to withdraw the proof of claim.  Correct?

A:    Yes.

Q:    ***And you agree to an order denying the proof of claim with prejudice.  Correct?***

---

[5] As Gameros pointed out in response to the court's comment, Sauter (who likewise is an attorney licensed in the state of Texas representing HCRE) was also an officer of the court with authority to bind HCRE.  ROA.3300 at 36:12–23.

> A:    ***Yes.***
>
> Q:    ***And you agree that HCRE will not challenge the equity interest of its member in SE Multifamily?***
>
> A:    ***Yes.***

ROA.3307–08 at 43:23–44:6 (emphases added).  In short, there can be no doubt from this record that HCRE:

- agreed to withdraw its claim **with prejudice**;

- agreed to waive any right to appeal any order relating to its POC; and

- agreed not to challenge the equity interest of Highland in SE Multifamily.

Gameros further represented that HCRE would "not . . . challenge [Highland's interest] on the basis of anything asserted in the proof of claim, that being mistake, lack of consideration, or failure of consideration. Their 46 percent is their ownership interest in SE Multifamily and HCRE won't challenge that."  ROA.3306 at 42:13–19.

Yet again, the bankruptcy court refused to accept these binding concessions.  The court's refusal stemmed from Dondero's testimony that Highland's interest in SE Multifamily was "subject to" the company agreement—i.e., the Amended LLC Agreement governing the entity. ROA.3307.  But of course, that statement was true: every member of SE

Multifamily is bound by the company's LLC Agreement, which sets forth their rights and obligations vis-à-vis the company.[6]  Dondero's only point was that the LLC Agreement could be amended in the future to account for capital needs, resulting capital calls, new investment dollars, and the like.  ROA.3307 at 43:2–13.  To be clear, Highland and the bankruptcy court were demanding a concession that, even if SE Multifamily later made a capital call that was funded by other members but not by Highland, Highland's ownership percentage would not change.  Nothing in law or equity required HCRE to agree to that, particularly in view of HCRE's repeated assurances that it would withdraw its POC with prejudice.

In short, the bankruptcy court's repeated conclusion that HCRE refused to withdraw its POC with prejudice (and attempted to preserve the fight for another day) is wrong.

---

[6] Even Highland agreed—as it must—that its "rights and obligations as a member of SE Multifamily are subject to the [LLC] agreement."  ROA.3305 at 41:10–14. Highland argued, however, that its "ownership interest" in SE Multifamily somehow exists independently of the LLC Agreement.  ROA.3305 at 41:10–14.  That makes no sense and is contrary to arguments Highland made at the evidentiary hearing on HCRE's POC.  ROA.3280–81 at 16:24–17:10.

### G. The Bankruptcy Court Denies HCRE's Motion to Withdraw and Forces HCRE to Defend Itself in an Evidentiary Hearing

After the hearing, the bankruptcy court issued an order denying HCRE's Motion to Withdraw "for reasons set forth on the record." ROA.564; *see also* ROA.3326.

Subsequently, Highland took the remaining fact depositions, and the parties prepared for and attended the evidentiary hearing ordered by the bankruptcy court. The Sanctions Order would later criticize HCRE's counsel for arguing at that hearing that the bankruptcy court should "grant the proof of claim and reallocate the equity [in SE Multifamily] based on the capital contribution[s]." ROA.566. But it is unclear what else HCRE's counsel was supposed to do in a circumstance where HCRE was being forced to defend a position in an evidentiary hearing it did not want and sought to avoid by withdrawing its POC months earlier. In that unusual procedural posture, counsel did the only logical and ethical thing he could do—he zealously defended his client's position.

At the evidentiary hearing, Highland's counsel for the first time asked the bankruptcy court to make a finding of "bad faith" in connection with HCRE's "filing" of the POC. *See* ROA.3265–325. The court declined

24

to make the requested finding.   ROA.3265–325.

The bankruptcy court entered an order disallowing HCRE's POC in April 2023.[7]  ROA.11643–720.

## H.    The Bankruptcy Court Disallows HCRE's POC, and Highland Files its Bad Faith Motion

In June 2023, Highland filed a Motion for (A) Bad Faith Finding and (B) Attorneys' Fees Against NexPoint Real Estate Partners LLC (f/k/a HCRE Partners, LLC) in Connection with Proof of Claim # 146 ("Bad Faith Motion").  ROA.11721–32.  Highland's motion was two pages and advanced only two arguments.   First, Highland contended that HCRE filed the POC in bad faith, positing that Dondero conducted no diligence and had no basis to believe that the POC was truthful.  *See* ROA.11729 at ¶ 21.  Highland did not, however, challenge the accuracy of anything contained in the POC Dondero signed.  Second, Highland argued that it was entitled to a sanction in the form of recoupment of its

---

[7] In its Sanctions Order, the bankruptcy court observes that HCRE did not appeal the disallowance of its POC.  ROA.551.  But because HCRE repeatedly represented that it did not want to pursue the POC (and, at the court's urging, repeatedly agreed to waive any right to appeal the claim's withdrawal), it made no sense to appeal the denial of the claim.

attorneys' fees and expenses, citing as evidence various invoices of fees and expenses incurred.  ROA.11730, ¶¶ 24–26.

Highland's motion contained a single paragraph regarding Wick Phillips, merely recounting that Wick Phillips represented HCRE until the firm was disqualified in December 2021.  ROA.11724 at ¶ 8. Highland did not contend that HCRE acted in bad faith in opposing Wick Phillips' disqualification.

HCRE's opposition brief responded directly to Highland's two arguments, explaining why HCRE had a good faith basis to file the POC and contending that the fees Highland sought were excessive. ROA.12206–13 at ¶¶ 50–63.

Highland then made multiple new arguments in its reply brief (which was four pages longer than its motion).  ROA.12216.  Highland argued for the first time that HCRE and its principals acted in bad faith by opposing Highland's motion to disqualify Wick Phillips and asked the court to "find that [HCRE's] opposition to Highland's Disqualification Motion was made in bad faith."  ROA.12217–20 at ¶¶ 2, 12–14.  Because that argument did not feature in Highland's motion, HCRE had not addressed it in its opposition.

In addition, Highland argued for the first time that HCRE did not just *file* its POC in bad faith but also ***tried to preserve the substance of its claim*** in bad faith.  ROA.12221–22 at ¶¶ 18–20.  Because that argument also was absent from Highland's motion, HCRE had no notice that Highland's request for sanctions was premised on HCRE's actions taken through the closing argument at the evidentiary hearing.

HCRE told Highland it intended to move to strike these new arguments or for permission to file a sur-reply.  Ultimately, Highland agreed to strike the Wick Phillips argument but refused to strike its other new arguments.  *See* ROA.12235 at ¶¶ 11–14.  HCRE therefore sought leave to file a sur-reply at the hearing on Highland's motion, but the bankruptcy court denied that request.  ROA.12232–246.

## I.   The Bankruptcy Court Grants Highland's Request for a Bad Faith Finding and Sanctions and Denies Reconsideration

### 1.   The Bad Faith Finding

In March 2024, the bankruptcy court issued its Sanctions Order, concluding that HCRE "acted in bad faith and willfully abused the judicial process in filing, prosecuting, and then pursuing an eleventh-hour withdrawal of its Proof of Claim."  ROA.582.  In reaching this

conclusion, the bankruptcy court adopted *all* of Highland's new arguments—even its withdrawn argument concerning Wick Phillips' disqualification. *See* ROA.597–598, 601, 609. The court ordered HCRE to reimburse Highland's attorneys' fees and costs in the amount of $825,940.55. ROA.48. Notably, about $375,000 of those fees were incurred *after HCRE agreed to withdraw the POC with prejudice*. *See* ROA.12035–181, 12205 at ¶ 43.

The bankruptcy court first found that HCRE filed its POC in bad faith because Dondero allegedly executed the POC without personally investigating it. *See* ROA.589–92. Indeed, the bankruptcy court spent nearly four pages of its Sanctions Order castigating Dondero for all the things he personally did not do before authorizing his lawyers (who the bankruptcy court acknowledges prepared and filed the POC) to affix his electronic signature to the claim form. *See* ROA.589–92. But conspicuously absent was any conclusion (or even suggestion) that the POC Dondero signed was false or inaccurate. Nor could the court make such a finding. The court flatly acknowledged that the POC "was not in a liquidated amount and was somewhat ambiguous." ROA.580. That is an understatement. As set forth above, the POC said only that HCRE

"***may*** have a claim against the Debtor" but that HCRE needed additional information to make that determination. ROA.1218 and *supra*. There is nothing facially false or inaccurate about the POC.

Next, adopting Highland's arguments raised for the first time in reply, the bankruptcy court concluded that HCRE's "***litigation strategy and actions*** in prosecution of its Proof of Claim (including vigorous opposition to the Disqualification Motion, the timing of the Motion to Withdraw, and its repeat and overt attempts to preserve the very claims upon which is Proof of Claim was based in connection with the Motion to Withdraw) demonstrates bad faith and a willful abuse of the judicial process on the part of NexPoint/HCRE." ROA.598 (emphasis in original). But in reaching this conclusion, the bankruptcy court made several observations and findings that are wrong.

First, the court rebuked HCRE for "initiating a more than six-month period of expensive discovery and side litigation" over the disqualification of its chosen counsel, Wick Phillips. ROA.594. But the court simultaneously acknowledged that ***Highland***, not HCRE, initiated that "side litigation" by moving for disqualification nearly six months after Wick Phillips made its appearance in the case and was firmly

29

entrenched in the dispute. ROA.593. The bankruptcy court further acknowledged that it ***denied*** Highland's prior request for a fee-shifting sanction against HCRE for fighting the disqualification motion and that Highland had not renewed that request. ROA.594–95.

Second, the bankruptcy court invoked rank speculation to justify its conclusion that HCRE engaged in "gamesmanship" by seeking to withdraw the POC. To this end, the court rhetorically asked, "Query why might NexPoint/HCRE have done this [filed a Motion to Withdraw at the time it did]?" ROA.595. The court then injected its own theory in response to that question and concluded, based on its own "concern[]" rather than any actual evidence of record, that the timing of the Motion to Withdraw "reflected gamesmanship." ROA.594–95.

Finally, the bankruptcy court's conclusion that HCRE attempted to preserve its claim for another day rested on two equally specious observations: (1) that HCRE refused to agree "unequivocally" that it would "waiv[e] the right to relitigate or challenge the issue of Highland's 46.06% interest in SE Multifamily" for any reason ever; and (2) that the parties' counsel were unable to agree on a proposed order allowing withdrawal of the proof of claim. ROA.597. The bankruptcy court's

Sanctions Order particularly fixated on the first of these conclusions, repeatedly insisting (despite the testimony at the withdrawal hearing) that HCRE refused to withdraw its POC "with prejudice." ROA.581, 596, 605. And the court cited no evidence that the patries' failure to agree on a proposed order was caused by HCRE's efforts to preserve its claim.

### 2.     The Reconsideration Order

On April 18, 2024, HCRE timely filed a Motion for Relief from Order ("Reconsideration Motion") seeking reconsideration.   ROA.12397–450. HCRE argued that the bankruptcy court erroneously concluded that HCRE had refused to withdraw its POC "with prejudice," pointing to the extensive contrary testimony of record.  ROA.12400.  HCRE also argued that the court's analysis of the "but for" reasons for Highland's incurrence of attorneys' fees and costs was legally incorrect, such that the court's fee-shifting sanction was erroneous.  Finally, HCRE objected to the court's decision to rely on the arguments Highland raised for the first time in its reply brief, which unfairly prejudiced HCRE.  HCRE therefore asked the bankruptcy court to reconsider and/or reduce the sanctions award. ROA.12394-421.

The bankruptcy court denied reconsideration.  ROA.12484–91.  The

court insisted yet again that HCRE refused to withdraw its POC with prejudice. ROA.12489. The court also suggested that, to the extent it was wrong about that conclusion, the mistake did not matter because HCRE failed to appeal the court's denial of the Motion to Withdraw. ROA.12490. Finally, the court circularly justified the award of fees that Highland incurred after successfully preventing withdrawal on the ground that the court "never would have ordered trial on the merits if not for" HCRE's filing of the POC and purported refusal to withdraw it with prejudice. ROA.12491.

HCRE timely appealed. ROA.394, 468; *see* Fed. R. Bankr. P. 8002(a)(1). On September 22, 2025, the district court issued its Memorandum Opinion and Order. ROA.17579. Although tasked with performing a de novo review of the bankruptcy court's findings of fact and conclusions of law, the district court simply stated that it reviewed the bankruptcy court's decision and found it to be correct. ROA.17583–85. The district court's opinion identifies no evidence of record to support its conclusion and contains no analysis explaining its affirmance.

## II.    STANDARD OF REVIEW

This Court "review[s] a district court's affirmance of a bankruptcy

court decision by applying the same standard of review to the bankruptcy court decision that the district court applied." *In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012).  In the context of a bankruptcy court order awarding sanctions pursuant to its inherent power, the standard of review is mixed.

The Court reviews de novo the "invocation of [a court's] inherent power." *In re Moore*, 739 F.3d 724, 729 (5th Cir. 2014); *see also Matter of Carroll*, 850 F.3d 811, 816 (5th Cir. 2017) ("[Section 105] has been interpreted as supporting the inherent authority of the bankruptcy courts to impose civil sanctions") (alterations in original).  "A decision to invoke the inherent power to sanction requires a finding of bad faith or willful abuse of judicial process, which must be supported by clear and convincing proof." *In re Moore*, 739 F.3d at 729–30 (cleaned up).  Stated differently, the Fifth Circuit may uphold a lower court's invocation of its inherent sanctioning power "only if clear and convincing evidence supports the court's finding of bad faith or willful abuse of judicial process." *Id.* at 730.

If and only if "this high threshold for invoking inherent powers is surmounted," then this Court reviews "the substance of the sanction

itself" for an abuse of discretion. *Id*. at 730. "A court abuses its discretion when its ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Chaves v. M/V Medina Star*, 47 F.3d 153, 158 (5th Cir. 1995) (reversing sanctions award because magistrate judge's finding of bad faith was clearly erroneous and judge "did not exercise the mandated restraint before assessing sanctions").

Notably, this Court has explained that "the standard for the imposition of sanctions using the court's inherent powers is extremely high." *Goldin v. Bartholow*, 166 F.3d 710, 722 (5th Cir. 1999). The Court must be satisfied that the "very temple of justice has been defiled" before imposing sanctions. *Id.* at 722–23.

## III.  SUMMARY OF THE ARGUMENT

Sanctions are a potent tool in the federal courts' arsenal, and for that reason, they must be wielded with appropriate restraint and used only in cases where the evidence overwhelmingly supports their imposition. This is not such a case.

HCRE is not a serial or vexatious litigant. It did not disobey a court order. It did not attempt to thwart the bankruptcy court's jurisdiction or authority. Instead, HCRE filed a single, truthful proof of claim in

34

bankruptcy and, when faced with mounting costs and uncertainty, attempted to withdraw the claim with prejudice months before the scheduled hearing. For those meager actions, the bankruptcy court labeled HCRE a "bad faith" actor and slapped it with $825,000 in fee-shifting sanctions. The district court perfunctorily affirmed the sanctions award. In awarding and affirming the sanctions award, the lower courts failed to exercise the mandatory restraint and failed to follow the law in several crucial ways.

**First**, the bankruptcy court erred in finding "bad faith" where the evidence of record fell well short of the type of "clear and convincing" proof that is required. Instead, the bankruptcy court relied on just the sort of speculation and suspicion that the Fifth Circuit repeatedly has told this very bankruptcy court is insufficient. *See The Charitable DAF Fund, L.P. v. Highland Capital Mgmt., L.P.*, 98 F.4th 170 (5th Cir. 2024) (vacating sanctions order where costs were incurred largely to pursue evidence supportive of bankruptcy court's suspicions); *In re Moore*, 739 F.3d 724 (5th Cir. 2014) (reversing sanctions where bad faith finding was based on court's suspicion and theories rather than evidence).

The bankruptcy court found that HCRE filed its POC in bad faith

solely because Dondero, the signatory on the claim form, did not personally investigate the claim. But the record is undisputed that HCRE's staff and counsel conducted reasonable diligence to support the POC's assertion that HCRE "may have a claim against" Highland but needed discovery to make that determination. Nor is there any law requiring a company's designated signatory to perform the required diligence himself. Dondero's reliance on others certainly did not present the "clear and convincing" evidence required to impose fee-shifting sanctions.

The bankruptcy court also found that HCRE pursued the proof of claim in bad faith, even though Highland did not even seek sanctions on that basis. The court hinged its determination on HCRE's supposed refusal to withdraw the claim "with prejudice." But the record reveals that HCRE and its counsel repeatedly agreed to a with-prejudice withdrawal, even though such an agreement was not necessary in light of the case's posture and the bankruptcy court's power to issue an order "with prejudice." Again, the evidence simply does not reflect the type of clear and convincing evidence that this Court should expect given the size of the sanctions award.

36

**Second**, the bankruptcy court erred in finding a "but-for" causal connection between the alleged misconduct by HCRE and the fees incurred by Highland. That finding was particularly egregious with respect to the $375,000 in attorneys' fees incurred by Highland after it *opposed* withdrawal of HCRE's claim and *insisted* on an evidentiary hearing that HCRE sought to avoid. The bankruptcy court could have put an end to the litigation by entering an appropriate order with the conditions to withdrawal it thought appropriate, but the court—bolstered by its own, baseless suspicions—acquiesced in Highland's demands and required HCRE to move forward. The resulting fees should not have been taxed to HCRE.

**Third**, the bankruptcy court erred by refusing to grant HCRE's motion for relief from the Sanctions Order, where the record clearly contradicted the bankruptcy court's core factual finding supporting the exercise of its inherent power—that is, that HCRE refused to withdraw its POC "with prejudice." Putting aside that the claims deadline had long since passed and that a preexisting order barred any future lawsuit on the claim without prior bankruptcy court permission, the record shows that HCRE and its counsel repeatedly and explicitly agreed to withdraw

37

the claim with prejudice. Rather than acknowledging that fact, the bankruptcy court's Reconsideration Order made up new reasons (untethered to the record) to justify its bad faith finding and to deny HCRE the requested relief.

**Finally**, the district court erred by failing to conduct the required de novo review of the bankruptcy court's findings of fact and conclusions of law. Instead, the district court merely concluded—without analysis or citation to the record—that the bankruptcy court got it right. And the district court failed to make the required finding of a causal connection between the conduct and the sanction awarded, requiring reversal.

## IV.  ARGUMENT AND AUTHORITIES

### A.  The Bankruptcy Court Erred in Issuing the Sanctions Order

The Sanctions Order should be reversed for multiple independent reasons. First, the bankruptcy court's finding of bad faith and willful abuse of judicial process was wrong. There is no "clear and convincing" evidence for those findings; they are either directly contrary to the evidence of record or based on the bankruptcy court's unadorned speculation. Second, the bankruptcy court abused its discretion in concluding that "but for" HCRE's actions, Highland would not have

38

incurred the attorneys' fees and costs awarded for the period after the court denied HCRE's motion to withdraw. As a result, the bankruptcy court awarded sanctions designed solely to punish, which is an impermissible exercise of the court's inherent authority under Bankruptcy Code § 105.

> 1. **There Is No Clear and Convincing Evidence to Support the Bankruptcy Court's Bad Faith Findings and Invocation of its Inherent Powers**

A bankruptcy court cannot invoke its inherent power to sanction without "clear and convincing proof" of "bad faith or willful abuse of the judicial process." *In re Moore*, 739 F.3d at 729–30. This Court therefore must reverse unless it concludes, based on its own de novo review of the record, that the finding is supported by clear and convincing evidence. The record here supports no such thing.

The bankruptcy court's contrary conclusion reprises the same errors the Fifth Circuit reversed in *In re Moore*. *See* 739 F.3d at 729–33. There, as here, the same bankruptcy court based its finding of bad faith on "mere suspicions" and "allegations" that lacked support in the record. *Id*. at 731. The Fifth Circuit held that the bankruptcy court's "theories f[e]ll short of the stringent standard of clear and convincing evidence of

bad faith." *Id.* at 733.

*Moore* applies with equal force here. The bankruptcy court's Sanctions Order turns on two core findings: (1) that HCRE ***filed*** the POC in bad faith; and (2) that HCRE ***refused to withdraw the POC with prejudice***, such that its continued pursuit of the POC was in bad faith. ROA.588, 596. Neither finding can be reconciled with the evidentiary record.

### a.    HCRE did not file the POC in bad faith.

The bankruptcy court's finding that the POC was filed in bad faith makes no sense in the context of the record and the law. Bankruptcy Rule 9011 applies to proofs of claim in bankruptcy. Rule 9011(b) states, in relevant part, "[b]y presenting to the court a petition, pleading, written motion, or other document . . . an attorney or unrepresented party certifies that . . . the allegations and factual contentions have evidentiary support—or if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Thus, on its face, Rule 9011(b) permits a creditor to file a proof of claim to based on facts to be developed "after a reasonable opportunity for further investigation or discovery." Fed. R. Bankr. P.

9011(b). If that were not clear enough, Rule 9011(b) clarifies that the individual signing a proof of claim need not verify the accuracy of the claim based on his personal knowledge as he would in an affidavit; rather, the claim may be based on "information, and belief." *Id.*

Nonetheless, the Sanctions Order talks at length about all the things that Dondero did not do prior to allowing his electronic signature to be affixed to the POC. *See* ROA.589–92 (he did not read the claim form; he did not investigate "whether the statements made in the Proof of Claim were truthful and accurate;" he did not provide feedback to anyone about the claim). But the court never found or even suggested that the POC was false or inaccurate. To the contrary, the court acknowledged that the claim was "prepared and filed by a law firm [Bonds Ellis]"—led by former Bankruptcy Judge Lynn—and was phrased in "ambiguous" language, explicitly divulging that HCRE was still investigating *whether* it had a claim and that HCRE would need discovery from Highland to ascertain the *amount* of any such claim. ROA.580 & n.4, 589.

Moreover, the law does not require that the person signing the claim form be the same individual who investigated the contents of the

claim. *See In re Cushman*, 589 B.R. 469, 479 (Bankr. D. Me. 2018) (finding no basis for sanctions where the creditor relied on data provided by others in its proof of claim); *see also In re Isom*, 321 B.R. 756, 757 (Bankr. N.D. Ga. 2005) (it "is universally recognized" that an attorney may sign a proof of claim on behalf of a client). Like the creditor in *Cushman*, Dondero testified that he relied on others—his lawyers—and on the processes put in place by his staff in deciding to approve the POC's filing. 589 B.R. at 479; ROA.591. Dondero was allowed to do that.

And despite the bankruptcy court's mocking criticism of Dondero's "I'm-a-very-busy-person/too-busy-to-be-bothered-to-investigate  excuse" (a criticism that makes no sense when the investigation required discovery from Highland), it is a fact of business that company officers often have to rely on others (including their lawyers) in filing proofs of claim. That is perhaps why the bankruptcy court did not cite—and HCRE has not found—any case saying that a company filing a proof of claim may be sanctioned because the corporate officer executing the claim did not himself perform the diligence concerning the claim. The court's finding that Dondero did not jump through the same hoops as his lawyers and staff does not justify the bankruptcy court's finding that HCRE acted

"in bad faith and willfully abused the judicial process," much less come close to clear and convincing proof.

Indeed, under these circumstances, it is unclear what investigation Dondero could have performed himself that would have made a difference to the attorney-crafted language of the POC.  And given that the claim form expressly hedged on whether HCRE had any claim to begin with, the bankruptcy court hardly could conclude that the language Dondero signed onto was false or inaccurate.

Thus, the Bankruptcy Court erred when it ruled that HCRE filed the proof of claim in bad faith.

### b.     HCRE did not pursue the POC in bad faith.

The bankruptcy court also erred in concluding that HCRE's "*litigation strategy and actions* taken in the course of prosecuting its Proof of Claim over the next two and a half years, after filing it, *provide further support for a finding that [HCRE] engaged in bad faith and willfully abused the judicial process*."  ROA.592 (emphasis in original).  As set forth above, the bankruptcy court pointed to three actions by in an attempt to support this conclusion:  (1) HCRE's "vigorous opposition" to Highland's motion to disqualify Wick Phillips; (2) "the

timing of the Motion to Withdraw," and (3) HCRE's supposed "overt attempts to preserve the very claims upon which its Proof of Claim was based in connection with the Motion to Withdraw." ROA.598. None of these actions occurred as characterized by the court, and none justified a finding that HCRE acted in bad faith or "willfully abused" the judicial process. Each proffered reason is addressed below.

First, shy of taking a legal position that is clearly contrary to law or sanctionable under Bankruptcy Rule 9011, it is unclear how a party's "vigorous opposition" could ever constitute an abuse of judicial process. Nor is there a shred of evidence in this record to support the conclusion that HCRE or its counsel, Wick Phillips, took inappropriate positions in contesting Highland's disqualification motion. To the contrary, the evidence demonstrates that Highland sought to disqualify Wick Phillips more than a year after the firm first appeared. ROA.593. Further, Wick Phillips presented the testimony of a professional ethics expert demonstrating that the purported conflict did not require disqualification. ROA.5032–33. Although the bankruptcy court ultimately disagreed, the court's order did not suggest that Wick Phillips took an unreasonable position or otherwise abused the judicial process in

44

opposing disqualification. ROA.2200–03. And the bankruptcy court ultimately denied Highland's request for attorneys' fees incurred in connection with the disqualification fight—a request that Highland did not renew in seeking sanctions. ROA.594. Merely unsuccessfully opposing a motion is not evidence of bad faith. And nothing about the disqualification fight suggested that HCRE did anything else wrong.

Second, the bankruptcy court's unsupported speculation about "the timing of the Motion to Withdraw" also cannot support a bad faith finding. The Fifth Circuit previously has overturned similar sanctions awards issued by this bankruptcy court where the court relied on its suspicions and what it perceived as the "unpleasant odor" of an adversary proceeding as the basis for finding bad faith. *In re Moore*, 739 F.3d at 733. The bankruptcy court repeated its error here. Its criticism of the "timing" of HCRE's Motion to Withdraw—months before any evidentiary hearing was scheduled and just as Highland was about to initiate another round of briefing—boils down to the court's conjecture that "gamesmanship" was afoot simply because the work still to be done included fact depositions of HCRE's witnesses. ROA.606. "Again, the bankruptcy court's mere suspicions do not add up to clear and convincing

45

evidence of [HCRE's] bad faith." *In re Moore*, 739 F.3d at 731. Here, the

***actual evidence*** flatly contradicts the bankruptcy court's speculation:

- In August 2022, shortly after Highland indicated that it planned to move to strike HCRE's expert, the bankruptcy court entered an amended scheduling order to accommodate Highland's motion. It provided that (1) the parties would brief Highland's motion to strike; (2) Highland would file a summary judgment motion within 14 days of any order on the motion to strike; (3) Highland would file a rebuttal expert report within 21 days of any order denying the motion to strike and also make its expert available for deposition; and (4) the parties would confer as necessary on a new date for the evidentiary hearing. Dkt. 3438, ¶¶ 1–3.

- At the time the court entered the new scheduling order, fact discovery was not complete. *See* Dkts. 3415, 3416, 3418.[8]

- Three days later, HCRE moved to withdraw, explaining that due to SE Multifamily's uninterrupted operations, and in consideration of the cost and uncertainty of pursuing the POC in the face of Highland's objection, HCRE decided to withdraw the POC. ROA.2216

- At the hearing on the motion to withdraw, HCRE's in-house representative, its outside counsel, and ultimately Dondero each represented that HCRE would withdraw its POC "with prejudice," would waive any right to appeal the court's order on the POC, and would not challenge Highland's interest in

---

[8] At the hearing on withdrawal, Highland complained that HCRE filed the motion after it had taken the depositions of Highland's witnesses but before the depositions of HCRE's witnesses. Highland then speculated that HCRE sought to exploit the deposition testimony of Highland's acting CEO at a later date. ROA.2533–34. Again, there is no record evidence suggesting the prospect of any such exploitation, let alone clear and convincing evidence that the Motion to Withdraw was the conclusion of some yearslong plot to get deposition testimony from Highland without having to make HCRE's witnesses available, as the bankruptcy court imagined. ROA.606.

> SE Multifamily.  ROA.3297–298 at 33:23–34:5, ROA.3299–300 at 35:16–36:3, ROA.3304 at 40:8–17, ROA.3307–308 at 43:23–44:6.

- • Neither the bankruptcy court nor Highland would accept these representations, leading the court to deny HCRE's motion and force it to continue litigating.

At bottom, the ***only*** evidence of HCRE's reason for seeking to withdraw the POC when it did is that HCRE made a decision, in consultation with sophisticated counsel, that pursuing the claim was not worth the time, money, and effort given how the bankruptcy had unfolded.  ROA.2687–89.  The evidence further demonstrated that—far from attempting to drop its claim at the eleventh hour—HCRE sought to withdraw the claim to avoid the cost of additional discovery, motion practice, hearing preparations, and an evidentiary hearing on the merits.  ROA.2687–89.  That Highland's freshly announced motion to strike was about to add to those costs and prompted a reckoning explains the "timing of it all" far better than the bankruptcy court's convoluted theory about HCRE somehow planned to exploit the deposition schedule for strategic advantage in some hypothetical future litigation.  ROA.2216.

If anything, the bankruptcy court's adjudication of the Motion to Withdraw put HCRE in an impossible catch-22.  One the one hand, once

discovery revealed that HCRE likely lacked sufficient evidence to prove the elements of its POC, continuing to prosecute the claim risked sanctions for pursuing what the bankruptcy court might deem to be a meritless position. *See, e.g.*, *B & H Med., L.L.C. v. ABP Admin., Inc.*, 354 F. Supp. 2d 746, 748 (E.D. Mich. 2005), aff'd, 526 F.3d 257 (6th Cir. 2008) (finding Rule 11 sanctions proper based on counsel's "failure to dismiss the case after becoming aware that it lacked merit" during discovery); *BDT Products, Inc. v. Lexmark Intern., Inc.*, 602 F.3d 742, 753 n.6 (6th Cir. 2010) ("[P]arties and attorneys have a responsibility to halt litigation *whenever* they realize that they are pursuing a meritless suit.") (emphasis in original).  On the other hand, the Sanctions Order makes equally clear that continuing forward to an evidentiary hearing on the POC—after partial discovery, and in a posture shaped by Highland's tactics and the bankruptcy court's rulings—was itself treated as sanctionable.  So what was HCRE supposed to do once discovery showed the claim was likely no longer worth pursuing?  Withdraw, and be sanctioned; proceed, and be sanctioned.  That kind of apparent pre-judgment by the bankruptcy court is not a proper basis for imposing sanctions.

Finally, the bankruptcy court's conclusion that HCRE acted in bad faith because it made "overt attempts" to preserve "the claims on which its proof of claim was based" cannot withstand scrutiny. ROA.598. In its Sanctions Order, the court repeatedly cited HCRE's supposed refusal to withdraw its POC "with prejudice" as the basis for the court's finding that HCRE somehow tried to preserve its claim for another day. *See* ROA.581 (HCRE "was unwilling to withdraw the Proof of Claim ***with prejudice*** to asserting its claims again in any future litigation in any forum" (emphasis in original)); ROA.596–97 (citing HCRE's "repeated attempts to preserve its claims against Highland for use against Highland in the future," as evidenced by HCRE's supposed "refus[al] to agree, at the September 12 hearing, to language in an order allowing withdrawal of the Proof of Claim that stated, unequivocally, that [HCRE] waived the right to relitigate or challenge the issue of Highland's 46.06% ownership interest in SE Multifamily").

But as the actual testimony at the September 12 hearing demonstrates, HCRE repeatedly attempted to withdraw its POC ***with prejudice***, agreed ***not to challenge*** the equity interest of Highland in SE Multifamily, and even agreed to ***waive*** any right to appeal of any

49

order denying its POC. *See supra* at 19-23. That the bankruptcy court and Highland refused to accept these concessions is not grounds to find by clear and convincing evidence that HCRE abused the judicial process. Setting aside whether it was appropriate to demand these concessions in the first place, HCRE's acquiescence was more than sufficient to demonstrate that the company did not intend to pursue its POC in some other fashion in some other forum. And that acquiescence is precisely the opposite of an "overt attempt" to preserve the claim. *Contra* ROA.598.[9]

The one thing HCRE did not do at the hearing—and the apparent basis for the bankruptcy court's contention that HCRE refused to withdraw its claim with prejudice—was stipulate to something that was improper and made no sense: that Highland would ***always*** have a 46.06% interest in SE Multifamily, regardless of what happens in the future, and regardless of what the SE Multifamily LLC Agreement might say. ROA.3307. There was no legal basis for imposing that extra

---

[9] Further, as discussed below, *see infra* §III.A2, the bankruptcy court's demand that POC be withdrawn "with prejudice" long after the claim filing deadline passed is a nonsensical condition because a proof of claim filed after the deadline does not "relate back" and is therefore a legal nullity. That is, a claim withdrawn after the claim assertion deadline is effectively dismissed with prejudice in any event.

condition on HCRE's with-prejudice withdrawal of its POC. *See In re Lowenschuss*, 67 F.3d 1394, 1399–41 (9th Cir. 1995) (bankruptcy court erred in denying creditor's request for conditional withdrawal of claims where there was "no evidence" that debtor "would be prejudiced legally" by withdrawal on terms the creditor proposed).

The bankruptcy court's order denying withdrawal is not on appeal. But its conclusions that HCRE's actions at the hearing, and in particular its refusal to agree to this additional condition, amount to evidence of bad faith or willful abuse of the judicial process are the heart of the issue. And the extraordinary legal irregularity of that demand undercuts the bankruptcy court's attempt to characterize HCRE's hesitancy to agree with it as some nefarious attempt by HCRE to preserve its claim while pretending to drop it.

\*     \*     \*

In short, there is no evidence, much less clear and convincing evidence, to support the bankruptcy court's finding of bad faith. As a result, the bankruptcy court lacked authority to impose sanctions, and this Court should reverse. *See In re Moore*, 739 F.3d at 729–30.

51

## 2. The Bankruptcy Court's Punitive Sanction Exceeded its Authority Under Bankruptcy Code § 105

Because the bankruptcy court "had no legal authority in the first place to invoke its inherent sanction power," there is no need "to review the substance of the sanction." *In re Moore*, 739 F.3d at 733 n.16. But in any event, the sanction the court imposed exceeded the scope of its authority under Bankruptcy Code § 105.

Section 105 provides that a court may take "any action or make[] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105. That power is limited. As the Fifth Circuit recently explained, the civil contempt power of Article I courts "is limited" because it "'uniquely is liable to abuse.'" *The Charitable DAF Fund, L.P.*, 98 F.4th at 174 (quoting *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994)). Thus, a sanction "may not have the 'primary purpose' of 'punishing the contemnor or vindicating the authority of the court.'" *The Charitable DAF Fund*, 98 F.4th at 174 (cleaned up). As a result, where, as here, a bankruptcy court issues a fee-shifting sanction, there must be a "causal link between the litigant's misbehavior and the legal

fees paid by the opposing party." *Id.* at 175 (cleaned up). "Absent that because-of link, the sanction is punitive rather than compensatory and hence falls outside the bankruptcy court's statutorily limited powers." *Id.*

Against this legal backdrop, the bankruptcy court abused its discretion by issuing a sanction that lacked the requisite "causal link" between the misbehavior alleged and the sanction awarded. This is not the first time in the Highland bankruptcy that the bankruptcy court has exercised its sanction power without the requisite restraint. In *The Charitable DAF Fund*, the bankruptcy court issued a nearly $240,000 sanction against several parties and their counsel for filing a motion seeking to add Highland's CEO, James P. Seery, Jr., as a defendant in a federal district court lawsuit. *Id.* at 172. Following denial of the motion at issue, Highland sought, and the bankruptcy court allowed, "extensive discovery" and "a marathon evidentiary hearing" aimed at uncovering evidence to support Highland's later-filed contempt motion. *Id.* at 176. At the close of that process, the court's $240,000 contempt award shifted the entire bulk of Highland's attorneys' fees to the moving parties. *Id.* at 173. The district court affirmed the award, and the alleged contemnors appealed. *Id.* at 174.

This Court vacated the award.  In so doing, the Court emphasized that "[the] *only* contumacious conduct" was the appellants' act of filing a motion in the wrong court to add Seery as a defendant.  *Id.* at 175 (emphasis in original).  By contrast, the Court concluded that all other activity in the case, including the post-motion discovery and the bankruptcy court's "mini-trial," were not caused by the movants.  *Id.* at 176.  As a result, Highland was not entitled to recover fees associated with that later punitive proceeding.  *Id.*

The same problems pervade the bankruptcy court's Sanctions Order.  As set forth above, prior to filing the POC, HCRE's involvement in the Highland bankruptcy was minimal.  HCRE, like dozens of other creditors, filed a protective, unliquidated POC that can hardly be described as "contumacious," nor does anything that happened afterward come close to deserving that label.  For example, ***Highland***, not HCRE, decided to initiate a disqualification dispute that lasted nearly six months.  And ***Highland*** and the ***bankruptcy court***, not HCRE, refused to accept withdrawal of the POC.  In other words, history has repeated itself.  Once again, the bankruptcy court—suspecting "gamesmanship" and following its pattern of investigating and punishing entities

54

associated with Dondero—allowed discovery to continue and forced an unnecessary evidentiary hearing that could have been avoided.

The bankruptcy court expressly premised its shifting of attorneys' fees and costs for the period after it denied withdrawal on the erroneous conclusion that HCRE "would not agree to [the POC's] withdrawal, with prejudice, to NexPoint/HCRE's right to challenge Highland's title to its 46.06% membership in SE Multifamily in the future." ROA.605. Specifically, the court concluded that the fees and costs Highland incurred to continue fighting the POC after successfully blocking the claim's withdrawal would not have been incurred "but for" HCRE's bad faith attempted withdrawal. ROA.47, 12490–91. But again, the court's finding that HCRE refused to withdraw its POC with prejudice is wrong. HCRE tried and desired to withdraw its claim with prejudice, as both its counsel and Dondero testified. It was Highland, not HCRE, that wanted to keep litigating. Where, as here, the party seeking sanctions plays a "substantial role" in the alleged harm, sanctions are inappropriate. *See Maguire Oil Co. v. City of Houston*, 143 F.3d 205, 209 (5th Cir. 1998) (defendant's failure to disclose legal precedent for remand not sanctionable where plaintiff "played a substantial role in causing the case

55

to remain in federal court after removal"); *see also J.C. Penney Corp., Inc. v. Oxford Mall, LLC*, 100 F.4th 130, 148 (11th Cir. 2024) (movant not entitled to full costs and fees where movant bore "at least some part of the blame").

To make matters worse, the bankruptcy court's insistence on a "with prejudice" withdrawal made no sense. At the time, HCRE could not refile the POC or file any related litigation without permission of the bankruptcy court. A withdrawn proof of claim cannot be renewed after the claims filing deadline. *See Matter of Overly-Hautz Co.*, 81 B.R. 434, 436–37 (Bankr. N.D. Ohio 1987) (creditor's "supplemental" proof of claim filed after the deadline and after creditor withdrew prior claim was a nullity). Consequently, post-deadline withdrawal of a claim operates as a dismissal with prejudice regardless of whether the term "with prejudice" is used. Further, Highland's Fifth Amended Plan of Reorganization ("Plan") contained a "gatekeeper" provision that precluded certain parties, including HCRE, from pursuing claims against the estate without seeking prior permission from the bankruptcy court. Dkt. 1943; *see also NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P.*, 48 F.4th 419, 435 (5th Cir. 2022). Thus, the bankruptcy court could have

shut down any efforts by HCRE to pursue its claim later.  And in any event, the bankruptcy court could have insisted on "any terms and conditions the court consider[ed] proper" in approving withdrawal of the POC.  Fed. R. Bankr. P. 3006(b).  Consequently, there was no reason to fight about whether withdrawal of the POC should be "with prejudice;" the POC's withdrawal would have permanently prejudiced HCRE's right to pursue it.

Nonetheless, to bolster its "but for" conclusion on attorneys' fees post-dating HCRE's Motion to Withdraw, the bankruptcy court surmised that Highland is somehow in a different position than it would have been had it simply "accepted a 'win'" and agreed to withdrawal of HCRE's POC.  But the court did not explain what is different, except to default to its erroneous refrain that HCRE refused to withdraw its POC with prejudice.  ROA.605.

The record belies the bankruptcy court's conclusion.  Indeed, the court's order denying the POC on the merits does not even contain the condition the court sought to extract from HCRE to avoid an evidentiary hearing.  Specifically, the order does not provide that Highland will retain a 46.06% interest in SE Multifamily in perpetuity (nor could it

have; the court lacked the power to order that relief). To the contrary, the court acknowledged that, "under section 2.1 of the Amended LLC Agreement, Members may make future capital contributions to SE Multifamily." ROA.11678. And that is precisely why Dondero testified that he could not agree that Highland would hold a fixed 46.06% interest in SE Multifamily forever; it stands to reason that future capital contributions by Highland or others could change that percentage. The court's merits order also does not purport to prevent HCRE from contesting Highland's interest in SE Multifamily in any forum in the future. Instead, the order merely states that Highland's objection to the POC is sustained and that the claim is disallowed "for all purposes." ROA.11681. In other words, the parties are indeed in the ***exact same position*** as they would have been had Highland just "taken the win" when HCRE sought to withdraw its POC.

Under these circumstances, the bankruptcy court's refusal to accept HCRE's withdrawal of the POC with prejudice, as opposed to Highland's successful objection to withdrawal, is what caused Highland to incur an additional $375,000 in attorneys' fees. Because there is no "but for" connection, the sanctions award exceeded the bankruptcy court's

authority and should be vacated.

## B.    The Bankruptcy Court Repeated Its Errors in Denying Reconsideration

The bankruptcy court also abused its discretion in denying HCRE's Reconsideration Motion.  As noted, HCRE argued that the bankruptcy court made a mistake in concluding that HCRE refused to withdraw its POC "with prejudice," and that the court's legal conclusion regarding "but for" causation was wrong because of that mistake.  *See* ROA.12400, 12413–15.[10]  The bankruptcy court erred in rejecting these arguments.

First, the bankruptcy court acknowledged that "HCRE expressed that it would withdraw its claim with prejudice," including "with prejudice to filing any appeal of a bankruptcy court order on same." ROA.12486.  But according to the court, HCRE's agreement to withdraw its claim "with prejudice" was limited to "re-asserting it [the POC] in the bankruptcy court."  ROA.12486.  According to the court, what HCRE refused to do at the hearing on the Motion to Withdraw was agree to a withdrawal order that contained "clear and unequivocal language" that

---

[10] HCRE also argued that the bankruptcy court impermissibly relied on arguments raised for the first time in Highland's reply brief (including Highland's belated argument that HCRE *pursued* its POC in bad faith), which is improper as a matter of law and merited correction of the court's Sanctions Order.  *See* ROA.12418.

HCRE "would not be able to assert its claims and/or theories regarding rescission and/or reformation of the SE [Multifamily] LLC Agreement in any future litigation in any court or forum." ROA.12486–87.

That conclusion was an abuse of the bankruptcy court's discretion several times over. For starters, neither the court nor Highland ever asked HCRE to make this highly specific concession, but even so, HCRE and its counsel repeatedly agreed to forego ***any*** challenge to Highland's interest in SE Multifamily and never confined that agreement to actions before the bankruptcy court. *See supra*, at 19–23.[11] Thus, the bankruptcy court's conclusion that HCRE refused to give a broad enough concession is wrong.

Additionally, as explained above, the confirmed Plan requires certain parties (including HCRE) to seek bankruptcy court permission before pursuing any litigation against Highland. The bankruptcy court knew that if HCRE wanted to pursue its POC against Highland, HCRE would have to ask the court first. Yet the court still insisted HCRE

---

[11] Nor did HCRE use "hedging language," as the quoted passages of the transcript from the Motion to Withdraw hearing make painfully clear. *See* ROA.12489. It is not surprising then that the bankruptcy court cites no examples of such "hedging" in its order.

60

needed to give a bigger concession than withdrawal with prejudice.

Moreover, as set forth above, Rule 3006 allowed the bankruptcy court to impose any "terms and conditions" that it "deemed" proper in an order allowing HCRE to withdraw its POC. Fed. R. Bankr. P. 3006(b). Had the court truly believed that "clear and unequivocal" language precluding future litigation was necessary, the court could have crafted an order including it. That the court chose not to do so is not HCRE's fault. And the bankruptcy court's suggestion—made for the first time in the Reconsideration Order—that it denied the motion to withdraw not just because of the purported refusal to withdraw the POC "with prejudice," but also based on the court's consideration of the "so-called *Manchester* factors," cannot be squared with the Sanctions Order, which says nothing of the sort. ROA.12490. In short, the bankruptcy court's Reconsideration Order just invents reasons to justify its denial of withdrawal. That type of post hoc rationalization cannot withstand scrutiny.

As for the "but for" causation issue, the court merely repeated its finding, untethered to evidence, that the court was forced to order a trial on HCRE's POC because HCRE "refus[ed] to withdraw its proof of claim

61

with prejudice to all future litigation on the issues raised in the proof of claim." ROA.12491. That conclusion is wrong for all the reasons discussed above—including that Highland wound up in a worse legal position than it would have been had it simply accepted HCRE's concessions at the withdrawal hearing or had the bankruptcy court exercised its considerable discretion to impose terms and conditions on the withdrawal. *Supra* pp. 56–59. Under these circumstances, the only "but for" cause of Highland's additional fees and costs was Highland's choice to keep litigating when HCRE wanted to stop, and the bankruptcy court's decision to side with Highland. The court's conclusion to the contrary was error.

## C.    The District Court Abused its Discretion by Affirming the Bankruptcy Court's Decisions

The district court's perfunctory affirmance likewise falls short, for several reasons. First, notwithstanding its obligation to conduct a full de novo review of the bankruptcy court's finding of bad faith, the district court did not even address HCRE's argument that the evidence of record was woefully deficient—and far short of clear and convincing—to support a bad faith finding. Indeed, without identifying any evidence or giving any analysis, the district court merely concluded the bankruptcy court's

rulings were correct and affirmed them. *See* ROA.17583–85. That rubber-stamp ruling is just as deficient and erroneous as the bankruptcy court's underlying order. *See Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1210 (7th Cir. 1984) (while a district court may adopt a bankruptcy court opinion ***after examining the record***, it may not "merely rubber stamp a bankruptcy court opinion").

Second, the district court failed to make *any* ruling with respect to but-for causation, instead concluding that the bankruptcy did not abuse its discretion in "calculating" attorneys' fees. That conclusion misses the mark. As the Supreme Court of the United States and this Court have held, a specific finding of "but-for" causation—i.e., a finding that the alleged misconduct was the but-for cause of the costs incurred—is an absolute perquisite to a fee-shifting sanction. *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 1010, 108 (2017); *The Charitable DAF Fund, L.P.*, 98 F.4th at 177; *see also Am. Unites for Kids v. Rousseau*, 985 F.3d 1075 (9th Cir. 2021) (reversing sanctions order where district court failed to conduct a but-for cause analysis). The district court's failure to mention, much less analyze, the required but-for connection between the harm alleged and the sanction awarded was error.

63

Finally, the district court's cursory affirmance of the Reconsideration Order likewise fails to address or analyze the irreconcilable disconnect between the bankruptcy court's core conclusion that HCRE refused to withdraw its POC "with prejudice" and the repeated representations to the contrary made by HCRE and its counsel in open court during the withdrawal hearing. That counter-factual conclusion infected every other aspect of the bankruptcy court's Sanctions Order such that the district court should have taken care to address it. The district court's failure to do so also warrants reversal on appeal. *See, e.g.*, *In re Dunn*, 620 B.R. 228, 234 (S.D.N.Y. 2020) (vacating a reconsideration order where there was no factual basis for underlying sanction award); *In re Frantz*, 655 B.R. 594, 605–06 (B.A.P. 9th Cir. 2023) (reversing sanctions order and subsequent reconsideration order where bankruptcy court did not have factual support for its legal conclusions).

\*   \*   \*

In the end, there is no non-speculative evidence that HCRE did anything wrong—with respect to either the filing or the pursuit of its POC. And in any event, the vast majority of the fees and costs Highland

64

incurred were caused not by HCRE but by Highland's and the bankruptcy court's own choices.

## CONCLUSION

For these reasons, HCRE respectfully requests that the Fifth Circuit reverse the bankruptcy court's Sanctions Order and its Reconsideration Order.

Dated: January 20, 2025   Respectfully Submitted,

PILLSBURY WINTHROP SHAW PITTMAN LLP

*/ s/ Benjamin Bernell*
Amy L. Ruhland
Texas Bar No. 24043561
amy.ruhland@pillsburylaw.com
Benjamin Bernell
Texas Bar No. 24059451
ben.bernell@pillsburylaw.com
401 W 4th Street, Suite 3200
Austin, TX 78701
Tel.: (512) 580-9600

*Attorneys for NexPoint Real Estate Partners, LLC (f/k/a HCRE Partners, LLC)*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 20, 2025, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

*/ s /* Benjamin L. Bernell
Benjamin L. Bernell

# CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the type-volume limitations of Federal Rule of Appellate Procedure 32 as it contains 12,968 words, excluding the portions of the document exempted by 32(f).

I further certify that this document complies with the typeface requirements of Rule 8015(a)(5) and the type-style requirements of Rule 8015(a)(7)(B) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

/ s / Benjamin L. Bernell
Benjamin L. Bernell