Case No. 25-11185

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

In the Matter of: Highland Capital Management, L.P.,

Debtor

NexPoint Real Estate Partners, L.L.C.,

Appellant

v.

Highland Capital Management, L.P.,

Appellee

Appeal from the United States District Court
Northern District of Texas
Hon. Karen Gren Scholer
No. 3:24-cv-1479-S

## APPELLEE'S BRIEF

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz
John A. Morris
Gregory V. Demo
Jordan A. Kroop
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
(310) 277-6910

HAYWARD PLLC
Melissa S. Hayward
(Texas Bar No. 24044908)
Zachery Z. Annable
(Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
(972) 755-7100

*Counsel for Appellee*

## FRAP 26.1 and 28(a)(1) DISCLOSURE

Appellee Highland Capital Management, L.P. is a limited partnership, the general partner of which is HCMLP GP LLC, a privately held limited liability company. No publicly held corporation owns 10% or more of the interests in these entities.

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1.   **Appellees:**

   Highland Capital Management, L.P.

2.   **Counsel for Appellee:**

   Jeffrey N. Pomerantz (CA Bar No. 143717)
   John A. Morris (NY Bar No. 2405397)
   Gregory V. Demo (NY Bar No. 5371992)
   Jordan A. Kroop (NY Bar No. 2680882)
   PACHULSKI STANG ZIEHL & JONES LLP
   10100 Santa Monica Blvd., 13th Floor
   Los Angeles, CA 90067

   -and-

   Melissa S. Hayward (Texas Bar No. 24044908)
   Zachery Z. Annable (Texas Bar No. 24053075)
   HAYWARD PLLC
   10501 N. Central Expy., Ste. 106
   Dallas, Texas 75231

3.   **Appellant:**

   NexPoint Real Estate Partners, L.L.C.
     (f/k/a HCRE Partners, LLC)

4.    **Counsel for Appellant:**

Amy Lynne Ruhland
Benjamin L. Bernell
PILLSBURY WINTHROP SHAW PITTMAN, L.L.P.
401 West 4th Street, Suite 3200
Austin, TX 78701

*/s/ Zachery Z. Annable*
Zachery Z. Annable

# TABLE OF CONTENTS

Page

ISSUES PRESENTED ................................................................. 1

STATEMENT REGARDING ORAL ARGUMENT ..................................... 1

SUMMARY OF ARGUMENT .......................................................... 2

STATEMENT OF THE CASE ........................................................... 7

    Background: Dondero Controlled the Relevant Entities and Oversaw the Very Transactions HCRE Challenged in Its Proof of Claim ............................. 7

    HCRE's POC, Highland's Objection, and HCRE's Response................................. 12

    The Parties Engage in Two Rounds of Discovery Sandwiched Around Highland's Motion to Disqualify HCRE's Conflicted Counsel.......................... 14

    Just Before Its Witnesses Were to Be Deposed, HCRE Abruptly Moved to Withdraw Its POC................................................................ 16

    The Evidence Clearly and Convincingly Proved That HCRE Filed and Prosecuted the POC in Bad Faith ...................................................... 18

        Dondero Had No Basis to Swear Under Penalty of Perjury That the POC Was True and Correct ................................................................ 19

        The Amended LLC Agreement Accurately Reflected the Parties' Intent Leaving No Factual or Legal Basis for HCRE to File or Pursue the POC ................................................................ 21

        HCRE Opposed Highland's Disqualification Motion in Bad Faith.................. 25

        HCRE Tried to Preserve Its Baseless Claims in Bad Faith............................. 26

    The Bankruptcy Court Grants Highland's Sanctions Motion ............................... 28

    The Bankruptcy Court Denies HCRE's Motion for Reconsideration ................... 30

ARGUMENT ................................................................................. 32

    Standard of Review ................................................................... 32

    The Bankruptcy Court's Bad Faith Findings Are Supported by Clear and Convincing Evidence ................................................................ 35

    The Bankruptcy Court's Finding That HCRE Filed the POC in Bad Faith Is Supported by Clear and Convincing Evidence ..................................... 35

    The Bankruptcy Court's Finding That HCRE Prosecuted the POC in Bad Faith Is Supported by Clear and Convincing Evidence ........................... 39

    The Bankruptcy Court Properly Exercised Its Discretion in Awarding Fees Incurred as a Result of HCRE's Bad Faith Conduct ........................................ 44

    The Bankruptcy Court Properly Exercised Its Discretion in Denying the Motion for Reconsideration............................................................. 52

CONCLUSION................................................................................. 55

# TABLE OF AUTHORITIES

**Page**

## <u>CASES</u>

*Am. Airlines, Inc. v. Allied Pilots Ass'n,*
228 F.3d 574 (5th Cir. 2000)................................................................ 36, 37

*ASARCO, L.L.C. v. Jordan Hyden Womble Culbreth & Holzer, P.C. (In re ASARCO, L.L.C.),*
751 F.3d 291 (5th Cir. 2014) ............................................................ 49

*Baker Botts L.L.P. v ASARCO LLC,*
576 U.S. 121 (2015)............................................................................... 49

*Butler Aviation Int'l v. Whyte (In re Fairchild Aircraft Corp.),*
6 F.3d 1119 (5th Cir. 1993) ............................................................ 35

*Caroll v. Abide (In re Caroll,*
850 F.3d 811 (5th Cir. 2017)....................................................... passim

*Dondero v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.),*
105 F.4th 830 (5th Cir. 2024) ........................................... 35, 36, 50, 54

*Edelman v. Drexel Highlander Ltd. P'ship, DGP, LLC,*
No. 3:14-CV-4109-P, 2015 WL 5714728 (N.D. Tex. Sept. 28, 2015) .............. 38

*Galaviz v. Reyes,*
95 F.4th 246 (5th Cir. 2024) ............................................................ 37

*Goodyear Tire & Rubber Co. v. Haeger,*
581 U.S. 101 (2017)............................................................................... 54

*In re Brown,*
444 B.R. 691 (E.D. Tex. 2009)........................................................... 48

*In re Cleveland Imaging & Surgical Hosp., L.L.C.,*
26 F.4th 285 (5th Cir. 2022) ........................................... 34, 47, 48, 56

*In re Cushman,*
589 B.R. 469 (Bankr. D. Me. 2018)................................................ 41, 42

*In re Dunn,*
620 B.R. 228 (S.D.N.Y. 2020)........................................................... 54

*In re Eichor,*
689 F. Supp. 3d 438 (S.D. Tex. 2023) ............................................... 37

*In re Frantz,*
655 B.R. 594 (B.A.P. 9th Cir. 2023)................................................ 54

*In re Monteagudo*,
    536 F. Appx. 456 (5th Cir. 2013) ................................................................ 49

*In re Moore*,
    739 F.3d 724 (5th Cir. 2014) ...................................................................... 37

*In re Paige*,
    365 B.R. 632 Bankr. N.D. (Tex. 2007) ........................................................ 49

*In re Skyport Glob. Commc'n, Inc.*,
    642 F. App'x 301 (5th Cir. 2016) .......................................................... 48, 55

*In re Yorkshire, LLC*,
    540 F.3d 328 (5th Cir. 2008) ................................................................ 48, 55

*Jacobsen v. Moser (In re Jacobsen)*,
    609 F.3d 647 (5th Cir. 2010) ...................................................................... 47

*Krueger v. Torres (In re Krueger)*,
    812 F.3d 365 (5th Cir. 2016) ...................................................................... 34

*Lopez v. Portfolio Recovery Assocs., LLC (In re Lopez)*,
    576 B.R. 84 (S.D. Tex. 2017) ..................................................................... 50

*Maguire Oil Co. v. City of Houston*,
    143 F.3d 205 (5th Cir. 1998) ...................................................................... 55

*Manchester, Inc. v. Lyle (In re Manchester, Inc.)*,
    2008 Bankr. LEXIS 3312 (Bankr. N.D. Tex. Dec. 19, 2008) ................... 17, 32

*Martin v. Akzo Nobel Polymer Chems. LLC*,
    180 F. App'x 519 (5th Cir. 2006) ............................................................... 57

*Okorie v. Lentz*,
    No. 2:24-CV-51-KS-MTP, 2024 WL 4186937 (S.D. Miss. Sept. 9, 2024) ........ 37

*Smith v. Robbins (In re IFS Fin. Corp.)*,
    803 F.3d 195 (5th Cir. 2015) ...................................................................... 36

*The Charitable DAF Fund, L.P. v. Highland Capital Management, L.P.*,
    98 F.4th 170 (5th Cir. 2024) ...................................................................... 53

*Trendsetter HR L.L.C. v. Zurich Am. Ins. Co. (In re Trendsetter HR L.L.C.)*,
    949 F.3d 905 (5th Cir. 2020) ................................................................ 34, 36

*Walker v. Transfrontera CV de SA*,
    634 F. App'x 422 (5th Cir. 2015) ............................................................... 57

*Whitehead v. Food Max of Miss., Inc.*,
    332 F.3d 796 (5th Cir. 2003) ...................................................................... 38

## **<u>RULES</u>**

Fed. R. Bankr. P. 3006................................................................................. 17

Fed. R. Civ. P. 60(b)(1)............................................................................... 57

## ISSUES PRESENTED

1.    Whether the Bankruptcy Court's factual findings that HCRE filed and pursued the POC in bad faith should be affirmed as not clearly erroneous?

2.    Whether the Bankruptcy Court properly exercised its discretion when imposing compensatory damages against HCRE in the amount of $825,940.55, which represented a portion of the attorneys' fees and costs Highland incurred in responding to HCRE's bad faith conduct?

3.    Whether the Bankruptcy Court properly exercised its discretion when denying the Reconsideration Motion?

## STATEMENT REGARDING ORAL ARGUMENT

Highland respectfully submits that oral argument is unlikely to help the Court in resolving the questions presented because (a) this appeal plainly lacks merit, (b) a mountain of documentary and testimonial evidence supports the Bankruptcy Court's finding that HCRE knew it never had a factual or legal basis to justify filing and pursuing its POC, and (c) the parties' briefs adequately set forth their arguments.

1

# SUMMARY OF ARGUMENT[1]

The Bankruptcy Court's Order, finding that HCRE filed and prosecuted its proof of claim (the "**POC**") in bad faith and awarding Highland compensation for a portion of the fees and expenses it incurred in the underlying litigation, should be affirmed.

In its POC and Response, HCRE challenged the Revised Allocation (a) alleging that Highland's fully documented 46.06% equity stake in SE Multifamily resulted from a "mutual mistake" and that Highland provided inadequate consideration for that stake, and (b) seeking to rescind, reform, or modify the Revised Allocation based on the alleged mistake. The Bankruptcy Court's findings that HCRE's filing and prosecution of the POC constituted a willful abuse of the judicial process are supported by clear and convincing evidence, including that:

- At the time of the challenged transaction, (a) Dondero owned and controlled HCRE *and* Highland, and controlled SE Multifamily; and (b) McGraner was the only other officer of HCRE and the "quarterback" of the transaction in question;

- Based on their complete control (HCRE had no employees), HCRE did not need "discovery" to confirm what it's only principals already knew: the Revised Allocation in the Amended LLC Agreement accurately reflected the parties' intent;

---

[1] Capitalized terms not defined in this summary have the meanings ascribed to them below.

- Dondero and McGraner also knew that Highland provided substantial consideration to SE Multifamily beyond its stated capital, serving (at the third-party lender's insistence) as a "co-borrower" of the project's financing, providing necessary human resources to consummate the transaction, and creating substantial tax benefits because Highland was able to shelter income generated by SE Multifamily;

- As the Managing Member of SE Multifamily, Dondero caused SE Multifamily to consistently adhere to the Revised Allocation when making distributions and filing tax returns;

- Dondero signed the POC under penalty of perjury without reading it or asking *any* questions or conducting *any* diligence to verify that the POC was "true and correct" as required;

- HCRE knew when it filed its POC that (a) the Revised Allocation was not the product of a "mutual mistake" and (b) Highland provided substantial consideration for its ownership interest in SE Multifamily such that no factual basis existed to support its manufactured legal theories for rescission, reformation, or modification of the Revised Allocation;

- ***Even on appeal, HCRE makes no argument that a factual or legal basis ever existed to support the POC***, only its assertion that (as originally drafted, before HCRE filed its Response) the POC was "indefinite" and HCRE supposedly needed "discovery";

- HCRE vigorously opposed Highland's motion to disqualify Wick Phillips from representing HCRE in connection with its POC on conflict-of-interest grounds, despite knowing—as McGraner ultimately admitted at the Trial—that Wick Phillips jointly represented HCRE and Highland in the same underlying transactions referred to in the POC;

- HCRE's abrupt motion to withdraw its POC constituted gamesmanship where (a) issue had been joined, (b) it was filed (i) after two years of litigation without any credible explanation, and (ii) after *all* discovery was completed *except* for the depositions of

HCRE's witnesses (Dondero and McGraner), (c) HCRE failed to meet *any* of the *Manchester* factors, and (d) HCRE attempted to preserve for another day the baseless theories of "rescission, reformation, and modification" of Highland's 46.06% interest in SE Multifamily; and

- HCRE's focus on its belated attempt to walk away is misplaced. Under the circumstances, HCRE had no "right" to withdraw its POC: it could only do so with Highland's consent or by meeting the *Manchester* factors. Before denying the Withdrawal Motion, the Bankruptcy Court expressly gave HCRE time to try to resolve the issue with Highland. No evidence exists that HCRE ever attempted to do so. And HCRE makes no argument that it met the *Manchester* factors; **indeed, HCRE fails to cite to *Manchester* in its brief**.[2]

Given Dondero's and McGraner's unequivocal admissions that (a) the Revised Allocation accurately reflected the parties' intent, (b) Highland provided substantial consideration beyond its stated capital, and (c) Dondero caused distributions and tax filings to be made consistent with the Revised Allocation, HCRE never had a good faith basis

---

[2] HCRE desperately tries to persuade this Court that it wanted to withdraw its POC with prejudice but Judge Jernigan would not let it do so. That is false. The record shows that, at best, HCRE equivocated, saying different things at different times during the hearing. Had HCRE wanted to unambiguously demonstrate that it wanted to withdraw its POC with prejudice, it would have (a) complied with Rule 7007-1(c) of the *Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas*, and filed a proposed order with that relief, or (b) followed the Bankruptcy Court's guidance (provided on the record at the conclusion of the hearing) to submit a clean proposed form of order withdrawing its claim with prejudice to refiling or re-litigating the issues raised in the POC. HCRE did neither. Instead, it cherry-picks certain statements while ignoring others it made before, during, and after the hearing on the Withdrawal Motion.

to file and prosecute a claim challenging the Revised Allocation in an attempt to denude Highland of a valuable asset.

In seeking to overturn the Bankruptcy Court's Order, HCRE creates a series of strawmen and excuses that do not withstand scrutiny. For example, given Dondero's and McGraner's personal knowledge, HCRE never needed discovery to learn that the Revised Allocation reflected the parties' intent or to understand the substantial benefits they personally caused Highland to contribute to justify the ownership interest they knowingly allocated to Highland. Separately, HCRE's contention that the "bad faith" finding with respect to Dondero's signing and authorization of the POC should be overturned because the POC contained indefinite language such as "*may*," or that there was no specific finding that it was "false," is mere word play. As the Bankruptcy Court found, and the District Court affirmed *de novo*, based in considerable part on Dondero's and McGraner's admissions, HCRE knew when it filed the POC and Response that no legal or factual basis existed to contend that the Revised Allocation resulted from a "mutual mistake" or lack of consideration.

HCRE's primary argument—that it could not have acted in bad faith because it belatedly sought to withdraw its POC—misrepresents the record. As the Bankruptcy Court found, and the District Court affirmed, clear and convincing evidence demonstrates that, before, during, and after the hearing on the Withdrawal Motion, HCRE sought to preserve its baseless claims for another day. After the Bankruptcy Court explicitly told HCRE that it required "ironclad" language in an order that the issues in the POC would not be litigated in the future, HCRE never tendered a proposed form of order to dismiss its claims with prejudice. The timing of HCRE's Withdrawal Motion—immediately after taking Highland's depositions but just before Dondero and McGraner were to be deposed and after two years of litigation—itself constituted gamesmanship and was one of the reasons HCRE was unable to meet any of the *Manchester* standards for withdrawing contested claims.

As the District Court found after conducting a *de novo* review, the evidence clearly and convincingly established that HCRE filed and prosecuted the POC in bad faith. The Bankruptcy Court's factual findings should be affirmed as not clearly erroneous. The compensatory sanctions award, which included only a portion of the fees and expenses incurred

by Highland as a result of HCRE's bad faith conduct, should be affirmed as a proper exercise of the Bankruptcy Court's discretion.[3]

## STATEMENT OF THE CASE

### BACKGROUND: DONDERO CONTROLLED THE RELEVANT ENTITIES AND OVERSAW THE VERY TRANSACTIONS HCRE CHALLENGED IN ITS PROOF OF CLAIM

James Dondero controlled Highland Capital Management, L.P. ("**Highland**") until January 2020 when he voluntarily agreed to step down and an independent board was appointed to replace him. At all times, Dondero also controlled NexPoint Real Estate Partners, LLC (f/k/a HCRE Partners, LLC) ("**HCRE**") and SE Multifamily Holdings LLC ("**SE Multifamily**").[4]

On August 23, 2018, Dondero, while in control of both entities, caused Highland and HCRE to enter into a *Limited Liability Company Agreement* (the "**LLC Agreement**") pursuant to which SE Multifamily was formed for the purpose of acquiring and improving a substantial

---

[3] Highland did not seek, and the Bankruptcy Court did not award, any fees incurred in connection with the Disqualification Motion that would not have been required had HCRE acted in good faith. Consequently, HCRE's aggressive (and baseless) attack on the Bankruptcy Court's "bad faith" finding with respect to that issue is relevant *only* if this Court also overturns every other "bad faith" finding.

[4] (ROA.010727-010728) (Merits Order at 2-3).

portfolio of real estate assets.[5] Consistent with the parties' intent, ownership in SE Multifamily was divided 51% to HCRE and 49% to Highland (the "**Allocation**"),[6] with Dondero controlling SE Multifamily as its expressly designated "Manager."[7] Dondero executed the LLC Agreement on behalf of Highland and HCRE.

To finance their investment in SE Multifamily, Highland and HCRE, among other Dondero-controlled entities, obtained a loan from Keybank National Association ("**Keybank**") as of September 18, 2018.[8] Pursuant to the Loan Agreement, (a) Keybank provided up to $556,275,000 in secured loans to the Borrowers, (b) all of the Borrowers (including Highland) were jointly and severally liable, and (c) HCRE was designated as the "Lead Borrower" with the sole authority to determine how loan proceeds would be distributed among the Borrowers.[9]

---

[5] (ROA.000851 and ROA.000866) ¶¶ 1.3, 17; (ROA.010740) (Merits Order at 15).

[6] (ROA.000852 and ROA.000853) (LLC Agreement ¶¶ 1.7 and 2.1 and Schedule A); (ROA.010740-010741) (Merits Order at 15-16) (finding that Matt McGraner—a minority owner, Treasurer and Secretary of HCRE and the self-described "quarterback" of Project Unicorn—determined the Allocation was accurate).

[7] (ROA.000855) (LLC Agreement, Section 3.1).

[8] (ROA.000884) (the "**Loan Agreement**"). All of the "Borrowers" under the Loan Agreement were entities owned and/or controlled by Dondero. *Id.* at 3 (definition of "Borrowers").

[9] (ROA.000906-000907) at ¶¶1.05(a), (b); (ROA.010740-010741) (Merits Order at 15-16).

Organizational charts attached to the Loan Agreement confirmed the Allocation of interests in SE Multifamily set forth in the LLC Agreement.[10]

On March 15, 2019, the parties entered into an *Amended and Restated Limited Liability Company Agreement*, dated as of August 23, 2018 (the "**Amended LLC Agreement**"), in order to admit a new member, BH Equities, LLC ("**BH Equities**"), an entity unaffiliated with Dondero.[11] Pursuant to the Amended LLC Agreement, BH Equities obtained 6% of the membership interests in SE Multifamily, and the interests of HCRE and Highland were diluted *pro rata* such that HCRE's membership interest was reduced from 51% to 47.94% and Highland's membership interest was reduced from 49% to 46.06% (the "**Revised Allocation**"). The Revised Allocation was set forth in Schedule A to the Amended LLC Agreement alongside the capital contributions of each member.[12] Again, Dondero executed the Amended LLC Agreement on behalf of Highland *and* HCRE.

While the Revised Allocation showed that HCRE was "credited" with having made a capital contribution of $291 million, ***not one penny***

---

[10] (ROA.001034-001058) at Schedule 3.15.

[11] (ROA.001107).

[12] (ROA.001092, ROA.001110) ¶ 1.7, Schedule A.

*of that came from HCRE's own pocket*. In fact, no evidence exists showing that HCRE contributed anything of value to "Project Unicorn".[13]

In contrast to HCRE's ethereal contributions to the project, Dondero and McGraner admitted that Highland enabled and enhanced the economic value of Project Unicorn well beyond its stated cash contribution. Among other things: (i) Keybank *required* Highland's participation as a borrower because HCRE did not have the financial wherewithal to close the loan in its own name, (ii) Highland's inclusion created substantial tax benefits because, according to Dondero, "Highland's income was largely sheltered," and (iii) Highland contributed nearly ***all*** the human resources required to execute Project Unicorn.[14]

As the Bankruptcy Court found, the documentary and testimonial evidence also proved that the Revised Allocation set forth in Schedule A of the Amended LLC Agreement reflected the parties' intent, including

---

[13] Instead, Dondero used his power under the Loan Agreement to cause $250 million of proceeds from the Keybank loan to be "credited" to HCRE along with another $40 million borrowed from another Dondero-controlled entity. (ROA.010744-010745) (Merits Order at 19-20). In the end, HCRE provided none of its own capital, no human resources (HCRE had no employees), and no tax benefits. "Project Unicorn" was the code name for the project—one intended to allow Dondero and McGraner to reap the economic benefits while using entirely borrowed funds and shielding tax liabilities through Highland's involvement.

[14] (ROA.010742-010743) (Merits Order at 17-18).

evidence that Dondero and HCRE later followed and benefited from the Revised Allocation.[15] For example, after the Restated LLC Agreement was executed, Dondero (as HCRE's Manager) caused tens of millions of dollars of non-cash income to be allocated to Highland[16] on account of Highland's equity stake in SE Multifamily precisely because "Highland's income was largely sheltered."[17]

In sum, Dondero and McGraner knew that (a) the Revised Allocation was not the result of a "mutual mistake," (b) Highland provided substantial consideration for its equity stake in SE Multifamily beyond its stated capital, and (c) no legal or factual basis ever existed to reform, rescind, or modify the Amended LLC Agreement—clear and convincing evidence that HCRE filed and prosecuted the POC in bad faith.

---

[15] (ROA.010742-010753) (Merits Order at 17-28) (citing substantial testimonial and documentary evidence—including contemporaneous communications and tax returns—proving that HCRE knowingly adopted and accepted the Revised Allocation and adhered to it until it filed its POC).

[16] Any taxable income recognized at SE Multifamily was ultimately passed through to its members. This allocation passed non-cash taxable income up to Highland without any corresponding cash distribution. Because of tax structuring already in place at Highland (which was a also a pass-through entity for tax purposes), income passed to it was almost entirely sheltered from tax liability. But because virtually no income was allocated to HCRE (and instead was allocated to Highland), the transaction was effectively tax-free to HCRE. Despite no tax liability to HCRE, SE Multifamily (under Dondero-controlled HCRE's direction) still distributed cash to HCRE – quite a unicorn, indeed.

[17] (*See, e.g.*, ROA.013459 (Highland's 2019 Form K-1 showing it owned 46.06% of SE Multifamily's capital but—to take advantage of the tax shelter—over 90% of the profits and losses were allocated to it).

HCRE'S POC, HIGHLAND'S OBJECTION, AND HCRE'S RESPONSE

On April 8, 2020, Dondero signed and caused HCRE to file the

POC.[18] In its POC, HCRE asserted, among other things, that:

> [HCRE] may be entitled to distributions out of SE Multifam-
> ily, but such distributions have not been made because of the
> actions or inactions of [Highland]. Additionally, [HCRE] con-
> tends that all or a portion of [Highland's] equity, ownership,
> economic rights, equitable or beneficial interests in SE Multi-
> family does [not] belong to the [Highland] or may be the prop-
> erty of [HCRE]. Accordingly, [HCRE] may have a claim
> against [Highland]. [HCRE] has requested information from
> [Highland] to ascertain the exact amount of its claim. This
> process is on-going. Additionally, this process has been de-
> layed due to the outbreak of the Coronavirus. [HCRE] is con-
> tinuing to work to ascertain the exact amount of its claim and
> will update its claim in the next ninety days. [19]

On July 30, 2020, Highland objected to HCRE's POC (the "**Objec-**

**tion**"), contending it had no liability.[20]

On October 19, 2020, HCRE responded to the Objection (the "**Re-**

**sponse**") stating, among other things, that:

---

[18] (ROA.010728-010729) (Merits Order at 3-4). HCRE chides Highland for not deposing its inside or outside counsel.  Br. at 10.  Had it tried to do so, HCRE would surely have objected on privilege grounds.  More fundamentally, Highland did exactly what it should have: examine the person who swore under penalty of perjury that *he* had a "reasonable belief that the information [was] true and correct."

[19] *Id.* (footnote omitted). HCRE never (a) identified what "actions or inactions" Highland supposedly took to deprive HCRE of distributions (a proposition that never made sense since Dondero controlled SE Multifamily, HCRE, and Highland at all relevant times), or (b) updated its claim as promised.

[20] (ROA.000782-000804); (ROA.010730-010731) (Merits Order at 5-6).

After reviewing what documentation is available to [HCRE] with the Debtor, [HCRE] believes the organizational documents relating to SE Multifamily Holdings, LLC (the "SE Multifamily Agreement") ***improperly allocates the ownership percentages of the members thereto due to mutual mistake, lack of consideration, and/or failure of consideration. As such, [HCRE] has a claim to reform, rescind and/or modify the agreement.*** [21]

Thus, after reviewing the available documents, HCRE (a) filed its Response, (b) identified specific factual and legal bases for its POC, and (c) by doing so, eliminated any ambiguity or vagueness in the POC that purportedly existed.[22]

---

[21] (ROA.000806) at ¶5 (emphasis added). HCRE also contended that it "require[d] additional discovery." (ROA.000807) at ¶ 6. Even this statement was false: Dondero and McGraner—HCRE's only principals—**knew** (a) the Revised Allocation reflected the parties' intent and was not the result of any "mistake," mutual or otherwise, (b) Highland provided consideration well beyond its stated capital (indeed, Project Unicorn could never have closed without Highland's participation as a "borrower" under the Keybank loan), and (c) SE Multifamily, under Dondero's and HCRE's control, made distributions, allocated revenue, and prepared and filed tax returns consistent with the Revised Allocation before filing the POC. *See infra* at 21-25.

[22] HCRE apparently feels singled out since it is the "only party Highland accused of acting in 'bad faith' for filing a claim." Br. at 10-11. But HCRE is also the only one of the 63 parties subject to Highland's omnibus objection to claims who not only pressed its claim, but—as the clear and convincing evidence showed—never had a factual or legal basis to do so.

### THE PARTIES ENGAGE IN TWO ROUNDS OF DISCOVERY SANDWICHED AROUND HIGHLAND'S MOTION TO DISQUALIFY HCRE'S CONFLICTED COUNSEL

Consistent with the pre-trial schedule entered on December 14, 2020,[23] the parties engaged in a first round of discovery by (a) serving deposition notices and subpoenas, (b) exchanging discovery demands and written responses, and (c) searching for and producing voluminous documents.[24]

While preparing for depositions, Highland's counsel discovered that HCRE's counsel, Wick Phillips Gould & Martin, LLP ("**Wick Phillips**"), had jointly represented the parties in connection with the underlying transactions (the "**Joint Representation**"). Highland immediately raised the conflict with HCRE and promptly moved to disqualify Wick Phillips from representing HCRE in connection with the POC litigation (the "**Disqualification Motion**"), which HCRE opposed. On December 10, 2021, following a lengthy hearing, the Bankruptcy Court issued an order disqualifying Wick Phillips from representing HCRE in this matter (citing to Docket No. 3106).

---

[23] Docket No. 1568.

[24] *See, e.g.*, Docket Nos. 1898, 1918, 1964, 1965, 1995, 1996, 2118, 2119, 2134, 2135, 2136, and 2137.

Neither Dondero nor McGraner testified in connection with the Disqualification Motion. At the trial on the merits of the POC, however, McGraner admitted that he knew Wick Phillips jointly represented Highland and HCRE in connection with Project Unicorn and the Amended LLC Agreement.[25] In other words, HCRE knowingly hired a law firm to prosecute a bankruptcy claim arising from the same transactions in which the same law firm jointly represented Highland, and then opposed the Disqualification Motion, without ever acknowledging the Joint Representation.[26]

After HCRE retained new counsel, Hoge & Gameros, the parties amended the pre-trial schedule[27] and participated in an extensive second round of discovery, including exchanging another set of written discovery requests and document productions, serving deposition notices and subpoenas, and taking and defending multiple depositions, including

---

[25] (ROA.010194-010199).

[26] While HCRE claims its "expert opinion" proves it acted in good faith (Br. at 12), there is no evidence that McGraner's personal knowledge of the Joint Representation was shared with HCRE's expert or that the expert's opinion would have remained unchanged had he known of McGraner's admission.

[27] *See* Docket Nos. 3356 and 3368.

those of Highland, BH Equities, and SE Multifamily's outside accountant.[28]

### JUST BEFORE ITS WITNESSES WERE TO BE DEPOSED, HCRE ABRUPTLY MOVED TO WITHDRAW ITS POC

On August 12, 2022, after the parties completed written discovery and HCRE had deposed Highland's witnesses, and just days before Highland was to depose HCRE's witnesses, HCRE abruptly filed its *Motion to Withdraw Proof of Claim* (the "**Withdrawal Motion**"),[29] in which HCRE sought leave from the Bankruptcy Court to withdraw its POC.

While at times HCRE stated during the hearing that it would withdraw its POC with prejudice, the evidence also showed, and the Bankruptcy Court found, that:

- at other times before[30] and after[31] the hearing on the Withdrawal Motion, ***HCRE expressly contended that it could preserve its purported litigation positions for recission, reformation, and modification for the future,*** thereby validating the Bankruptcy Court's concerns about gamesmanship;

---

[28] (ROA.010735-010736) (Merits Order at n.36). Again, HCRE mischaracterizes objective facts, suggesting that only "limited discovery" had occurred and "at least" two depositions remained to be taken.

[29] (ROA.001765-001773).

[30] (ROA.001769) at 5 and n.8.

[31] *See* (ROA.010248) at 180:17–24 (HCRE counsel's closing argument): "They want you to make findings that we can't raise any of these other issues, recissions, stays, et cetera, going forward. That's not proper relief on a proof of claim."

- Notwithstanding HCRE's oscillating statements during the hearing, and despite its concerns about HCRE's abuse of the bankruptcy process, the Bankruptcy Court remained willing to sign an order resolving the dispute concerning the POC, but ***HCRE never tendered a proposed order that it now contends it desperately wanted***;[32]

- The primary basis for this appeal (that HCRE could not have acted in bad faith because it offered to withdraw the POC) is legally irrelevant because the Court denied the Withdrawal Motion only after making extensive factual findings that ***HCRE failed to meet any of the Manchester factors***;[33] and

- ***HCRE has never explained the highly suspect timing of the Withdrawal Motion or what prompted it.***[34]

---

[32] *See* (ROA.010774-010775) at 10–11 n.36: "In announcing its ruling from the bench, the court noted its concerns regarding the integrity of the bankruptcy system and claims process if it allowed HCRE to withdraw its Proof of Claim after two and a half years of litigation, causing the Debtor to spend hundreds of thousands of dollars litigating its Objection to a proof of claim. ***The court expressed concerns about gamesmanship, but, at the same time, assured the parties that it was still open to signing an agreed order regarding withdrawal of the Proof of Claim, if counsel could work out mutually acceptable language that protected both parties 'without the pressure of the Court hovering over you.'***" (emphasis added).  HCRE never took advantage of the opportunity provided by the Bankruptcy Court and never even tendered a proposed order—even though it was *required* to do so under Local Rule 7007-1(c).

[33] Under the circumstances, HCRE had no "right" to withdraw the POC. *See* Bankruptcy Rule 3006.  Instead, it had to meet its burden under the four-prong standard established in *Manchester, Inc. v. Lyle (In re Manchester, Inc.)*, 2008 Bankr. LEXIS 3312 (Bankr. N.D. Tex. Dec. 19, 2008), that considers: (1) the movant's diligence in bringing the motion, (2) any "undue vexatiousness" on the part of the movant, (3) the extent to which the suit has progressed, including the effort and expense undertaken by the non-moving party to prepare for trial, (4) the duplicative expense of re-litigation, and (5) the adequacy of the movant's explanation for the need to withdraw the claim. ***The Bankruptcy Court found that HCRE failed to meet any of these factors, a fact HCRE has never contested and continues to ignore***. *See* (ROA.002842-002847) at 50:14-55:21.

[34] HCRE filed its Withdrawal Motion immediately after it completed the depositions of Highland's witnesses and Highland produced more than 4,000 pages of documents, but two business days *before* HCRE's witnesses were to be deposed—facts the Bankruptcy Court considered when expressing concerns about HCRE's abuse of the judicial process.

Nothing that happened in connection with the Withdrawal Motion alters the undisputed facts that: (a) Dondero did nothing to verify that the POC was "true and accurate," despite swearing under penalty of perjury that he did; (b) HCRE—through McGraner—knew of Wick Phillips' Joint Representation and therefore had no basis to contest the Disqualification Motion; (c) Dondero and McGraner admitted that the Revised Allocation reflected the parties' intent (such that there was never a factual basis for recission, reformation, or modification of the Amended LLC Agreement), yet pursued the POC on this basis; (d) with Dondero controlling SE Multifamily as its Managing Member, SE Multifamily made distributions and filed tax returns consistent with the Revised Allocation that the POC sought to disclaim; and (e) HCRE failed to tender a proposed order containing the relief it now insists it wanted all along.

**THE EVIDENCE CLEARLY AND CONVINCINGLY PROVED THAT HCRE FILED AND PROSECUTED THE POC IN BAD FAITH**

On November 1, 2022, the Court held an evidentiary hearing on the POC and the Objection (the "**Trial**") during which it heard testimony from, among other witnesses, Messrs. Dondero and McGraner. After the Bankruptcy Court examined the documentary evidence and assessed the witness' credibility, it properly found that clear and convincing evidence

established that HCRE filed and prosecuted the POC in bad faith. *See* (ROA.011423-011454) (the "**Order**").

## Dondero Had No Basis to Swear Under Penalty of Perjury That the POC Was True and Correct

In the Order, the Bankruptcy Court found that the "evidence over-whelmingly supported a finding that Dondero signed and authorized the filing of the Proof of Claim without having even read it and without conducting any diligence on, or investigation into, whether the statements made in the Proof of Claim were truthful and accurate."[35] On cross-examination, Mr. Dondero admitted that he:

- could not recall "personally [doing] any due diligence of any kind to make sure that Exhibit A was truthful and accurate before [he] authorized it to be filed;"

- did not review or provide comments to the POC or its Exhibit A before it was filed;

- did not review the applicable agreements or any other documents before signing the POC;

- did not know (a) whose idea it was to file the POC, (b) who at HCRE worked with, or provided information to, Bonds Ellis [Dondero's original counsel] to enable Bonds Ellis to prepare the POC, (c) what information was given to Bonds Ellis to formulate the POC, or (d) whether "Bonds Ellis ever communicated with anybody in the real estate group regarding" the POC;

---

[35] (ROA.011434-011436) (Bad Faith Order at 12-14) (citing evidence).

- "never specifically asked anyone in the real estate group if [the POC] was truthful and accurate before [he] authorized it to be filed;

- "didn't check with any member of the real estate group to see whether or not they believed [the POC] was truthful and accurate before [he] authorized Bonds Ellis to file it;" and

- failed to do "anything . . . to make sure that this proof of claim was truthful and accurate before [he] authorized [his] electronic signature to be affixed and to have it filed on behalf of HCRE."[36]

If that were not enough to justify the Bankruptcy Court's finding that Dondero caused HCRE to file the POC in bad faith (it is), Dondero further admitted that (a) the Revised Allocation was consistent with the parties' intent (including his own), and (b) Highland provided substantial consideration beyond its stated capital. Given Dondero's personal knowledge and control of HCRE, HCRE had no factual or legal basis to challenge the Revised Allocation.

In a moment of candor, McGraner admitted HCRE filed the POC because Highland's bankruptcy—which Dondero personally initiated— changed the nature of the parties' relationship.[37] The "law of unintended consequences" is not a real, enforceable law, let alone one that provides

---

[36] (ROA.010768-010769) (Merits Order at 4-5) (citing evidence); (ROA.011426-011427) (Bad Faith Order at 4-5) (the Bankruptcy Court incorporated by reference the Merits Order into the Bad Faith Order, including "all of the findings and conclusions therein").
[37] (ROA.011449-011450) (Merits Order at 27-28).

a good faith basis to seek to rescind, reform, or modify an agreement that indisputably reflected everyone's intent.[38]

### The Amended LLC Agreement Accurately Reflected the Parties' Intent Leaving No Factual or Legal Basis for HCRE to File or Pursue the POC

The evidence at Trial (including documentary evidence and the testimony of Dondero, McGraner, and BH Equities) proved that HCRE filed and prosecuted its POC in bad faith. Specifically, the evidence indisputably established that the Amended LLC Agreement accurately reflected the signatories' intent concerning their respective capital contributions and the allocation of memberships interests in SE Multifamily:

- Representatives of the signatories exchanged views and drafts concerning capital contributions and ownership interests that were consistent with the final, executed version of the Amended LLC Agreement;[39]

- Dondero "agreed that [Schedule A] comported with his expectations when he signed the Amended LLC Agreement on behalf of HCRE and Highland, including his expectation that Highland's

---

[38] Although Dondero asserted that he relied on "processes" to ensure the accuracy of the POC, his own testimony contradicts this unsupported assertion. As the Bankruptcy Court found, Dondero "had no reasonable or justifiable basis to rely on anyone or any 'process' that was allegedly in place in connection with his signing of 'high risk' documents, because he asked no questions, conducted no due diligence, and made no effort, whatsoever, to verify that the information that he was swearing [to] was accurate under penalty of perjury was, in fact, truthful." (ROA.011436) (Order at 14).

[39] (ROA.010784-010785) Merits Order at 20-21.

49% interest was going to be diluted by the 6% being granted to BH Equities";[40]

- McGraner (a) reviewed Schedule A before the Amended LLC Agreement was executed, (b) saw that it showed Highland made a capital contribution of $49,000 and was receiving a 46.06% interest in SE Multifamily, and (c) concluded that Schedule A reflected his understanding of the agreement;[41]

- "'BH Equities agreed that [Highland] would hold a 46.06 percentage interest in SE Multifamily while making a capital contribution of $49,000' and 'believed Schedule A accurately reflected the intent of the parties'";[42]

- Numerous other provisions in the Amended LLC Agreement ratified the Revised Allocation set forth in Schedule A;[43] and

- Based on information provided by HCRE, SE Multifamily's tax returns "confirm that the parties intended that Highland, having made a capital contribution of $49,000, owned 46.06% of the SE Multifamily membership interests."[44]

McGraner's admissions clearly and convincingly established that the Revised Allocation was not the product of a "mutual mistake," that Highland provided "consideration" well beyond its stated capital, and that no basis existed to "reform, rescind and/or modify the agreement"[45] or to support HCRE's frivolous contention that "Highland had an

---

[40] (ROA.010785-010786) Merits Order at 21-22 (citing evidence).

[41] (*Id.* at 22 (ROA.010786) (citing evidence)).

[42] (*Id.* (citing evidence)).

[43] (ROA.011445-011447) Merits Order at 23-25 (citing evidence).

[44] (ROA.011447-011448) Merits Order at 25-26 (citing evidence).

[45] (ROA.000806 at ¶ 5).

improperly large equity allocation in SE Multifamily given the size of its investment and contribution."[46] McGraner admitted, among other things, that:

- He (a) owns 25% of HCRE; (b) has been one of only two officers of HCRE since it was formed (Dondero is HCRE's Manager); (c) is one of only two people authorized to act on HCRE's behalf (Dondero is the other); and (d) was the "quarterback" of the relevant transactions;[47]

- "Highland bankrolled HCRE's business;"[48]

- McGraner (a) did not believe there were any mistakes in the allocation of membership interests in the LLC Agreement and (b) had no reason to believe that Agreement failed to reflect the parties' intent;[49]

- McGraner and Dondero included Highland as a member of SE Multifamily because (a) HCRE did not have the financial wherewithal to close on the Keybank loan by itself and needed Highland to provide "capital flexibility" by co-signing for the Keybank loan;[50] and (b) Highland's inclusion was expected to provide tax benefits;[51]

- With a March 15, 2019 deadline for the completion of an amendment to the LLC Agreement that would both permit BH Equities to be admitted as a new member and have the amendment be retroactive to August 2018, the parties worked to update the

---

[46] (ROA.011261 at ¶ 28).

[47] (ROA.010143-010150 at 75:20-76:4; 79:12-25; 80:3-5; 82:13-16).

[48] (ROA.010148 at 80:12-20).

[49] (ROA.010150-010151 at 82:21-83:10).

[50] McGraner admitted that "in the end KeyBank insisted on Highland being a coborrower." (ROA.010153 at 85:2-4). Thus, it is indisputable that HCRE could not have closed on the Keybank loan and executed Project Unicorn without Highland.

[51] (ROA.010151-010153 at 83:11-85:2).

contribution schedule with full knowledge of Highland's capital contribution;[52]

- McGraner (a) reviewed the draft Schedule A for the proposed amendment; (b) saw that it showed Highland made a $49,000 capital contribution and received a 46.06% interest in SE Multi-family; (c) believed Schedule A reflected his understanding of the terms between Highland and HCRE; and (d) knew Highland had no obligation to make additional capital contributions;[53]

- The Revised Allocation was consistent with the parties' negotiation of the "waterfall" and other provisions in the Amended LLC Agreement that HCRE understood accurately reflected the parties' intent;[54]

- McGraner knew and understood that Schedule A reflected the parties' intent when it was signed;[55] and

- HCRE filed the POC only because Highland and HCRE were "no longer the same partners" after Highland filed for bankruptcy and the so-called dispute supposedly led to "an unintended consequence."[56]

Dondero also admitted that (a) Highland was included in SE Multifamily as part of a tax plan to shelter income, and (b) his understanding when he signed the Amended LLC Agreement was that Highland's 49% interest in SE Multifamily under the LLC Agreement would be reduced

---

[52] (ROA.010154-010156 at 86:9-88-4).

[53] (ROA.010161-010162 at 93:24-94:20); (ROA.010173-010174 at 105:11-106:7).

[54] (ROA.010163-010171 at 95:3-103:20); (ROA.010174-010175 at 106:8-107:22).

[55] (ROA.010168-010169 at 100:21-101:21).

[56] (ROA.010176-010177 at 108:3-109:4).

by its pro rata share of 6% to account for the interest being conveyed to BH Equities.[57]

Given these extensive, undisputed, and unqualified admissions, there never was a good-faith basis to (a) support HCRE's contention in the POC that "all or a portion of Debtor's equity, ownership, economic rights, equitable or beneficial interests in SE Multifamily does [not] belong to Debtor or may be property of Claimant,"[58] or (b) to "reform, rescind and/or modify the agreement."[59]

## HCRE Opposed Highland's Disqualification Motion in Bad Faith

HCRE vigorously opposed the Disqualification Motion on the knowingly false assertion that, in pertinent part, "Wick Phillips had no involvement in the formation, drafting, negotiation, or allocations in the Original LLC Agreement or the Amended LLC Agreement …."[60] HCRE's opposition to the Disqualification Motion caused more than six months of litigation, including discovery, the parties' retention of ethics experts, and a lengthy hearing.[61] But it was not until the Trial that McGraner—

---

[57] (ROA.010111 at 43:2-14); (ROA.010119-010122 at 51:11-52:18, 53:25-54:23).

[58] (ROA.010828).

[59] (ROA.000806 ¶ 5).

[60] (*See* ROA.001581 Docket No. 2927 at 2).

[61] (*See* ROA.010069-010270).

the self-described "quarterback" of Project Unicorn—baldly admitted that he knew of Wick Phillips' Joint Representation but watched as HCRE nevertheless opposed the Disqualification Motion.[62]

HCRE complains that the Bankruptcy Court should not have made a "bad faith" finding in connection with the Disqualification Motion because Highland did not expressly request that finding in its motion. But this gripe can be dismissed because (a) HCRE had ample opportunities to address the issue during oral argument on the "bad faith" motion and in its Motion for Reconsideration, (b) courts have inherent authority to sanction litigants for bad faith conduct even in the absence of a specific request, and (c) the Bankruptcy Court's other, extensive findings of "bad faith" conduct exist irrespective of the outcome of this issue.

**HCRE Tried to Preserve Its Baseless Claims in Bad Faith**

HCRE contends that, rather than "taking a win" after it moved to withdraw its Proof of Claim, "the Debtor [sic] and its lawyers chose to generate fees to get to the same result."[63]  HCRE continues to play games.

---

[62] (*See* ROA.010194-010200 at 126:8-132:3). HCRE never disclosed this critical fact when opposing the Disqualification Motion nor, apparently, was it ever shared with HCRE's ethics expert. Notably, the Bankruptcy Court *denied* Highland's request for attorneys' fees in connection with the Disqualification Motion, and no part of such fees was included in the compensatory damages awarded for the bad faith findings.

[63] (ROA.011255 (Summary)).

The evidence clearly and convincingly proved that any such "victory" through the withdrawal of the POC would have been pyrrhic because ***HCRE—in a clear act of bad faith—tried to withdraw its POC while preserving the substance of it claims to litigate on another day***. Had HCRE's duplicitous strategy been successful, Highland's interest in SE Multifamily would have remained subject to challenge in some other court—an untenable result for anyone, let alone a post-confirmation entity seeking to implement a court-approved asset monetization plan.

Again, HCRE expressly asserted that it "ha[d] a claim to reform, rescind and/or modify the agreement."[64]  The Withdrawal Motion was denied, in part, because "HCRE was not willing to agree, at the hearing, to language in an order allowing it to withdraw its Proof of Claim stating, unequivocally, that HCRE waived the right to relitigate or challenge the issue of Highland's 46.06% ownership interest in SE Multifamily."  Notably, despite expressing concerns about the "integrity of the bankruptcy system and claims process" and "gamesmanship," the Bankruptcy Court

---

[64] (ROA.010806-010807 ¶ 6).

*still* gave HCRE the opportunity to submit an unambiguous order and denied the Withdrawal Motion only *after* HCRE failed to so do.[65]

Undeterred, HCRE continued to prosecute the POC right through closing argument on the merits and tried to limit the Bankruptcy Court's ruling solely to the disallowance of the POC in an effort to save the underlying claims (*i.e.*, "claim[s] to reform, rescind and/or modify the agreement") for another day.[66] The Bankruptcy Court rebuffed HCRE's attempt to preserve its litigation claims, and Highland succeeded in retaining what it indisputably owned: good, clear title to a 46.06% interest in SE Multifamily that everyone—HCRE, Dondero, McGraner, and BH Equities—unequivocally acknowledged was Highland's intended allocation when the Amended LLC Agreement was executed and every day since.  At least until Dondero and McGraner tried to change their minds by filing and prosecuting the fraudulent POC.

## THE BANKRUPTCY COURT GRANTS HIGHLAND'S SANCTIONS MOTION

On June 16, 2023, Highland moved for an order finding HCRE filed and prosecuted the POC in bad faith and for sanctions in the form of a

---

[65] (ROA.010874-010875 at n. 36).

[66] (ROA.011084-011085 at 180:17-181:2) ("They want you to make findings that we can't raise any of these other issues, recissions, stays, et cetera, going forward.  That's not proper relief on a proof of claim.").

partial award of attorneys' fees.[67] HCRE opposed the Sanctions Motion.[68] On March 4, 2024, after a lengthy hearing, the Bankruptcy Court issued its *Memorandum Opinion and Order* (the "**Bad Faith Order**") granting Highland's Sanctions Motion and awarding compensatory sanctions against HCRE in the amount of $825,940.55. *See* ROA.011391-011422.

The Bankruptcy Court specifically found that clear and convincing evidence established that: (a) Dondero executed the POC in bad faith and abused the judicial process in doing so, (ROA.011433-011436) (Bad Faith Order at 11-14) (citing substantial evidence); (b) HCRE's litigation strategy evidenced bad faith and further abused the judicial process, (ROA.011436-011442) (Bad Faith Order at 14-20) (citing substantial evidence); and (c) HCRE's admissions further evidenced its bad faith conduct and abuse of the judicial process. (ROA.011442-011445) (Bad Faith Order at 20-23) (citing substantial evidence).

---

[67] (ROA.010804) (the "**Sanctions Motion**").
[68] (ROA.011254-011276).

**THE BANKRUPTCY COURT DENIES HCRE'S MOTION FOR RECONSIDERATION**

On March 18, 2024, HCRE moved for reconsideration of the Order on the grounds that, in pertinent part, it offered to withdraw its POC with prejudice. (*See* (ROA.011455-011511) (the "**Motion for Reconsideration**"). HCRE specifically argued that (a) the Bankruptcy Court allegedly made a "mistake" in denying the Withdrawal Motion because it mistakenly believed that HCRE was unwilling to withdraw the POC with prejudice to any future litigation on the issues raised therein; and (b) the Bankruptcy Court's mistake caused it to erroneously require the Trial on the POC, which caused Highland to incur fees that were improperly shifted to HCRE because those additional fees were not incurred "but for" HCRE's bad faith conduct. (*See id.*). Following oral argument,[69] the Bankruptcy Court denied the Motion for Reconsideration. (ROA.011545-011552) (the "**Reconsideration Order**").

In doing so, the Bankruptcy Court found that even if it misinterpreted HCRE's intentions concerning the withdrawal of the POC, this

---

[69] HCRE's *Statement of the Issues and Designation of Record on Appeal Pursuant to Fed. R. Bankr. P. 8009* [Docket 4075 n.1] filed on June 4, 2024, states: "An order for the transcript was submitted on June 4, 2024, in accordance with Fed. R. Bankr. P. 8009(b). The order is attached hereto as Exhibit A."

would "have been an error" only in respect of the Bankruptcy Court denying the Withdrawal Motion, which order was never appealed. (ROA.011551). The Bankruptcy Court noted that "the Rule 60(b) Motion smacks of being a collateral attack on the" Bankruptcy Court's order denying the Withdrawal Motion, and that, "[h]ad there been an appeal of it, it would have been apparent that it was a multi-faceted decision, based on many factors (i.e., the *Manchester* factors)—not merely the 'with prejudice' issues." (ROA.011551). Finally, the Bankruptcy Court found that it properly awarded Highland the fees it incurred after the Withdrawal Motion was denied, rejecting again HCRE's collateral attack on the decision denying the Withdrawal Motion. (ROA. 011551-011552).[70]

---

[70] HCRE continues to contend that "but for" the Bankruptcy Court's denial of the Withdrawal Motion, Highland would not have incurred any further fees. But that's just another way of saying that the Withdrawal Motion should have been granted. For numerous reasons (*e.g.*, HCRE's other equivocal statements; failure to proffer a proposed order; and failure to meet any of the *Manchester* factors), the Bankruptcy Court denied the Withdrawal Motion and it was never appealed. Thus, HCRE's argument is just a collateral attack on that final order.

# ARGUMENT

## STANDARD OF REVIEW

On appeal, a bankruptcy court's factual findings are reviewed for "clear error" and its legal conclusions are reviewed *de novo. Krueger v. Torres (In re Krueger)*, 812 F.3d 365, 369 (5th Cir. 2016); *Trendsetter HR L.L.C. v. Zurich Am. Ins. Co. (In re Trendsetter HR L.L.C.)*, 949 F.3d 905, 910 (5th Cir. 2020). The imposition of sanctions is reviewed for an "abuse of discretion." *Caroll v. Abide (In re Caroll)*, 850 F.3d 811, 814 (5th Cir. 2017). When a bankruptcy court sanctions a party using its inherent authority, those sanctions are upheld if "(1) the bankruptcy court finds that the party acted in bad faith or willfully abused the judicial process and (2) its finding is supported by clear and convincing evidence." *Kreit v. Quinn (In re Cleveland Imaging & Surgical Hosp., L.L.C.)*, 26 F.4th 285, 292 (5th Cir. 2022). The bankruptcy court's determination that the "clear and convincing" evidentiary standard is met is reviewed for an abuse of discretion. *See Dondero v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 105 F.4th 830, 837 (5th Cir. 2024) (noting "[a]lthough there must be clear and convincing evidence of a TRO violation to support a contempt finding .… we review the bankruptcy court's determination that such evidence exists only for an abuse of discretion.").

"A Bankruptcy Court does not abuse its discretion unless its ruling is based on an erroneous review of the law or on a clearly erroneous assessment of the evidence." *Caroll*, 850 F.3d at 814 (internal quotations omitted). The "clearly erroneous" standard warrants reversal only when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Butler Aviation Int'l v. Whyte* (*In re Fairchild Aircraft Corp.*), 6 F.3d 1119, 1128 (5th Cir. 1993); *see also Trendsetter*, 949 F.3d at 913.

Accordingly, a bankruptcy court's factual determination that "clear and convincing evidence" exists to support its finding is, itself, reviewed for "clear error." *Caroll*, 850 F.3d at 815 (noting that the facts that form the basis of a sanction award, such as a finding of bad faith, are reviewed for "clear error"); *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 582 (5th Cir. 2000) (affirming district court's factual findings that there was "clear and convincing evidence" to support its contempt finding as "not clearly erroneous."); *Highland*, 105 F.4th at 837 (bankruptcy court did not "clearly err" in determining there was clear and convincing evidence of bad faith); *Smith v. Robbins (In re IFS Fin. Corp.)*, 803 F.3d 195, 206-07 (5th Cir. 2015) (affirming bankruptcy court's factual finding that

the "clear and convincing" evidentiary standard had been met as not "clearly erroneous"); *Galaviz v. Reyes*, 95 F.4th 246, 257 (5th Cir. 2024) (reviewing district court's finding that "clear and convincing" evidentiary standard was met under "clear error" standard); *In re Eichor*, 689 F. Supp. 3d 438, 447-48 (S.D. Tex. 2023) (affirming the bankruptcy court's factual findings that clear and convincing evidence existed as "not clearly erroneous"); *Okorie v. Lentz*, No. 2:24-CV-51-KS-MTP, 2024 WL 4186937, at *5 (S.D. Miss. Sept. 9, 2024) ("[T]he Court finds that the Bankruptcy Court's finding of bad faith by Okorie is not clearly erroneous ....").[71]

A bankruptcy court's assessment of compensatory monetary sanctions is reviewed for "abuse of discretion." *Am. Airlines*, 228 F.3d at 578; *see also Edelman v. Drexel Highlander Ltd. P'ship, DGP, LLC*, No. 3:14-CV-4109-P, 2015 WL 5714728, at *1 (N.D. Tex. Sept. 28, 2015) ("The Court reviews the bankruptcy court's award of attorneys' fees for abuse of discretion."). For this "deferential" review, abuse of discretion is only

---

[71] One Fifth Circuit case suggests that the standard of review is *de novo*. *See Cadle Co. v. Moore (In re Moore)*, 739 F.3d 724, 729 (5th Cir. 2014) (the "decision to invoke the inherent power to sanction requires a finding of 'bad faith or willful abuse of the judicial process,' which finding we review *de novo*."). Relying on *Moore*, the District Court concluded that the "Bankruptcy Court's rulings were correct" after "having reviewed de novo the Bankruptcy Court's imposition of sanctions and determinations regarding bad faith and willful abuse of the judicial process." [District Court decision at 5]

found if the trial court "based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 803 (5th Cir. 2003) (internal quotation marks omitted).

### THE BANKRUPTCY COURT'S BAD FAITH FINDINGS ARE SUPPORTED BY CLEAR AND CONVINCING EVIDENCE

### The Bankruptcy Court's Finding That HCRE Filed the POC in Bad Faith Is Supported by Clear and Convincing Evidence

The Bankruptcy Court's finding that HCRE filed the POC in bad faith is supported by the clear and convincing evidence, including substantial documentary and testimonial evidence proving that HCRE knew the POC was baseless when it was filed in the Bankruptcy Court. As discussed above, the evidence proved that (a) Dondero knew there was no basis to assert the POC was "true and accurate;"[72] (b) Dondero and McGraner admitted (i) the Revised Allocation reflected the parties' intent, and (ii) Highland provided substantial consideration to SE Multifamily in exchange for its equity interest; and (c) Dondero ratified the Revised Allocation by causing SE Multifamily to make distributions and

---

[72] This singular action constituted clear and convincing evidence of bad faith. If knowingly filing a baseless claim does not constitute bad faith, then anyone can sign a proof of claim without reading it or conducting any diligence to ensure that it is "true and accurate." This is precisely why claim forms are signed under the penalty of perjury.

file tax returns in accordance with the Revised Allocation.[73] In light of these undisputed facts, HCRE had no factual or legal basis to file a POC challenging the Revised Allocation.

HCRE's attempts to deflect are unavailing. HCRE has not and cannot identify a scintilla of evidence that HCRE, its then-lawyers or anyone else did any diligence whatsoever to confirm that there was a good-faith basis for the claim nor—even now—does HCRE cite any evidence to support its POC. It is indisputable that had anyone actually reviewed the contemporaneous documents or spoken to Dondero or McGraner, they would have learned that there was no factual or legal basis to challenge the Revised Allocation. For its part, the Bankruptcy Court found that HCRE, through Dondero, (a) did nothing to validate that the POC was true and accurate when it was filed on HCRE's behalf, and (b) knew there was no basis to challenge the Revised Allocation because it was consistent with the parties' intent (including Dondero's own intent), and Dondero personally granted Highland its 46.06% equity stake knowing of Highland's direct and indirect contributions to the enterprise.[74] This clear and

---

[73] *See supra* at 21-25.

[74] *See supra* at 21-25.

convincing evidence alone demonstrates that HCRE knew when it filed the POC that no factual or legal basis existed to rescind, reform, or modify the Amended LLC Agreement so as to dispossess Highland of its 46.06% ownership interest in SE Multifamily.

HCRE also challenges the Bankruptcy Court's findings by arguing that the POC was phrased in "ambiguous language" and "hedged" about whether HCRE had any claim since it was allegedly still "investigating" whether it had a claim.[75] But, again, no "discovery" or "investigation" was ever needed because Dondero and McGraner—HCRE's principals and the only people authorized to act on its behalf—knew that there was no good faith basis to challenge the Revised Allocation. Consequently, HCRE's attempt to rewrite the record by focusing on the word "may" or a few supposedly "indefinite" words in Exhibit A fails.[76]

HCRE's reliance on *In re Cushman*, 589 B.R. 469, 491 (Bankr. D. Me. 2018), is misplaced. *Cushman* dealt with whether a party

---

[75] (Br. at 32).

[76] Moreover, HCRE removed any alleged "ambiguity" in the POC when it filed its Response, specifically contending that the Revised Allocation resulted from a "mutual mistake" and that Highland provided insufficient consideration for its equity interest in SE Multifamily. Since Dondero and McGraner were the only people authorized to act on HCRE's behalf, one of them caused the Response to be filed in bad faith because both knew those contentions were false.

(Resurgent) violated Bankruptcy Rule 9011 where it had a practice of affixing an employee's (Gaines) signature to a proof of claim and then filing the proof of claim, all without prior review of the proof of claim by Gaines. The Court granted Resurgent's motion for summary judgment seeking a declaration that it was not subject to sanctions for filing the proof of claim at issue where the evidence established that Resurgent made reasonable inquiries and reasonably relied on internal processes to verify the validity of the allegations in the claim. *See id.* at 493-97. Here, unlike in *Cushman*, Dondero admittedly did *nothing* to satisfy himself that the POC was true and accurate or that there was a basis to rely on whatever "process" he imagined existed. Indeed, Dondero knew there was no factual basis to challenge the Revised Allocation such that no "process" could have ever uncovered facts to support HCRE's claims for rescission and modification. Thus, *Cushman* is easily distinguishable.

Accordingly, the clear and convincing evidence, including admissions by Dondero and McGraner, supports the Bankruptcy Court's finding that HCRE filed the POC in bad faith. This finding should be affirmed as not clearly erroneous.

**The Bankruptcy Court's Finding That HCRE Prosecuted the POC in Bad Faith Is Supported by Clear and Convincing Evidence**

The Bankruptcy Court correctly found that the clear and convincing evidence demonstrated that HCRE's litigation strategy and actions in connection with the prosecution of its POC abused the judicial process.[77] The Bankruptcy Court's finding that HCRE's litigation strategy constituted bad-faith is supported by ample evidence, including: (a) HCRE's baseless opposition to the Disqualification Motion;[78] (b) extensive, multi-tiered discovery without a good faith basis; (c) HCRE's sudden attempt to withdraw its POC (i) after two years of aggressive ligation and without explanation, and (ii) as the parties were completing extensive discovery and two business days before HCRE's witnesses, Dondero and McGraner, were scheduled to be deposed;[79] and (c) HCRE's repeated attempts to preserve its identical litigation positions regarding SE Multifamily against Highland for use in the future.[80]

HCRE's assertions that its actions do not constitute evidence of bad faith are meritless. If filing a perjurious proof of claim and aggressively

---

[77] (*See* ROA.011436) (Order at 14)).

[78] (*See supra* at 25-26).

[79] (*See supra* at 16-17).

[80] (*See supra* at 26-28).

pursuing it through years of litigation is not bad faith in a bankruptcy case, it is hard to imagine what is. HCRE's latest cry that "merely unsuccessfully opposing a motion is not evidence of bad faith" (Br. at 34-35) is belied by the POC and the record. Of course, unsuccessfully opposing a motion is not, in itself, evidence of bad faith. But here, the evidence clearly and convincingly shows that HCRE aggressively prosecuted the POC and opposed the Disqualification Motion all the while knowing that its actions were baseless. This is bad faith. McGraner's admission at Trial that HCRE opposed the Disqualification Motion despite knowing of Wick Phillips' Joint Representation and without disclosing this critical fact to its expert, Highland, or the Bankruptcy Court is just one more example. *See supra* at 25-26.[81] HCRE's contention that there is no evidence that HCRE opposed the Disqualification Motion in bad faith is thus belied by the record.

HCRE also challenges the Bankruptcy Court's finding that its Withdrawal Motion constituted evidence of "gamesmanship." (*See* Br. at

---

[81] HCRE's contention that it "presented the testimony of a professional ethics expert demonstrating that the purported conflict did not require the law firm's disqualification, (Br. at 34), thus misrepresents the facts. No credible ethics expert would opine that (in the absence of a waiver, which was neither sought nor obtained here) an attorney could oppose a former client in a dispute concerning the subject matter of the prior representation.

35-38). The evidence clearly and convincingly shows that, although HCRE sought to withdraw its POC, it did so in bad faith. As the Bankruptcy Court found, the sudden timing of the Withdrawal Motion—after two years of litigation, at the close of discovery, and right before the depositions of HCRE's witnesses—on its face, demonstrated improper litigation tactics. *See supra* at 16-17. The evidence, taken as a whole, clearly and convincingly reflected gamesmanship on HCRE's part. (*See* Order at 18) (ROA.011440).

HCRE's assertion that the Bankruptcy Court denied the Withdrawal Motion because HCRE refused to agree that "Highland would *always* have a 46.06% interest in SE Multifamily" in "perpetuity," (Br. at 38-40; 44), is without merit for multiple reasons. ***First***, the Bankruptcy Court never required HCRE to agree that Highland would hold a 46.06% interest to the end of time. As discussed above, the sole concern was about ***claims or theories that formed the basis of the POC*** being resurrected somewhere else in the future. *See supra* at 26-28. The fact that the parties never reached an agreement on this simple issue rightfully caused the Bankruptcy Court concern that HCRE was trying to preserve

the issues in the POC for future litigation and that HCRE was not acting in good faith when it sought to withdraw the POC.

**Second**, the Bankruptcy Court's finding that HCRE did not seek to withdraw its POC in good faith and to preserve its litigation positions against Highland for another day was corroborated at the Trial on the POC. As discussed above, during closing argument, HCRE's counsel explicitly tried to preserve the claims in the POC based on reformation and rescission of the Amended LLC Agreement for another day and another court. *See supra* at 16 n.31; 28 n.66. The Bankruptcy Court's findings about HCRE's litigation strategy and actions, including its repeated attempts to preserve the very claims upon which the POC was falsely based, for another day is supported by the clear and convincing evidence in the record.

**Third**, HCRE's equivocation about whether it would raise the issues in the POC in another forum in the future during the hearing on the Withdrawal Motion was only one piece of evidence that the Bankruptcy Court considered in finding that HCRE's litigation strategy demonstrated bad faith. *See supra* at 30-31.

In sum, viewed in its entirety, clear and convincing evidence supports the Bankruptcy Court's findings that HCRE's litigation strategy and actions in filing and prosecuting the POC (including baseless opposition to the Disqualification Motion, the timing of the Withdrawal Motion, and its repeated and overt attempts to preserve the very claims upon which its POC was based) demonstrates bad faith and a willful abuse of the judicial process. *See Caroll*, 850 F.3d at 816 ("[a]t bottom, the record fully supports the bankruptcy court's determination of bad faith" where, among other things, parties attempted to relitigate issues that had been resolved, pursue remedies that were unsupported, and "persisted in their unsupported filings"); *Jacobsen v. Moser (In re Jacobsen),* 609 F.3d 647, 662 (5th Cir. 2010) (affirming bankruptcy court's finding of bad faith as not clearly erroneous where "[t]he bankruptcy court had ample evidence in the form of Jacobsen's own testimony," and "the bankruptcy court, sitting as the factfinder, had the ability to evaluate Jacobsen's testimony and his credibility firsthand. We have little difficulty concluding that a finding of bad faith is plausible in light of the record viewed in its entirety."); *Cleveland Imaging*, 26 F.4th at 298 (affirming bankruptcy court's conclusion that parties "were acting in bad

faith when they filed their adversary. The factual findings stand."). The

Bankruptcy Court's finding that clear and convincing evidence existed to

demonstrate HCRE's bad faith should be affirmed as not clearly errone-

ous.

### THE BANKRUPTCY COURT PROPERLY EXERCISED ITS DISCRETION IN AWARDING FEES INCURRED AS A RESULT OF HCRE'S BAD FAITH CONDUCT

The Bankruptcy Court's compensatory sanction award against

HCRE in the amount of $825,940.55 was a proper exercise of its discre-

tion. "It is well-settled that a court may impose sanctions against liti-

gants so long as the court makes a specific finding that they engaged in

bad faith conduct." *Schermerhorn v. Kubbernus (In re Skyport Glob.*

*Commc'n, Inc.)*, 642 F. App'x 301, 304 (5th Cir. 2016) (citing *Leonard v.*

*Luedtke (In re Yorkshire, LLC)*, 540 F.3d 328, 332 (5th Cir. 2008)); *see*

*also Cleveland Imaging* 26 F.4th at 297 (noting that a bankruptcy court

may sanction litigants "if it finds, by clear and convincing evidence, that

they acted in bad faith or willfully abused the judicial process"); *In re*

*Brown*, 444 B.R. 691, 695 (E.D. Tex. 2009) (issuing sanctions against

party and their counsel, and relying on section 105(a) of the Bankruptcy

Code as a basis for awarding attorneys' fees against parties for acting "with reckless disregard of their duty to this Court").

A bankruptcy court has "broad discretion" to determine reasonable attorneys' fees. *See In re Monteagudo*, 536 F. App'x 456, 459 (5th Cir. 2013) (sanctions orders granted under bankruptcy court's inherent powers are reviewed for "abuse of discretion"); *ASARCO, L.L.C. v. Jordan Hyden Womble Culbreth & Holzer, P.C. (In re ASARCO, L.L.C.),* 751 F.3d 291, 294 (5th Cir. 2014), *aff'd sub nom., Baker Botts L.L.P. v ASARCO LLC*, 576 U.S. 121 (2015) ("A bankruptcy court has 'broad discretion' to determine reasonable attorneys' fees," as the bankruptcy court is familiar "with the actual services performed" and is well-positioned to determine "what is just and reasonable") (internal quotations omitted); *In re Paige*, 365 B.R. 632, 637-640 (Bankr. N.D. Tex. 2007) (awarding attorneys' fees against debtor for their "bad faith" conduct during bankruptcy case, noting "[t]he sanction here is derived from the Court's inherent power to sanction" under section 105(a)); *Lopez v. Portfolio Recovery Assocs., LLC (In re Lopez)*, 576 B.R. 84, 93 (S.D. Tex. 2017) (same); *Highland Cap. Mgmt.*, 105 F.4th at 841 ("Undergirding our analysis of the sanctions award here is a recognition of the goal of such awards everywhere: 'to do

rough justice.' … Complete accuracy is neither required nor expected. The bankruptcy court's judgments in these matters are entitled to our 'substantial deference.'") (internal quotations omitted).

HCRE argues that the sanctions award constitutes an abuse of discretion because there was supposedly no "causal link" between its bad-faith conduct and the fees incurred, reiterating its same baseless attacks on the Bankruptcy Court's factual findings of bad faith. (*See* Br. at 41-45). Each of HCRE's assertions is meritless.

First, HCRE contends that it cannot be ordered to reimburse the fees and expenses incurred by Highland in connection with the Disqualification Motion because "*Highland*, not HCRE, decided to initiate a disqualification dispute that lasted nearly six months." (Br. at 43). The Bankruptcy Court's factual finding that HCRE opposed the Disqualification Motion in bad faith is supported by the clear and convincing evidence. *See supra* at 25-26. More fundamentally, however, Highland did not seek, ***and the Bankruptcy Court did not award, any fees Highland incurred in connection with the Disqualification Motion***. (ROA.011439 n.43).

Second, HCRE challenges the Bankruptcy Court's shifting of approximately $375,000 of fees incurred after the denial of the Withdrawal Motion, maintaining this fee award was premised on the "erroneous conclusion" that HCRE refused to withdraw its POC with prejudice. (Br. at 43-44). Again, HCRE misrepresents the facts. As discussed above, the evidence—including the timing of the Withdrawal Motion; HCRE's equivocation before, during, and after the hearing as to whether it would preserve its claims; HCRE's failure to proffer an unambiguous proposed order; and HCRE's failure to meet any of the *Manchester* factors—clearly and convincingly established that HCRE's Withdrawal Motion was itself filed in bad faith. *See supra* at 16-17. HCRE's contention that "the parties are indeed in the *exact same position* as they would have been had Highland just 'taken the win' when HCRE sought to withdraw its POC," (Br. at 45), is thus belied by the record. As the Bankruptcy Court found, "the evidence clearly and convincingly established that any 'win' or 'victory' that Highland would have obtained through the withdrawal of the Proof of Claim would have been pyrrhic because ***HCRE—in a clear act of bad faith—tried to withdraw its Proof of Claim while preserving the substance of it claims for another day***. Had HCRE's duplicitous

strategy been successful, Highland's interest in SE Multifamily would have remained subject to challenge—an untenable result for anyone, let alone a post-confirmation entity seeking to implement a court-approved asset monetization plan." (Order at 27) (ROA.011417) (emphasis in original).

For this additional reason, the fees incurred by Highland after HCRE filed its Withdrawal Motion would not have been incurred "but for" HCRE's bad faith conduct and willful abuse of the judicial process. (ROA.011450). This finding was not based on an erroneous view of the facts, and the Bankruptcy Court did not abuse its broad discretion in awarding compensatory fees on this basis. HCRE's argument that there was no "but for" connection between its conduct and fees incurred after the Withdrawal Motion, totaling $375,000, is without merit. The Bankruptcy Court's findings on this basis should be affirmed as a proper exercise of its discretion.

HCRE's reliance on *The Charitable DAF Fund, L.P. v. Highland Capital Management, L.P. (In re Highland Capital Management, L.P.)*, 98 F.4th 170, 175 (5th Cir. 2024), is misplaced. There, after the plaintiff contemptuously filed a motion in the District Court as opposed to the

Bankruptcy Court, Highland brought a contempt motion against the DAF for its conduct. On appeal, the Fifth Circuit held there was no "causal link" between the plaintiff's contemptuous conduct and Highland's fees incurred in connection with bringing the contempt motion where the "DAFs *only* contumacious conduct was filing the Motion in the district court as opposed to the bankruptcy court." 98 F.4th at 175. Here, by contrast, the Bankruptcy Court's compensatory sanction award against HCRE reflects reimbursement of Highland's actual attorneys' fees and costs incurred *only* as a result of HCRE's bad-faith conduct in filing and prosecuting the POC. Unlike in the *DAF Fund*, the Bankruptcy Court did not shift to HCRE the fees and expenses incurred in connection with the Sanctions Motion. The Bankruptcy Court's sanction award is thus in line with *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017). *See also Highland Cap. Mgmt.*, 105 F.4th at 839-41 (affirming award of attorneys' fees incurred as a result of Dondero's contemptuous conduct).

HCRE's reliance on *America Unites for Kids v. Rousseau*, 985 F.3d 1075 (9th Cir. 2021) is also misguided. There, an order of sanctions was reversed where, among other things, the order made clear that such

sanction was punitive and also provided "no analysis of any connection between any harm to Defendants caused by Plaintiffs' purported misconduct . . . ." *Id.* at 1092. Here, unlike in *Rousseau*, the Bankruptcy Court's Order made clear that the sanction award was to compensate, not punish, Highland for damages incurred but-for HCRE's bad faith conduct. HCRE's other case cites are factually distinguishable and irrelevant. *See, e.g.*, *In re Dunn*, 620 B.R. 228, 233 (S.D.N.Y. 2020) (dealing with the harsh sanction of dismissal of case with prejudice for failure to prosecute); *In re Frantz*, 655 B.R. 594, 604 (B.A.P. 9th Cir. 2023) (reversing finding of party's bad faith for making false statement in court where the party's legal argument did not lack a "reasonable basis in law," and had "plausible, good faith legal basis"); *Maguire Oil Co. v. City of Houston*, 143 F.3d 205, 211 (5th Cir. 1998) (reversing finding of bad faith and sanctions against the City for "concealing" a decision from the court where "nothing in the record indicates that the City deliberately concealed the *Trail* decision from the district court's attention between December 8, 1995 (the date the *Trail* decision was rendered) and November 14, 1996 (the date the court below was informed of that decision).").

Accordingly, the Bankruptcy Court acted well within its broad discretion in issuing compensatory sanctions against HCRE in the form of reimbursement to Highland for its attorney's fees and costs incurred as a result of HCRE's bad faith conduct. *See Skyport*, 642 F. Appx at 304 (finding "the bankruptcy court did not abuse its discretion in ordering sanctions"); *Yorkshire*, 540 F3d at 332 (affirming bankruptcy court's imposition of sanctions for bad faith filing "following an extensive hearing in which the bankruptcy court heard testimony from the parties and witnesses and made certain credibility determinations," and "made specific findings that Appellants acted in bad faith"); *Cleveland Imaging*, 26 F.4th at 294 (upholding the bankruptcy court's sanction order that required the parties who were found to have filed bankruptcy petitions in bad faith to reimburse the fees incurred by a post-confirmation litigation trust in responding to the bad faith filing); *Caroll*, 850 F.3d at 816 (bankruptcy court did not abuse its discretion in ordering the debtors to "pay $49,432, which represents the amount of attorneys' fees incurred by [the bankruptcy trustee] in responding to certain instances of the [debtors'] bad faith conduct"). The Bankruptcy Court's sanction award should be affirmed.

## THE BANKRUPTCY COURT PROPERLY EXERCISED ITS DISCRETION IN DENYING THE MOTION FOR RECONSIDERATION

The Bankruptcy Court's denial of the Motion for Reconsideration was a proper exercise of its discretion.[82] Rule 60(b)(l) allows for relief from judgment only where the movant shows "mistake, inadvertence, surprise, or excusable neglect." FED. R. CIV. P. 60(b)(1). HCRE argues that the Bankruptcy Court made a mistake of fact in concluding that (a) HCRE refused to withdraw its claim subject to the POC with prejudice and (b) therefore, the Bankruptcy Court's finding that HCRE's bad faith conduct caused Highland to incur fees was also wrong. (*See* Br. at 45-46).

HCRE maintains that the Bankruptcy Court never asked it to unequivocally agree that HCRE "would not be able to assert its claims and/or theories regarding rescission and/or reformation of the SE [Multifamily] LLC Agreement in any future litigation in any court or forum," and that "even so," HCRE "repeatedly agreed" to do so. (Br. at 46-47). As the

---

[82] A bankruptcy court's denial of a motion for relief from judgment under Rule 60(b) is reviewed for abuse of discretion. *Martin v. Akzo Nobel Polymer Chems. LLC*, 180 F. App'x 519, 520–21 (5th Cir. 2006); *see also Walker v. Transfrontera CV de SA*, 634 F. App'x 422, 426 (5th Cir. 2015) ("The [trial] court enjoys a wealth of discretion when assessing a Rule 60(b) motion … its denial of relief upon such motion will be set aside on appeal only for abuse of that discretion. It is not enough that the granting of relief might have been permissible, or even warranted denial must have been so unwarranted as to constitute an abuse of discretion.") (internal quotations omitted).

Bankruptcy Court found in its Reconsideration Order, HCRE was given the opportunity to do what it now claims it always intended—propose an order assuring the Bankruptcy Court that it would not preserve its claims for another day—but it failed to do so. Without an agreed order, the "Bankruptcy court would not allow withdrawal of the HCRE proof of claim *without clarity that the proof of claim issues would not be raised in future litigation somewhere*." (ROA.011550) (emphasis added). And as discussed, HCRE's refusal to even propose an order on its withdrawal of its POC was one piece of evidence, among many, that supported the Bankruptcy Court's finding that HCRE prosecuted its POC in bad faith.

HCRE argues, for the first time on appeal, that it was somehow the Bankruptcy Court's "fault" that HCRE did not understand that "clear and unequivocal" language precluding future litigation was proper under the circumstances, and that the Bankruptcy Court "could have crafted an order" making this clear under Federal Rule of Bankruptcy Procedure 3006 ("**Rule 3006**"). (Br. at 47). This argument should be summarily rejected for at least two reasons. First, the Bankruptcy Court clearly stated during the hearing that any order required "ironclad" language that

HCRE was waiving any future challenge to the Revised Allocation based on claims raised in the baseless POC: rescission, reformation, or modification. (*See* ROA.002846 at 54:8-15; (ROA.002824 at 32:22-33:7)). Second, like any movant in this District, ***HCRE (not the Bankruptcy Court) had an affirmative obligation to tender a proposed form of order*** when it filed the Withdrawal Motion and failed to do so.[83]

HCRE's assertion that the Bankruptcy Court abused its discretion denying reconsideration of the sanctions award is premised on HCRE's same flawed arguments and misrepresentations of the record discussed above. (*See* Br. at 48). HCRE's narrative that "Highland wound up in a worse legal position than it would have been had it simply accepted HCRE's concessions at the withdrawal hearing," and that it was "Highland's choice to keep litigating when HCRE wanted to stop, (Br. at 48), is, based on the record as a whole, divorced from reality. HCRE willfully ignores that even during its closing argument at the Trial, HCRE was still actively trying to preserve its litigation strategy for another day, telling the Bankruptcy Court that it could not properly rule on HCRE's

---

[83] *See Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas.* 7007-1(c) ("Each motion shall be accompanied by a proposed order that is set forth separately as an exhibit to the motion.").

claims for rescission, reformation, and mistake. The Bankruptcy Court properly exercised its broad discretion in denying the Motion for Reconsideration. This finding should be affirmed.

## CONCLUSION

After conducting a de novo review, the District Court properly affirmed the Bankruptcy Court's Sanctions Order. This Court should do so as well.

March 5, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Jordan A. Kroop (NY Bar No. 2680882)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Email: jpomerantz@pszjlaw.com
          jmorris@pszjlaw.com
          gdemo@pszjlaw.com
          jkroop@pszjlaw.com

-and-

**HAYWARD PLLC**
*/s/ Zachery Z. Annable*
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Email: MHayward@HaywardFirm.com
          ZAnnable@HaywardFirm.com

*Counsel for Highland Capital Management, L.P.*

## CERTIFICATE OF COMPLIANCE WITH FRAP 32

1.    This document complies with the word limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, including footnotes and excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 11,960 words.

2.    This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced serif typeface (Century Schoolbook) at 14-point type (12-point for footnotes).

*/s/ Zachery Z. Annable*
Zachery Z. Annable

## CERTIFICATE OF SERVICE

I certify that, on March 5, 2026, a copy of the foregoing brief was served electronically on all parties registered to receive electronic notice in this case via the Court's CM/ECF system.

*/s/ Zachery Z. Annable*
Zachery Z. Annable