No. 25-11185

# United States Court of Appeals for the Fifth Circuit

IN RE HIGHLAND CAPITAL MANAGEMENT, L.P., *Debtor,*

NEXPOINT REAL ESTATE PARTNERS, LLC (F/K/A HCRE PARTNERS, LLC)
*Appellant,*

v.

HIGHLAND CAPITAL MANAGEMENT, L.P.,
*Appellee.*

On Appeal from the United States District Court
for the Northern District of Texas, Dallas Division
Case No. 3:24-cv-01479-S

## REPLY IN SUPPORT OF APPELLANT'S BRIEF

Amy L. Ruhland
Benjamin Bernell
PILLSBURY WINTHROP SHAW
PITTMAN LLP
Texas Bar No. 24043561
amy.ruhland@pillsburylaw.com
Texas Bar No. 24059451
ben.bernell@pillsburylaw.com
401 W 4th Street, Suite 3200
Austin, Texas 78701
Tel.: (512) 580-9600

*Counsel for Appellant NexPoint Real Estate Partners, LLC (f/k/a HCRE Partners, LLC)*

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................1

II.   HIGHLAND'S ARGUMENTS ARE FACTUALLY AND
LEGALLY WRONG..................................................................1

    A.  Highland Misstates the Standard of Review ............................1

    B.  Highland Does Not and Cannot Point to Any "Clear and
    Convincing Evidence" of Bad Faith....................................6

    C.  Highland's Analysis of "But For" Causation Is Wrong...........20

    D.  Highland's Arguments About the Reconsideration Order
    Are Wrong.................................................................26

    E.  Highland's Brief Does Not Address the Errors in the
    District Court's Order ...................................................28

III.  CONCLUSION ...................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Am. Airlines, Inc. v. Allied Pilots Ass'n,*
228 F.3d 574 (5th Cir. 2000) ................................................................ 5

*Am. Unites for Kids v. Rousseau,*
985 F.3d 1075 (9th Cir. 2021) ............................................................ 29

*Butler Aviation Int'l, Inc. v. Whyte (In re Fairchild Aircraft Corp.),*
6 F.3d 1119 (5th Cir. 1993) ................................................................. 4

*Carroll v. Abide (In re Carroll),*
850 F.3d 811 (5th Cir. 2017) ........................................................... 5, 6

*Chaves v. M/V Medina Star,*
47 F.3d 153 (5th Cir. 1995) ................................................................. 6

*Christiansburg Garment Co. v. EEOC,*
434 U.S. 412 (1978) ............................................................................ 7

*In re Cushman,*
589 B.R. 469 (Bankr. D. Me. 2018) .................................................... 12

*Derr v. Swarek,*
766 F.3d 430 (5th Cir. 2014) .............................................................. 22

*Dondero v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.),*
105 F.4th 830 (5th Cir. 2024) .............................................................. 5

*In re Eichor,*
689 F. Supp. 3d 438 (S.D. Tex. 2023) .................................................. 5

*Galaviz v. Reyes,*
95 F.4th 246 (5th Cir. 2024) ................................................................ 4

*Houston v. Citi Mortg. Corp.,*
No. 3:15-CV-3098-B, 2016 WL 3182003 (N.D. Tex. June 8, 2016) .... 23

*Krueger v. Torres* (*In re Krueger*),
    812 F.3d 365 (5th Cir. 2016) .................................................................. 5

*In re Manchester, Inc.*,
    No. 08-03163-BJH, 2008 WL 5273289 (Bankr. N.D. Tex. Dec. 19,
    2008) (Houser, C.J.) ...................................................................... 23, 24

*Miller v. Dunn*,
    774 F. Supp. 3d 806 (N.D. Tex. 2024), *aff'd*, No. 24-11069, 2025 WL
    3231718 (5th Cir. Nov. 19, 2025) ........................................................ 7

*In re Moore*,
    739 F.3d at 731 ............................................................................ *passim*

*Nat'l Oilwell Varco, L.P. v. Auto-Dril, Inc.*,
    68 F.4th 206 (5th Cir. 2023) ................................................................ 3

*Okorie v. Lentz*,
    No. 2:24-CV-51-KS-MTP, 2024 WL 4186937 (S.D. Miss. Sept. 9,
    2024) ..................................................................................................... 5

*Smith v. Robbins* (*In re IFS Fin. Corp.*),
    803 F.3d 195 (5th Cir. 2015) ................................................................ 5

*The Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P.*,
    98 F.4th 170 (5th Cir. 2024) .............................................................. 22

*Trendsetter HR L.L.C. v. Zurich Am. Ins. Co.* (*In re Trendsetter HR
    L.L.C.*),
    949 F.3d 905 (5th Cir. 2020) .......................................................... 3, 4

*Vikas WSP, Ltd. v. Econ. Mud Prods. Co.*,
    23 F.4th 442 (5th Cir. 2022) ................................................................ 4

*Williams v. Lockheed Martin Corp.*,
    990 F.3d 852 (5th Cir. 2021) ................................................................ 8

## Statutes and Codes

United States Code
    Title 28, Section 1651 ......................................................................... 5

Bankruptcy Code
    Section 324(a) .................................................................................. 5
    Section 707 ...................................................................................... 5

## Rules and Regulations

Federal Rules of Bankruptcy Procedure
    Rule 3006(c) .................................................................................. 25
    Rule 7007 ...................................................................................... 26
    Rule 9011 ........................................................................ 5, 12, 13, 14

Federal Rules of Civil Procedure
    Rule 65 ............................................................................................ 5

Local Bankruptcy Rules For the Bankruptcy Court of the Northern
    District of Texas
    Rule 7001-1(c) .............................................................................. 26

## I.     INTRODUCTION

In an appellate brief that ignores relevant evidence and relies heavily on misdirection, Highland urges this Court to affirm the bankruptcy court's erroneous finding of bad faith and resulting punitive sanction.   In advancing its position, Highland makes three core arguments: (1) HCRE "knew" its proof of claim ("POC") was baseless at the time of filing; (2) HCRE attempted to "preserve the substance" of its claim for another day; and (3) without a full hearing on the merits of HCRE's POC, Highland would have enjoyed only a "[P]hyrric" victory because Highland's interest in SE Multifamily "would have remained subject to challenge."  These arguments lack any basis in fact or law and provide no support for the bankruptcy court's decision.  In the absence of "clear and convincing" proof of bad faith and without a causal link between that finding and the sanction awarded, vacatur of the bankruptcy court's order is warranted.

## II.    HIGHLAND'S ARGUMENTS ARE FACTUALLY AND LEGALLY WRONG

### A.     Highland Misstates the Standard of Review

In its opening brief, HCRE cited the Fifth Circuit's decision in *Cadle Co. v. Moore* (*In re Moore*) for the standard of review on appeal from a

sanction issued pursuant to the bankruptcy court's inherent authority. *See* Appellant's Brief ("HCRE Br.") at 33–34.  As the Fifth Circuit explained in *Moore*:

> We review de novo a district court's invocation of its inherent power and the sanctions granted under its inherent power for an abuse of discretion.  A decision to invoke the inherent power to sanction requires a finding of "bad faith or willful abuse of the judicial process," which finding we review de novo.  The finding of bad faith must be supported by clear and convincing proof.  In sum, we uphold a lower court's decision to invoke its inherent sanctioning power only if clear and convincing evidence supports the court's finding of bad faith or willful abuse of judicial process.  If this high threshold for invoking inherent powers is surmounted, we review the substance of the sanction itself more deferentially, for an abuse of discretion.

739 F.3d 724, 729–30 (5th Cir. 2014) (internal quotations and citations omitted) (cleaned up).  The district court, sitting as a federal appellate court bound by the same standard of review, likewise cited *Moore* as requiring "review de novo" of a bankruptcy court's invocation of its inherent powers to sanction.  ROA.17583.  Nonetheless, in a footnote, Highland suggests that *Moore* is the "[o]ne" case adopting a de novo standard of review.  Brief of Appellee ("Highland Br.") at 34 n.17. Highland then urges this Court to adopt a very deferential standard of review, arguing that the Court should review the bankruptcy court's

2

factual determination that "clear and convincing evidence" supported a finding of bad faith—and the court's invocation of its inherent power—for "clear error." *Id.* at 33.

Highland is wrong. Far from being an outlier, the Fifth Circuit's opinion in *Moore* has been cited at least 100 times, including by the Fifth Circuit. In a 2022 opinion cited (incompletely) by Highland, the Fifth Circuit expressly reaffirmed *Moore* and the rigorous standard of review to be applied to a bankruptcy court's factual findings supporting the invocation of inherent power. Specifically, in *Kreit v. Quinn* (*In re Cleveland Imaging & Surgical Hosp., L.L.C.*), the Fifth Circuit explained:

> [W]e usually review the bankruptcy court's legal conclusions *de novo* and its factual findings for clear error. But when the bankruptcy court sanctions a party using its inherent authority, our review is closer. We uphold those sanctions only if (1) the bankruptcy court finds that the party acted in bad faith or willfully abused the judicial process and (2) its finding is supported by clear and convincing evidence.

26 F.4th 285, 292 (5th Cir. 2022) (citing *Moore*, 739 F.3d at 729–30); *compare* Highland Br. at 32. And the Fifth Circuit has continued to embrace the *Moore* standard of review. *See, e.g., Nat'l Oilwell Varco, L.P. v. Auto-Dril, Inc.*, 68 F.4th 206, 219 (5th Cir. 2023) ("[W]e uphold a lower court's decision to invoke its inherent sanctioning power only if clear and

3

convincing evidence supports the court's finding of bad faith or willful abuse of the judicial process.") (citing *Moore*, 739 F.3d at 730); *Vikas WSP, Ltd. v. Econ. Mud Prods. Co.*, 23 F.4th 442, 455 (5th Cir. 2022) (in reviewing a sanction issued pursuant to the court's inherent power, "[w]e first decide, *without deference*, whether the court established 'bad faith or willful abuse of the judicial process' by 'clear and convincing proof'") (quoting *Moore*, 739 F.3d at 730) (emphasis added).

Highland cites several cases that it says support a more deferential standard of review. *See* Highland Br. at 33–34. But those cases (with one exception, discussed herein) are inapposite. Three of the cases— *Butler Aviation Int'l, Inc. v. Whyte* (*In re Fairchild Aircraft Corp.*), 6 F.3d 1119 (5th Cir. 1993), *Trendsetter HR L.L.C. v. Zurich Am. Ins. Co.* (*In re Trendsetter HR L.L.C.*), 949 F.3d 905 (5th Cir. 2020), and *Galaviz v. Reyes*, 95 F.4th 246 (5th Cir. 2024)—have nothing to do with sanctions or the courts' invocation of inherent authority. The remaining cases likewise do not involve the courts' invocation of inherent power to sanction but, rather, analyze the courts' invocation of other rules or

4

statutes to redress contempt of specific court orders.[1]

The only case Highland cites that appears to apply a "clear error" standard to a bankruptcy court's finding of bad faith is *Carroll v. Abide* (*In re Carroll*), 850 F.3d 811 (5th Cir. 2017). There, the Fifth Circuit reviewed a bankruptcy court's order declaring debtors "vexatious litigants" and imposing a pre-filing injunction against them. *In re Carroll*, 850 F.3d at 813. The Fifth Circuit explained that the bankruptcy court had authority to enjoin vexatious litigants *either* pursuant to its inherent power or pursuant to the All Writs Act, 28 U.S.C. § 1651. *Id.* at 815. But the Court emphasized that, "when sanctions are imposed under the inherent power, this court's investigation of legal and evidentiary sufficiency is *particularly probing* and this court must *probe the record in detail* to get at the underlying facts and ensure the legal sufficiency of

---

[1] *See Dondero v. Highland Cap. Mgmt., L.P.* (*In re Highland Cap. Mgmt., L.P.*), 105 F.4th 830, 836 (5th Cir. 2024) (evaluating contempt sanction for violation of TRO issued under Federal Rule of Civil Procedure 65); *Krueger v. Torres* (*In re Krueger*), 812 F.3d 365, 369 (5th Cir. 2016) (upholding dismissal for "cause" under Bankruptcy Code § 707); *Smith v. Robbins* (*In re IFS Fin. Corp.*), 803 F.3d 195, 205–06 (5th Cir. 2015) (evaluating whether there was "cause" to remove trustee under Bankruptcy Code § 324(a)); *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 578 (5th Cir. 2000) (analyzing contempt sanction for violation of TRO issued under Federal Rule of Civil Procedure 65); *In re Eichor*, 689 F. Supp. 3d 438, 446 (S.D. Tex. 2023) (evaluating contempt sanction for violation of bankruptcy court's discharge injunction); *Okorie v. Lentz,* No. 2:24-CV-51-KS-MTP, 2024 WL 4186937, at *4 (S.D. Miss. Sept. 9, 2024) (reviewing award of sanctions pursuant to Federal Rule of Bankruptcy Procedure 9011).

5

their support for the district court's more generalized finding of 'bad faith.'" *Id.* (internal quotations and citation omitted) (emphasis added). The Fifth Circuit then conducted a "probing review of the record" before affirming the bankruptcy court's finding of bad faith. *Id.* In other words, while the Court in *Carroll* referenced the "clear error" standard, it conducted a more rigorous review akin to that articulated in *Moore* and its progeny.

In short, the weight of authority demonstrates that this Court should conduct a de novo review to ensure that the "high" threshold for the use of inherent powers has been met. *See Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995)("[T]he threshold for the use of inherent power sanctions is high.").

## B.    Highland Does Not and Cannot Point to Any "Clear and Convincing Evidence" of Bad Faith[2]

At the outset, Highland does not contest several truths: HCRE is not a serial or vexatious litigant, it did not disobey any court order, and it did not attempt to thwart or otherwise interfere with the bankruptcy

---

[2] While Highland frequently fails to cite any evidence supporting its arguments about HCRE's alleged bad faith, the citations it does provide are to the district court record, rather than the Fifth Circuit record on appeal, making it difficult to ascertain which evidence Highland intended to reference.

court's jurisdiction in pursuing its POC.  *See* HCRE Br. at 34.  Nor does Highland dispute that HCRE's many lawyers acted ethically and in accordance with applicable rules in filing and pursuing the POC.  *See id.* at 10–12.

Against this backdrop, Highland offers no insight (or evidence) regarding HCRE's motives that would allow a court to infer the company is a bad-faith actor.  Instead, Highland devotes most of its brief to rearguing the evidence presented at trial on the merits of HCRE's POC and insisting that the merits evidence proves bad faith.  *See, e.g.*, Highland Br. at 2–4, 10–11, 21–25, 35–36.  There are several problems with this.  First, as Highland concedes, merely making an unsuccessful argument "is not, in itself, evidence of bad faith."  Highland Br. at 40; *see also Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421–22 (1978) (warning that merely "because a plaintiff did not ultimately prevail" does not mean the "action must have been unreasonable or without foundation"); *Miller v. Dunn*, 774 F. Supp. 3d 806, 818 (N.D. Tex. 2024), *aff'd*, No. 24-11069, 2025 WL 3231718 (5th Cir. Nov. 19, 2025) (bad faith requires more than "simply bad judgment or negligence, but rather . . . the conscious doing of a wrong because of dishonest purpose or moral

obliquity"). Second, the trial did not address the issue of bad faith at all, which is why the bankruptcy court refused to sanction HCRE at the close of that evidence, holding that to do so would violate "due process." ROA.11680. And third, to find that a party pursued a position in bad faith, a court must probe the party's beliefs, motivations, and rationales—evidence that is different in kind from evidence on the merits of the party's position. *See Williams v. Lockheed Martin Corp.*, 990 F.3d 852, 868 (5th Cir. 2021) (finding of bad faith requires evidence that party acted "vexatiously, wantonly, or for oppressive" motives).

Confronted with a record that fails to support the bankruptcy court's finding of bad faith, Highland posits arguments and justifications that are likewise insufficient to justify the court's finding.

### 1. Highland's Arguments Fail to Support the Bankruptcy Court's Finding that HCRE *Filed* its Proof of Claim in Bad Faith

As HCRE explained in its opening brief (and as the bankruptcy court acknowledged), HCRE's POC was "couched in indefinite terms expressly conveying that HCRE was still exploring the claim" and did not specify any amount or legal theory. *See* HCRE Br. at 9; ROA.1218; *see also* ROA.580 (explicitly recognizing that the POC was "ambiguous").

Consequently, Highland does not seriously dispute that the POC itself was in fact truthful and accurate.[3]   Instead, Highland makes several other arguments, each of which is unavailing.

First, Highland argues that the bankruptcy court correctly found "clear and convincing evidence" that the POC was *filed* in bad faith because "no factual or legal basis existed to rescind, reform, or modify the Amended LLC Agreement."   Highland Br. at 36–37.   To support this argument, Highland cites to testimony adduced in depositions and at the trial on the POC in which James Dondero and Matt McGraner (HCRE's two principals) testified about the how SE Multifamily's amended LLC agreement allocated member interests (referred to by Highland as the "Revised Allocation").   *See* Highland Br. at 21–25, 35–36.   According to Highland, this evidence proves that the Revised Allocation "reflected the parties' intent" and that HCRE therefore knew the POC was baseless.

---

[3] While insisting the POC was "perjurious," Highland points to nothing untruthful contained in it.  At most, Highland attacks a single statement in the POC, which said that "[HCRE] *may be* entitled to distributions out of SE Multifamily, but such distributions have not been made because of the actions or inactions of Highland." *See* ROA.1218 (emphasis added).  According to Highland, "HCRE never . . . identified what 'actions or inactions' Highland supposedly took to deprive HCRE of distributions . . . ."  Highland Br. at 12 n.19.  That is untrue.  HCRE officer Matt McGraner specifically testified that this statement was meant to convey that Highland's act of filing for bankruptcy had impeded SE Multifamily's ability to make distributions to members.  ROA.14923 at 60:14–61:13.

*Id.* at 35.

This evidence misses the point.  HCRE did not file the POC because it believed there was an error in the Revised Allocation at the time the amended LLC agreement was signed.  As McGraner testified, HCRE filed the POC because it believed that the agreement failed to make clear that it could be amended as the transaction evolved and the members' contributions changed.  ROA.14924 at 64:19–65:11; *see also* ROA.14946–47 at 153:25–155:24.  And as McGraner further testified, he believed— prior to filing the POC—that the members' ownership interests were grossly misallocated based on their relative contributions, that Highland's bankruptcy precluded SE Multifamily from fixing that problem and making distributions to members, and that filing a POC was the only way HCRE could rectify the problem.  ROA.14923–24 at 60:14– 61:13, 62:4–21; *see also* ROA.14925 at 67:23–69:6.  In other words, HCRE had a genuine belief at the time the POC was filed that there was a basis for doing so.  There is no evidence of record (and Highland cites none) contradicting this evidence about what HCRE "knew" and understood at the time of the POC's filing.

And the evidence flatly negates any conclusion that HCRE acted

with the type of "vexatious, wanton, or oppressive motives" required to conclude that the company filed the POC in bad faith. The bankruptcy court found no such motive, instead holding that the filing was in bad faith solely because Dondero did not personally investigate whether the claim was "truthful" prior to allowing his e-signature to be affixed to the claim form. *See* ROA.589–92. But just because Dondero did not investigate the claim does not mean that HCRE failed to do so. To the contrary, Matt McGraner—the person charged with the day-to-day management of HCRE—testified that he reviewed the "whole gamut" of the company's financials and agreements prior to filing the POC, communicated with in-house counsel regarding the claim, and tasked in-house counsel with conveying information to and discussing the claim with outside counsel, Bonds Ellis Eppich Schafer Jones, LLP. ROA.14919–20 at 45:22–46:25, 47:6–14, 48:16–20, 49:4–24. Further, both McGraner and Dondero testified that they relied on the advice of outside counsel in determining that the POC was necessary, and outside counsel prepared the description of the claim appended to the claim form. ROA.14919 at 44:19–22; *see also* ROA.14888 at 128:4–14. In short, the only record evidence of motive demonstrates that HCRE and its lawyers

11

investigated the claim and concluded that there was a reasonable basis to file it.

Thus, contrary to Highland's arguments, this case is exactly like *In re Cushman*, 589 B.R. 469 (Bankr. D. Me. 2018), where the bankruptcy court held that a sanction was not appropriate merely because the signatory to the proof of claim did not review or investigate the claim. There, as here, a company filed a proof of claim that affixed the electronic signature of one of the company's representatives. *Id.* at 477. There, as here, the signatory had "no knowledge, information, or belief about any debts owed" and reflected in the proof of claim. *Id.* at 478. There, as here, the signatory "did not review" the claim before it was filed and similarly had no basis to attest whether it was true and accurate. *Id.* And there, as here, others within the company nonetheless made reasonable inquiries to investigate and draft the proof of claim. *Id.* at 477–78. If, as in *Cushman*, no sanction was warranted where the signatory did not read the claim, did not investigate the claim, did not talk to others about their investigation of the claim, and did not even know about the claim, then the outcome should be no different here.

Further, Highland does not dispute that Bankruptcy Rule 9011(b)

expressly permits creditors to file proofs of claim based on "information, and belief" and facts to be developed "after a reasonable opportunity for further investigation or discovery." *See* HCRE Br. at 40–41 (citing Fed. R. Bankr. P. 9011(b)).  And that is perhaps precisely why HCRE was unable to find (and Highland fails to cite) any case saying that a company may be sanctioned for filing a proof of claim because the corporate officer executing the claim did not personally investigate it.  *See id.* at 42.

Nor is there any merit to Highland's argument that HCRE knew when the POC was filed that the *legal theories* later posited in support of the claim were meritless.  As Highland acknowledges, HCRE's counsel, Wick Phillips, first articulated these potential legal theories in HCRE's response to Highland's objection to the POC—eight months *after* the original POC was filed.  *See* Highland Br. at 11.  Even then, the response explained that HCRE would require "additional discovery" to determine whether its legal theories had evidentiary support.  *See id.* (citing ROA.1211).[4]  It stands to reason that there is no evidence of record—and

---

[4] Highland also argues that HCRE's statements about needing discovery were false when made.  Highland Br. at 37.  Highland never made this argument in the bankruptcy court, but it matters little.  By the time Wick Phillips responded to Highland's claim objection, Dondero, McGraner, and all of the other core employees who would have had information to corroborate the POC had been fired and locked

certainly no "clear and convincing evidence"—demonstrating that HCRE knew *at the time of filing the POC* that its lawyers' yet-to-be-developed legal arguments lacked merit.

Nonetheless, Highland bizarrely insists that, because "Dondero and McGraner were the only two people authorized to act on HCRE's behalf, one of them caused the [Wick Phillips] Response to be filed in bad faith since both knew those contentions were false." Highland Br. at 37 n.76. This argument makes no sense. It is unclear how Dondero (a non-lawyer) and McGraner (a non-practicing lawyer) "knew" the legal theories posited by HCRE's lawyers were "false." Nor does Highland explain how legal *argument* could ever be described as "false." And as HCRE has highlighted, nobody ever suggested that Wick Phillips made frivolous, unethical, or sanctionable arguments (or otherwise violated Federal Rule of Bankruptcy Procedure 9011) in filing the response.

In the end, neither Highland nor the bankruptcy court has ever explained what vexatious, wanton, or oppressive reason may have driven

---

out of Highland's offices, leaving them without access to any of HCRE's files, agreements, or financials. As a result, HCRE's counsel (first Wick Phillips and then Hoge Gameros) sought and obtained discovery needed to pursue the POC, and nobody ever suggested along the way that the discovery was improper or unnecessary. *See* ROA.562–63. Further, the bankruptcy court did not base its finding of bad faith on some supposed wrongful pursuit of discovery by HCRE.

HCRE to file the POC if, as Highland insists, HCRE indeed believed the claim was baseless. Nor is there any "clear and convincing" evidence in this record supporting the bankruptcy court's conclusion that HCRE acted with the requisite bad faith motives in filing an otherwise truthful and accurate POC. Highland's first argument is meritless.

### 2. Highland's Arguments Fail to Support the Bankruptcy Court's Conclusion that HCRE *Pursued* the Proof of Claim in Bad Faith

In its opening brief, HCRE cited extensive evidence demonstrating that it did not pursue its POC in bad faith. *See* HCRE Br. at 12–13, 15–23, 44–47, 49–50 (citing evidence).

Nonetheless, Highland argues (largely without evidentiary citations) that the bankruptcy court's bad-faith finding was correct because (1) HCRE knew its opposition to Wick Phillips' disqualification was "baseless" (Highland Br. at 40); (2) the "sudden timing" of HCRE's motion to withdraw its POC "on its face, demonstrated improper litigation tactics" (*id.* at 41); and (3) HCRE made "repeated and overt attempts to preserve the very claims upon which its POC was based" (*id.* at 43). As explained below, there is no evidence to support these assertions, and none justifies the bankruptcy court's bad faith finding.

***The Disqualification Opposition.*** Highland's first argument—that HCRE's opposition to Wick Phillips' disqualification was "baseless"—is not an argument that Highland raised in the bankruptcy court and therefore did not inform the bankruptcy court's bad-faith decision. Instead, as HCRE has explained, the bankruptcy court merely blamed HCRE for "initiating" the disqualification fight (notwithstanding that Highland, not HCRE, initiated the fight) and used that erroneous observation to bolster the court's conclusion that HCRE "pursued" its POC in bad faith. *See* HCRE Br. at 12–13, 29–30.[5]

Highland's argument that HCRE's opposition to the disqualification motion was "baseless" appears rooted in the bizarre contention that HCRE somehow hid Wick Phillips' prior joint representation of Highland and HCRE from Ben Selman, the ethics expert hired to opine regarding whether that joint representation posed a disqualifying conflict. *See* Highland Br. at 40 & n.81. Specifically, Highland argues that McGraner failed to disclose to Selman that Wick

---

[5] As Highland acknowledges, the disqualification fight is largely irrelevant because Highland never sought a bad-faith sanction against HCRE based on the disqualification fight, nor did the bankruptcy court award Highland its fees incurred during that fight. Highland Br. at 26, 36–37.

Phillips represented Highland in negotiating the SE Multifamily LLC agreement. According to Highland, that failure discredits any testimony offered by Selman in support of HCRE's opposition to disqualification. *Id.*; *see also id.* at 26 n.62.[6]

Although this argument is irrelevant—both because it was not raised in the bankruptcy court and because the bankruptcy court did not rely upon it in finding bad faith—it is also misleading. The *whole basis* for Highland's disqualification motion was Wick Phillips' prior joint representation of Highland and HCRE in connection with the SE Multifamily project. *See* ROA.1231–32, 1235, 1243–46 at ¶¶ 10–13, 27, 47–53. And as Selman testified, he was hired *specifically to testify about whether the prior joint representation posed a disqualifying conflict.* ROA.13296 at 45:16–23; ROA.13308–09 at 57:9–58:17. Thus, Selman clearly *knew* about the prior joint representation (and Highland's argument that Wick Phillips represented Highland on the SE Multifamily LLC agreement) when he gave his expert opinion. *See*

---

[6] Highland likewise absurdly argues that HCRE "opposed the Disqualification Motion, without ever acknowledging the Joint Representation." Highland Br. at 15. Again, however, the joint representation was the entire basis of Highland's disqualification motion, and HCRE directly acknowledged and disputed the scope of the representation and that it posed a disqualifying conflict. *See, e.g.*, ROA.1816 at ¶¶ 6–7, 10, 19–23.

ROA.13305 at 3:4–7.    Highland's argument that HCRE's position on disqualification was "baseless" because of some phantom deception cannot be credited.

***HCRE's Withdrawal Motion.***  Highland next argues that HCRE's efforts to withdraw the POC evidenced "gamesmanship" supporting the bankruptcy court's finding of bad faith.    Highland Br. at 40–41. Specifically, Highland points to the "sudden" timing of HCRE's motion to withdraw (on the eve of the depositions of its own witnesses) and HCRE's alleged lack of explanation for the withdrawal as evidence of "improper litigation tactics."  Highland Br. at 41; *see also id.* at 17 & n.33 (arguing that "***HCRE has never explained the highly suspect timing of the Withdrawal Motion or what prompted it.***") (emphasis in original). But HCRE did explain the timing of the withdrawal motion, as the evidence demonstrates.  *See* HCRE Br. at 15 (citing ROA.2205).  HCRE sought to withdraw the POC after consultation with outside counsel and "in consideration of the cost and uncertainty of continuing to pursue the Claim in the face of Debtor's objection."  *Id.*  As counsel for HCRE further explained, the company's initial worries about the bankruptcy's impact on SE Multifamily (articulated by McGraner) did not come to pass,

18

making the POC unnecessary.    ROA.3270 at 6:8–12.    Cost and uncertainty are core reasons that many litigation claims are settled or dismissed, and that alone should have been a sufficient explanation. Moreover, neither Highland nor the bankruptcy court has ever explained how taking two depositions off calendar was "gamesmanship" that could have been used to HCRE's tactical advantage.  Regardless, speculations about gamesmanship are not a basis to find a party acted in bad faith. *See* HCRE Br. at 45–46; *In re Moore*, 739 F.3d at 731 (reversing sanction issued by Judge Jernigan because "the bankruptcy court's mere suspicions do not add up to clear and convincing evidence of bad faith").

***Alleged Attempts at Claim Preservation.***    Finally, Highland insists that the bankruptcy court's finding of bad faith rested on "clear and convincing" evidence that HCRE "repeatedly" sought "to preserve its claims for another day."  Highland Br. at 6, *see also id.* at 4, 16, 42–43, 47.    There is absolutely no record evidence to support Highland's assertion, and indeed, Highland cites none.  Instead, Highland cites to its own legal arguments at pages 16 n.31, 28 n.66, and 30–31 of its brief. *See* Highland Br. at 42.  Those pages likewise contain no citation to *any* evidence demonstrating that HCRE made "repeated and overt attempts"

19

to preserve its POC (or the legal theories underlying it) or even "equivocated" about the issue, as Highland argues. *See* Highland Br. at 4 n.2, 42–43. The only possibly relevant "evidence" cited anywhere in Highland's brief is a single remark made by HCRE's counsel during closing argument at the POC trial. *See* Highland Br. at 16 n.31, 28 n.66. In that remark, HCRE's counsel argued that it would be improper for the bankruptcy court to "make findings" in its order disallowing the POC stating that HCRE could not raise "other issues, rescissions, stays, et cetera, going forward." ROA.12012–13 at 180:17–181:2. Counsel's point was hardly controversial: a bankruptcy court's order on a proof of claim is limited to allowing or disallowing that claim, and it would be improper for the court in that context to make findings of fact or rulings of law regarding *other*, future issues or claims not before the court. In any event, a single comment by HCRE's counsel at a forced merits hearing is not "clear and convincing" evidence that Highland tried to preserve the substance of its POC for another day.

## C.    Highland's Analysis of "But For" Causation Is Wrong

HCRE's opening brief argued that the requisite "causal link" between HCRE's supposed bad behavior and the sanction awarded was

missing, further warranting reversal. HCRE Br. at 52–59. Specifically, HCRE argued that the bankruptcy court's (and Highland's) refusal to accept the withdrawal of HCRE's POC *with prejudice*—despite HCRE's repeated offers—is what caused all parties to incur substantial additional fees. In response, Highland makes three arguments, none of which supports the required "but for" link.

First, Highland argues that had it just "taken the win" and consented to withdrawal of the POC with prejudice, that victory would have been "[P]yrrhic" because "Highland's interest in SE Multifamily would have remained subject to challenge." Highland Br. at 47; *see also id.* at 6 (arguing that "ironclad" concessions were required). But as HCRE has explained, the bankruptcy court's order disallowing the POC does not contain *any* of the "ironclad" language that Highland now insists was required to prevent a full-blown trial. *See* HCRE Br. at 57–59. The order does not say that Highland will hold a 46.06% interest in SE Multifamily in perpetuity. *See* ROA.11674.[7] It does not say that HCRE

---

[7] Highland erroneously insists that the trial allowed Highland to obtain "good, clear title to a 46.06% interest in SE Multifamily." Highland Br. at 28. But the POC hearing was not a title proceeding, Highland did not receive any such relief, and even the bankruptcy court acknowledged that SE Multifamily's members "may make future capital contributions to SE Multifamily" that could change their ownership

can never again raise the issues of modification, reformation, or rescission in challenging the SE Multifamily members' interests. *Id.* The order does not even disallow the POC "with prejudice." *Id.* Thus, Highland is indeed in the exact same position (or perhaps a worse one) than it would have been had the bankruptcy court and Highland accepted HCRE's withdrawal.[8]

Further, as the Fifth Circuit has held, the voluntary dismissal of a claim "with prejudice" has *the same legal effect* as a final judgment on the merits—either way, res judicata bars relitigation of the claim. *See Derr v. Swarek*, 766 F.3d 430, 441 (5th Cir. 2014) ("If the plaintiff chooses to extinguish his rights forever[,] he is entitled to do so, and *the defendant will reap the benefit of a res judicata bar to any attempt by the plaintiff to*

---

percentages. *See* ROA.11678.

[8] Highland attempts to distinguish the Fifth Circuit's ruling in *The Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P.*, 98 F.4th 170, 175 (5th Cir. 2024), in which the Fifth Circuit reversed a sanction issued by Judge Jernigan as impermissibly punitive because the requisite causal link between the contemnor's alleged actions and the sanction was lacking. According to Highland, *Charitable DAF Fund* is inapposite because there, unlike here, the contemnor's "*only* contumacious conduct" was filing a motion in the wrong court, whereas here, the bankruptcy court's sanction awarded "fees and costs incurred only as a result of HCRE's bad-faith conduct." Highland Br. at 48–49 (emphasis in original). That is a distinction without a difference. As HCRE explained in its opening brief, the very problem with the bankruptcy court's sanction in this case is that *it is not tethered to HCRE's conduct* in any meaningful way, which was the precise problem in *Charitable DAF Fund. See* HCRE Br. at 52–59. Highland's insistence that there is a but-for causal link in this case does not make it so, as the evidence squarely demonstrates.

22

*re-litigate the dismissed claims*.") (emphasis added); *see also Houston v.*

*Citi Mortg. Corp.*, No. 3:15-CV-3098-B, 2016 WL 3182003, at \*3 (N.D.

Tex. June 8, 2016) ("Plaintiff's voluntary dismissal with prejudice is the

legally operative principle necessary to satisfy res judicata's requirement

of a final decision on the merits.") (internal quotation and citation

omitted).   Given this legal reality, Highland cannot explain why

withdrawal of HCRE's POC "with prejudice" would have been a

"[P]yrrhic" victory, much less how Highland is better off now.

Second, Highland argues that HCRE failed to meet any of the

*Manchester* factors for withdrawing its claim, which—according to

Highland—is evidence that the withdrawal motion was filed in bad faith.

Highland Br. at 47.[9]   This argument is largely irrelevant—the

bankruptcy court did not tether its sanction to HCRE's alleged failure to

meet the *Manchester* factors.  But it is also strange to suggest filing the

---

[9] Highland also repeatedly insists that "HCRE makes no argument that it met the *Manchester* factors."  *See* Highland Br. at 4 ("**indeed, HCRE fails to cite Manchester in its brief**") (emphasis in original); *see also id.* at 17 n.33 ("***The Bankruptcy Court found that HCRE failed to meet any of these factors, a fact HCRE has never contested and continues to ignore***.") (emphasis in original). This is false.  HCRE's opening brief explicitly argued that HCRE "easily met the standards for withdrawal" of its POC, citing *Manchester* and other Fifth Circuit precedent interpreting it.  *See* HCRE Br. at 15–16, 61 (citing cases).  Likewise, in the district court, HCRE argued that it met all of the *Manchester* factors for withdrawal. ROA.16607–08.

23

motion to withdraw was itself bad faith, particularly given the federal courts' liberal standards for allowing withdrawal of claims. As Judge Houser explained in *Manchester*, "since the general policy under Rule 41(a) is to permit withdrawal of a complaint, withdrawal of a proof of claim should be permitted unless that withdrawal results in a 'legal harm' or 'prejudice' to a non-moving party." *In re Manchester, Inc.*, No. 08-03163-BJH, 2008 WL 5273289, at *3 (Bankr. N.D. Tex. Dec. 19, 2008) (Houser, C.J.). Moreover, as HCRE explained in its withdrawal motion, "legal prejudice" means some significant prejudice to a legal interest, such as when dismissal would strip a litigant of a statute-of-limitations defense, or where dismissal is sought to avoid an imminent adverse ruling. *See* ROA.2208 (citing cases). By contrast, the prospect of a second lawsuit (the type of prejudice cited by the bankruptcy court and Highland), or the gaining of some tactical advantage, do *not* establish legal prejudice. *Id.* (citing cases). Thus, the bankruptcy court likely got the *Manchester* analysis wrong, and that analysis should not inform whether the court appropriately shifted fees incurred after the withdrawal hearing.

Lastly, Highland repeatedly faults HCRE for "fail[ing] to tender a

24

proposed order containing the relief it now insists it wanted all along," arguing that this failure justifies the bankruptcy court's shifting of $375,000 in legal fees to HCRE. *See* Highland Br. at 18; *see also id.* at 4 & n.2, 6, 17 & n.32, 18, 28, 4. That argument does not pass the smell test, but it is also highly misleading. As Highland is well aware, HCRE never submitted a proposed order because the parties never agreed to an order, as the bankruptcy court required. *See* ROA.3321–22 at 57:12–58:15 (directing the parties to talk and propose an *agreed order*); *see also* ROA.19 ("[T]he parties could not stipulate to an agreed form of order.). Moreover, Highland's fixation on a proposed order does not move the needle in establishing bad faith. Failure to agree on a form of order does not transform those efforts into misconduct. *See In re Moore*, 739 F.3d at 729–30. Nor was an agreed order any impediment to the bankruptcy court, which had full authority to issue any order it saw fit in authorizing withdrawal of the claim. *See* HCRE Br. at 56–57 (citing Fed. R. Bankr. P. 3006(c)).

Further, contrary to Highland's argument, HCRE did not violate Local Bankruptcy Rule 7001-1(c) by failing to tender a proposed order. That rule and the corresponding federal rule apply only in adversary

25

proceedings, and the POC dispute was not such a proceeding. *See* Fed. R. Bankr. P. 7007 ("Fed. R. Civ. P. 7 applies in an adversary proceeding."); Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern District of Texas, Part VII (titled "Adversary Proceedings"). In any event, the bankruptcy court did not premise its bad-faith sanction on any failure by HCRE to tender a proposed order, so Highland's argument makes no difference.

In summary, the evidence and the law overwhelmingly demonstrate that Highland could have avoided incurring $375,000 in legal fees had it simply agreed to HCRE's offer to withdraw the POC with prejudice. That Highland and the bankruptcy court refused that offer is a problem of their making, not HCRE's. The requisite causal link between HCRE's actions and the sanction is lacking, and the sanction should be reversed.

### D. Highland's Arguments About the Reconsideration Order Are Wrong

To justify the bankruptcy court's order denying reconsideration, Highland simply regurgitates the same bases the bankruptcy court cited in denying relief. Specifically, Highland repeats the bankruptcy court's factually baseless findings that HCRE (1) refused to agree to withdraw

26

the POC with prejudice, (2) failed to submit a proposed order permitting withdrawal of the claim, and (3) supposedly attempted to "preserve" the claim. Highland Br. at 52–55. These arguments are no more availing in justifying the denial of reconsideration than they are in justifying the court's finding of bad faith. Yet again, Highland fails to point to any evidence to support its or the bankruptcy court's reasoning. And yet again, the record evidence directly contravenes the bankruptcy court's findings.

In the end, neither the bankruptcy court nor Highland addresses *the actual record*, which HCRE cited extensively. As that record shows, HCRE and its representatives attempted *multiple times* to withdraw HCRE's POC with prejudice and agreed to forego any appeals relating to the claim. HCRE Br. at 19–22. HCRE even agreed not to challenge Highland's interest in SE Multifamily. *Id.* at 22. In arguing that the facts did not unfold as the record reveals, Highland cites a single quote from the motion to withdraw hearing. *See* Highland Br. at 53 (citing district court record at 011550). But in the cited quotation, the bankruptcy court asked HCRE if it was willing to withdraw its claim with prejudice. *Id.* Highland omits HCRE's immediate response, stating

27

unequivocally that it was willing to do just that.  ROA.3297 at 33:5–7.  If this is Highland's best evidence-based defense of the bankruptcy court's reconsideration order, it is no defense at all.

The bankruptcy court's failure to rectify obvious errors when given an opportunity to do so was an abuse of discretion and is another reason to reverse the bankruptcy court's orders and the sanction awarded.

### E.    Highland's Brief Does Not Address the Errors in the District Court's Order

HCRE's opening brief argued that the district court's perfunctory affirmance of the bankruptcy court's bad-faith order fell short for multiple reasons, including most notably because the district court failed to make *any* ruling with respect to but-for causation, as required.  *See* HCRE Br. at 62–63 (citing cases).

Highland does not respond to these arguments, except to attempt to distinguish one case cited by HCRE, in which the Ninth Circuit held that a district court's failure to conduct a but-for analysis required reversal of the sanction awarded.  *See id.* at 63 (citing *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075 (9th Cir. 2021)).  According to Highland, that case is distinguishable because there, the sanction was punitive and the district court provided "'no analysis of any connection between any harm

28

to Defendants caused by Plaintiffs' purported misconduct . . . .'" Highland Br. at 50 (quoting *Rousseau*, 985 F.3d at 1092). But that is precisely what occurred in this case—the sanction awarded by the bankruptcy court is punitive because it is not causally connected to HCRE's actions. *See* HCRE Br. at 3, 52–53. And while the *bankruptcy court* purported to analyze that causal connection (albeit erroneously), the *district court* did no such thing. The district court's affirmance does not even mention the but-for analysis, much less analyze why or whether the bankruptcy court got it right. That too was error.

## III. CONCLUSION

For all the foregoing reasons, the bankruptcy court erred in invoking its inherent power to sanction HCRE, and the Court should reverse that order and vacate the sanction in its entirety.

Dated: March 26, 2026          Respectfully Submitted,

PILLSBURY WINTHROP SHAW
PITTMAN LLP

*/s/ Amy L. Ruhland*
Amy L. Ruhland
Texas Bar No. 24043561
amy.ruhland@pillsburylaw.com
Benjamin Bernell
Texas Bar No. 24059451
ben.bernell@pillsburylaw.com
401 W 4th Street, Suite 3200
Austin, TX 78701
Tel.: (512) 580-9600

*Attorneys for NexPoint Real Estate Partners, LLC (f/k/a HCRE Partners, LLC)*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 26, 2026, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

*/s/ Amy L. Ruhland*
Amy L. Ruhland

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the type-volume limitations of Federal Rule of Appellate Procedure 32 as it contains 6460 words, excluding the portions of the document exempted by 32(f).

I further certify that this document complies with the typeface requirements of Rule 8015(a)(5) and the type-style requirements of Rule 8015(a)(7)(B) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

/s/ Amy L. Ruhland
Amy L. Ruhland