No. 25-11185

# United States Court of Appeals for the Fifth Circuit

IN RE HIGHLAND CAPITAL MANAGEMENT, L.P., *Debtor*,

NEXPOINT REAL ESTATE PARTNERS, LLC (F/K/A HCRE PARTNERS, LLC)
*Appellant*,

v.

HIGHLAND CAPITAL MANAGEMENT, L.P.,
*Appellee*.

On Appeal from the United States District Court
for the Northern District of Texas, Dallas Division
Case No. 3:24-cv-01479-S

## OPPOSED MOTION TO RECALL AND STAY THE MANDATE PENDING FILING OF A PETITION FOR A WRIT OF CERTIORARI

Amy L. Ruhland
Benjamin Bernell
PILLSBURY WINTHROP SHAW PITTMAN LLP
Texas Bar No. 24043561
amy.ruhland@pillsburylaw.com
Texas Bar No. 24059451
ben.bernell@pillsburylaw.com
401 W 4th Street, Suite 3200
Austin, Texas 78701
Tel.: (512) 580-9600

*Counsel for Appellant NexPoint Real Estate Partners, LLC (f/k/a HCRE Partners, LLC)*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies the following people have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate their possible recusal or disqualification:

Appellant:
NexPoint Real Estate Partners, LLC f/k/a HCRE Partners, LLC

Counsel for Appellant in the Fifth Circuit:
Amy Ruhland
Benjamin Bernell
Pillsbury Winthrop Shaw Pittman

Counsel for Appellant in the District Court proceedings:
Amy Ruhland
Pillsbury Winthrop Shaw Pittman
Charles W. Gameros Jr.
Douglas Wade Carvell
Hoge & Gameros, LLP

Appellee:
Highland Capital Management, L.P.

Counsel for Appellee:
John A. Morris
Jeffery N. Pomerantz
Gregory V. Demo
Hayley R. Winograd
Pachulski Stang Ziehl & Jones LLP
Zachary Annable
Melissa Sue Hayward
Hayward Law Firm

/s/ *Amy Ruhland*
*Amy Ruhland*
Counsel of Record for Appellant

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ........ i
TABLE OF CONTENTS ........ ii
TABLE OF AUTHORITIES ........ iii
I. INTRODUCTION ........ 1
II. STATEMENT OF PROCEEDINGS ........ 4
III. ARGUMENT ........ 7
A. Recall Is Necessary to Prevent Injustice ........ 7
B. HCRE Satisfies Each *Hollingsworth* Factor ........ 9
1. There is a reasonable probability that the Supreme Court will grant certiorari. ........ 10
2. There is a fair prospect that the Supreme Court will reverse. ........ 13
3. HCRE will suffer irreparable harm absent a stay ........ 17
C. Good cause and the equities favor a limited, secured stay. ........ 18
IV. CONCLUSION ........ 19
CERTIFICATE OF SERVICE ........ 21
CERTIFICATE OF COMPLIANCE ........ 21
CERTIFICATE OF CONFERENCE ........ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*BDT Prods., Inc. v. Lexmark Int'l, Inc.*,
602 F.3d 742 (6th Cir. 2010) .......... 3, 12, 13, 16

*Cadle Co. v. Moore (In re Moore)*,
739 F.3d 724 (5th Cir. 2014) .......... 3, 12, 16

*Calderon v. Thompson*,
523 U.S. 538 (1998) .......... 8

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) .......... 10

*Charitable DAF Fund, L.P. v. Highland Capital Management, L.P. (In re Highland Capital Management, L.P.)*,
98 F.4th 170 (5th Cir. 2024) .......... 14

*United States v. Emeary*,
794 F.3d 526 (5th Cir. 2015) .......... 8

*Goodyear Tire & Rubber Co. v. Haeger*,
581 U.S. 101 (2017) .......... 2, 11, 13, 14, 15, 17

*Hollingsworth v. Perry*,
558 U.S. 183 (2010) .......... 3, 9, 10, 19

*United States v. Kellogg (In re West Texas Marketing Corp.)*,
12 F.3d 497 (5th Cir. 1994) .......... 15

*National Republican Congressional Committee v. Brown*,
No. 26A274, 2026 WL 2618462 (U.S. Sept. 4, 2026) .......... 9, 18

**Rules and Regulations**

Bankruptcy Rules
Rule 3006 .......... 14

Fifth Circuit Rules
Rule 41.2 ........ 1, 7

Federal Rules of Appellate Procedure
Rule 40 ........ 8
Rule 40(d)(1) ........ 8
Rule 41 ........ 8
Rule 41(b) ........ 8
Rule 41(d) ........ 1, 8
Rule 41(d)(2) ........ 1, 8, 18
Rule 41(d)(2)(A) ........ 9, 13
Rule 41(d)(3) ........ 19
Rule 41(d)(4) ........ 4

Supreme Court Rules
Rule 10(c) ........ 11

## I. INTRODUCTION

Appellant NexPoint Real Estate Partners, LLC, formerly known as HCRE Partners, LLC (collectively, "HCRE"), respectfully moves under Federal Rule of Appellate Procedure 41(d) and Fifth Circuit Rule 41.2 to recall and stay the mandate pending the filing and disposition of a petition for a writ of certiorari before the United States Supreme Court.

Recall is necessary to prevent injustice. *See* 5th Cir. R. 41.2. On September 16, 2026, the panel denied HCRE's request for panel rehearing, withdrew its August 14 opinion, issued a substituted published opinion correcting a material factual error HCRE highlighted in its rehearing petition, and issued the mandate—all on the same day. HCRE therefore had no opportunity to seek a stay of the mandate pending the filing of a petition for a writ of certiorari under Rule 41(d)(2) before the mandate issued. HCRE now moves promptly for the same relief it could have sought under Rule 41(d)(2) had the mandate not issued on the same day as the Opinion. *See* Fed. R. App. P 41(d)(2) ("A party may move to stay the mandate pending the filing of a petition for a writ of certiorari in the Supreme Court.")

HCRE also satisfies each requirement for such relief. HCRE's

contemplated petition for certiorari will present two substantial questions concerning the limits on a federal court's inherent sanctioning power. First, the Opinion affirms nearly $375,000 in fees incurred after HCRE sought to withdraw its proof of claim, without identifying which fees would not have been incurred but for sanctionable conduct. That phase-wide award cannot be reconciled with the Supreme Court's decision in *Goodyear Tire & Rubber Co. v. Haeger*, which permits recovery only of fees that would not have been incurred absent the misconduct. 581 U.S. 101, 108–10 (2017). Neither the bankruptcy court nor the Opinion performed the required counterfactual analysis, even though HCRE offered to withdraw its claim with prejudice, waive any appeal, recognize Highland's existing ownership interest, and abandon any challenge based on the asserted proof-of-claim theories.

Second, the Opinion permits an entity's subjective bad faith to be established based on a determination that one officer "likely" knew a claim was unfounded, without addressing the investigation conducted by HCRE's other officer, in-house counsel, and outside bankruptcy counsel or the materially qualified language of the claim itself. Op. 8–9. That holding warrants review because it departs from the clear-and-

convincing standard required by *Cadle Co. v. Moore (In re Moore)*, 739 F.3d 724, 729–33 (5th Cir. 2014); threatens to collapse the distinction between advancing an unsuccessful claim and willfully abusing the judicial process; and conflicts with the Sixth Circuit's rule that even knowingly pursuing a meritless claim does not, without more, establish inherent-power bad faith. *See BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 753–54 (6th Cir. 2010).

Those questions establish both a reasonable probability that the Supreme Court will grant certiorari and a fair prospect that it will reverse. *See Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (discussing the factors to be considered when determining whether a stay pending certiorari is appropriate). The remaining factors likewise favor an order recalling and staying the mandate. The mandate permits immediate enforcement of an $825,940.55 sanctions judgment, plus interest, and leaves HCRE exposed to the continuing collateral consequences of a published adjudication of bad faith before the Supreme Court can act. By contrast, Highland will suffer no cognizable prejudice. HCRE has deposited the full amount of the judgment into the court registry and has agreed to supplement that deposit for any additional interest. Highland

is therefore fully secured, and the requested stay would expire if the Supreme Court denies certiorari. *See* Fed. R. App. P. 41(d)(4).

A limited recall and stay will preserve the status quo and permit meaningful Supreme Court review without disturbing any settled reliance interest or impairing Highland's ability to recover. The Court should therefore recall and stay the mandate pending the filing and disposition of HCRE's petition for a writ of certiorari.

## II. STATEMENT OF PROCEEDINGS

In 2018, Highland Capital Management, L.P. and HCRE Partners, LLC—now NexPoint Real Estate Partners, LLC ("HCRE")—undertook "Project Unicorn," a transaction involving 26 multifamily properties. Op. 2. They formed SE Multifamily Holdings, LLC to hold the investments. Op. 2. An amended agreement allocated 47.94% to HCRE, 46.06% to Highland, and 6% to an unaffiliated investor. Op. 2–3.

HCRE maintained that those percentages did not reflect the parties' relative economic contributions or their expectation that allocations would change as the transaction evolved. Highland's October 2019 bankruptcy transferred its control to an independent board and, according to HCRE, prevented contemplated adjustments and impeded

distributions. ROA.1814–18; ROA.14923–25; ROA.14946–47.

Facing the claims bar date, HCRE filed Proof of Claim No. 146 (the "POC") in April 2020. Op. 4. The POC demanded no liquidated sum and asserted no established right to Highland's interest. ROA.1218. The POC said HCRE "may be entitled" to distributions and "may have a claim," that HCRE had requested information "to ascertain the exact amount," and that the process was "on-going." ROA.1218. Former Bankruptcy Judge D. Michael Lynn's firm prepared the claim and attachment. HCRE relied on outside counsel's advice that the POC was needed to preserve its interests. ROA.16815–24. Matt McGraner—HCRE's vice president and secretary and one of the two officers coordinating Project Unicorn—reviewed the "whole gamut" of HCRE's financial records and agreements, coordinated with in-house counsel, and directed counsel to provide information to the filing lawyers. ROA.14919–20.

Highland objected to HCRE's POC as part of an omnibus objection to 63 claims. Six months later, HCRE's newly retained counsel responded to Highland's objection, arguing that the organizational documents might warrant reformation, rescission, or modification based on mutual mistake, lack of consideration, or failure of consideration. ROA.16644.

The response expressly stated that HCRE needed "additional discovery" to assess those theories. ROA.16645.

After multiple rounds of discovery and separate litigation over counsel's disqualification, HCRE moved to withdraw the POC based on "the cost and uncertainty of continuing to pursue the Claim in the face of Debtor's objection." ROA.2205.

At the hearing, HCRE repeatedly agreed to disposition with prejudice, waived appeal, recognized Highland's existing interest in SE Multifamily, and waived any future challenge based on counsel's legal theories. ROA.3297–3309. The remaining disagreement concerned whether HCRE must guarantee Highland a permanently immutable 46.06% interest regardless of future events under the LLC agreement. ROA.3305–07. The bankruptcy court invited the parties to agree on language for a proposed order granting the withdrawal, but as the bankruptcy court put it, "[a]pparently, counsel were unable to reach an agreement on the terms of an agreed order." ROA.35, n.48.

The bankruptcy court denied the requested withdrawal and required a November 2022 trial. ROA.35, n.48. It disallowed the claim in April 2023. ROA.19. Highland then sought inherent-power sanctions,

and the bankruptcy court awarded $825,940.55, including approximately $375,000 in fees incurred after HCRE sought to withdraw the POC. ROA.17–48. The district court affirmed. ROA.17591–97.

On August 14, 2026, this Court affirmed in a published opinion. HCRE timely sought panel rehearing. On September 16, the panel denied rehearing, withdrew the original opinion, and issued a substituted opinion. The substituted opinion corrected the original opinion's repeated misstatement that Highland had produced 4,000 documents immediately before HCRE moved to withdraw—one of the Court's bases for concluding that HCRE's attempted withdrawal reflected "gamesmanship." The substituted opinion recognized that HCRE, not Highland, made that 4,000-document production. Op. 5, 10. The panel otherwise affirmed the sanctions in full. The mandate issued that same day, concurrently with the substituted opinion. Dkt. 75-2.

## III. ARGUMENT

### A. Recall Is Necessary to Prevent Injustice

This Court has inherent authority to recall its mandate when necessary "to prevent injustice." 5th Cir. R. 41.2. That authority is reserved for extraordinary circumstances because finality ordinarily

carries substantial weight. *See United States v. Emeary*, 794 F.3d 526, 527–29 (5th Cir. 2015); *Calderon v. Thompson*, 523 U.S. 538, 549–50 (1998). But such interest carries little weight here. HCRE moved within days, direct review remains available, and no party has materially relied on the mandate.

The sequence of events on September 16 reinforces the need for recall in this case. Rules 40 and 41 ordinarily give a litigant time between judgment and mandate to pursue rehearing and, after rehearing is denied, seven days to seek a stay of the mandate pending certiorari. Fed. R. App. P. 40(d)(1), 41(b), (d)(2). Here, the panel denied rehearing, withdrew the original opinion, issued a substituted published opinion correcting a material factual error, and issued the mandate ***on the same day***. HCRE thus had no opportunity to evaluate the substituted opinion, discuss the opinion with counsel, and seek a stay before the mandate returned jurisdiction to the lower courts.

Recall would restore that ordinary opportunity for the limited purpose Rule 41(d) expressly contemplates—the staying of the mandate pending a petition for certiorari. Recall would not reopen a long-final judgment or disturb settled reliance interests. It would simply restore the

pre-mandate status quo while HCRE timely seeks Supreme Court review.

The Supreme Court recently granted the same procedural relief in *National Republican Congressional Committee v. Brown*. No. 26A274, 2026 WL 2618462, at *1–2 (U.S. Sept. 4, 2026). There, after the court of appeals denied a stay and issued its mandate, the Supreme Court applied the factors set forth in *Hollingsworth*, recalled the mandate, and stayed the mandate pending a timely certiorari petition. *Id. Brown* thus confirms that issuance of the mandate does not foreclose a stay pending certiorari and that recall is the appropriate mechanism for restoring the status quo when the governing factors are satisfied. HCRE satisfies such factors here.

### B. HCRE Satisfies Each *Hollingsworth* Factor

Federal Rule of Appellate Procedure 41(d)(2)(A) authorizes a stay pending certiorari when the petition will present a substantial question and good cause exists. When evaluating whether to grant a stay pending a petition for certiorari, courts ask whether there is "(1) a reasonable probability that four Justices will consider the issue sufficiently meritorious to grant certiorari; (2) a fair prospect that a majority of the

Court will vote to reverse the judgment below; and (3) a likelihood that irreparable harm will result from the denial of a stay." *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010). In a close case, the Court balances the equities and weighs the parties' relative harms. *Hollingsworth*, 558 U.S. at 190. Each factor favors a stay here.

**1. There is a reasonable probability that the Supreme Court will grant certiorari.**

The contemplated petition will present two substantial and recurring questions about the limits of inherent-power sanctions.

***First***, may a court shift every fee incurred during a phase of litigation without determining which fees would have been incurred absent the sanctioned conduct? ***Second***, may a court find an entity's subjective bad faith clearly and convincingly based on a finding that one officer "likely" knew a qualified claim was false, without addressing evidence that the entity investigated through another officer and counsel? Both questions concern the standards governing a potent power that federal courts must exercise with restraint. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) ("Because of their very potency, inherent powers must be exercised with restraint and discretion.")

The first question warrants review because the Opinion departs

from the Supreme Court's decision in *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017). *Goodyear* permits a phase-wide fee award only when ***all fees*** in that phase "would not have been incurred except for the misconduct." *Id.* at 110. The Opinion instead affirms approximately $375,000 in post-withdrawal fees because HCRE did not accept Highland's preferred withdrawal language and the later merits judgment supposedly supplied "ironclad" protection. Op. 12–13. But that reasoning never asks the counterfactual question required by *Goodyear*: which fees would Highland have incurred if the bankruptcy court had imposed appropriate withdrawal conditions embodying HCRE's on-record concessions? A published decision allowing a temporal cutoff to replace *Goodyear*'s causal inquiry presents a substantial federal question. *See* Sup. Ct. R. 10(c).

The second question likewise warrants review. The Opinion rightly states that bad faith must be proved clearly and convincingly and that this Court must reach a firm conviction "without hesitancy." Op. 6–7. Yet the Opinion finds only that a single individual, Dondero, signed the claim "likely knowing it was false." Op. 9. It does not address evidence that HCRE's other office, McGraner, reviewed the "whole gamut" of HCRE's

records, worked with in-house counsel, and provided information to experienced outside bankruptcy counsel, which prepared a claim merely stating that HCRE "may" possess a claim and was continuing to investigate. ROA.1218; ROA.14919–20.

That approach conflicts with *Cadle Co. v. Moore (In re Moore)*, 739 F.3d 724, 729–33 (5th Cir. 2014). *Moore* reversed an inherent-power sanction despite conduct that raised legitimate concerns and left an "unpleasant odor." *Id.* at 733. Suspicion and imputed bad faith were not enough. The court required clear and convincing evidence that the sanctioned party itself "deliberately abused the judicial process." *Id.* at 730–33. The Opinion takes the opposite approach: it infers HCRE's subjective bad faith from one officer's supposed knowledge that the claim lacked merit, without addressing the investigation undertaken by HCRE's other officer and counsel or identifying a separate improper purpose for filing the qualified claim.

The Court's reasoning also conflicts with the Sixth Circuit's holding that even knowingly pursuing a meritless claim does not, without more, establish inherent-power bad faith. *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 753–54 (6th Cir. 2010). *BDT* requires additional

evidence of harassment, delay, or another improper use of the courts. *Id.* By treating the claim's ultimate failure—and Dondero's asserted awareness of its deficiencies—as sufficient proof of bad faith, the Opinion collapses the required inquiry into improper purpose into the separate question of whether the claim lacked merit.

These are not requests for fact-bound error correction. The Opinion establishes rules governing when an entity may be branded a bad-faith litigant and when a bankruptcy court may convert that finding into a phase-wide fee award. Either question supplies a reasonable probability that four Justices will vote to grant review; together, they readily satisfy Rule 41(d)(2)(A)'s substantial-question requirement.

**2. There is a fair prospect that the Supreme Court will reverse.**

There is also a fair prospect that a majority of the Court will reverse the phase-wide award at the very least because neither the bankruptcy court nor the panel performed the causal analysis *Goodyear* requires.

As noted, a compensatory sanction may shift "only those attorney's fees incurred because of the misconduct at issue." 581 U.S. at 108. The sanctioning court must compare the fees actually incurred with those that would have been incurred absent the misconduct, ordinarily fee by

fee or category by category. *Id.* at 109–11. An entire phase of fees may be shifted only if every fee in that phase shares the required causal link. *Id.* at 110.

This Court applied that rule in this bankruptcy in *Charitable DAF Fund, L.P. v. Highland Capital Management, L.P. (In re Highland Capital Management, L.P.)*, 98 F.4th 170, 175–77 (5th Cir. 2024). As this Court then rightly observed, if Highland would have incurred an expense under the lawful alternative, it suffered no incremental harm and the fee cannot be shifted. *Id.* A court may not use litigation misconduct to leverage a compensatory sanction into punishment. *Id.* at 176.

The Opinion here nevertheless attributes ***every*** post-withdrawal fee to HCRE because "HCRE's failure to propose withdrawal language caused the denial" and the resulting judgment gave Highland "ironclad" protection. Op. 12–13. That asks whether HCRE accepted Highland's preferred language, not which fees the identified misconduct caused. It also conflicts with the record because HCRE agreed to withdraw with prejudice, waive appeal, recognize Highland's existing interest, and abandon any future challenge based on the proof-of-claim theories. ROA.3297–3308. Further, Bankruptcy Rule 3006 authorized the

bankruptcy court to impose conditions protecting Highland, and a with-prejudice disposition ordinarily has claim-preclusive effect. *United States v. Kellogg (In re West Texas Marketing Corp.)*, 12 F.3d 497, 500–02 (5th Cir. 1994).

The remaining dispute concerned Highland's demand for an immutable ownership percentage notwithstanding future events under the LLC agreement. ROA.3305–07. Highland did not obtain that relief at trial; the disallowance order simply rejected the POC. ROA.11674–78. The bankruptcy court also found only that both sides failed to reach mutually acceptable language. ROA.596–97. The proper counterfactual therefore asks what Highland would have spent ***if the bankruptcy court had imposed appropriate conditions reflecting HCRE's concessions***. Neither court posed, much less answered, that question. The Opinion instead uses the withdrawal request as a temporal dividing line, which *Goodyear* expressly rejects as a substitute for but-for causation. 581 U.S. at 113–15.

That error alone creates a fair prospect of reversal. At minimum, the Supreme Court will likely vacate the approximately $375,000 post-withdrawal award and remand for the causal analysis *Goodyear* requires.

Because any amount not caused by the misconduct is punitive rather than compensatory, the error concerns the lawful boundary of the bankruptcy court's inherent power, not a discretionary fee estimate.

The "entity's subjective bad-faith ruling" provides an independent basis for the Supreme Court to reverse. Inherent-power sanctions require subjective bad faith, not negligence, inadequate diligence, or a claim that ultimately fails. *In re Moore*, 739 F.3d at 729–33; *BDT Prods.*, 602 F.3d at 753–54. The Opinion moves from Dondero's lack of personal investigation to HCRE's subjective bad faith without addressing what HCRE's other officer and counsel did before filing. It also relies on later testimony defeating theories developed six months after the qualified claim was filed. Op. 8–9. At most, that evidence creates suspicion about Dondero's diligence. It does not establish "without hesitancy" that ***HCRE*** knowingly abused the judicial process when it filed the POC.

The litigation-conduct findings do not cure that defect. The original withdrawal inference rested on the materially incorrect premise that HCRE sought withdrawal immediately after receiving Highland's 4,000-page production. The substituted opinion now acknowledges that HCRE made that production. Op. 5, 10. HCRE also explained why it sought

withdrawal and offered sweeping concessions to end the dispute. ROA.2205; ROA.3297–3308. And although the Opinion discusses HCRE's opposition to disqualification, the bankruptcy court awarded no fees from that dispute. Op. 12 n.4. That conduct cannot establish *Goodyear* causation for this award.

A majority of the Supreme Court therefore could conclude that the Opinion crossed both limits governing inherent-power sanctions: it affirmed subjective bad faith without clear and convincing proof attributable to the entity, and it affirmed compensatory fees without the required but-for causal determination. The fair-prospect requirement is therefore satisfied.

**3. HCRE will suffer irreparable harm absent a stay.**

Without a stay, the mandate permits immediate enforcement of an $825,940.55 sanctions judgment before the Supreme Court can consider HCRE's petition. HCRE recognizes that payment of money alone ordinarily does not establish irreparable harm. The injury here, however, is not limited to temporary loss of funds. The judgment rests on a published adjudication that HCRE knowingly abused the judicial process. Once the mandate takes effect, Highland may invoke that final

sanctions judgment in other proceedings while Supreme Court review remains pending. A later repayment cannot undo those interim collateral consequences.

The same timing concern informed the relief in *Brown*: The Court recalled and stayed an issued mandate because the mandate's immediate consequences could not adequately be remedied after the fact. 2026 WL 2618462 at *1–2. Here too, allowing enforcement first and review later would deny HCRE meaningful protection from consequences that extend beyond the amount of the award. A limited stay would prevent those consequences while leaving the judgment fully secured.

### C. Good cause and the equities favor a limited, secured stay.

Good cause and the equities also favor the limited recall and stay requested. HCRE has acted promptly. It timely sought rehearing and filed this motion within days of the substituted opinion and same-day mandate. Its petition for certiorari is due December 15, 2026, and HCRE intends to file within that period. The requested stay would last no longer than Rule 41(d)(2) permits and would terminate if certiorari is denied.

Nor will a stay prejudice Highland. HCRE has deposited the full sanctions amount into the Court's registry and has agreed with opposing

counsel to "top off" that amount with additional accrued interest. The judgment, interest, and costs therefore will remain protected throughout Supreme Court review. *See* Fed. R. App. P. 41(d)(3). There is no Highland reliance interest that would be disturbed by maintaining the status quo for the next few months.

The equities thus reinforce the three *Hollingsworth* factors. Denying a stay would expose HCRE to immediate enforcement and collateral use of a contested bad-faith judgment. Granting one would preserve Supreme Court review while leaving Highland fully secured. That is good cause to recall and stay the mandate.

## IV. CONCLUSION

Based on the foregoing, HCRE respectfully requests that the Court recall the mandate and stay it pending HCRE's timely filing of a petition for a writ of certiorari and the Supreme Court's final disposition of that petition. The stay should terminate automatically if certiorari is denied and, if certiorari is granted, upon issuance of the Supreme Court's judgment. HCRE is willing to provide any security the Court directs.

Dated: September 23, 2026

Respectfully Submitted,

PILLSBURY WINTHROP SHAW PITTMAN LLP

*/s/ Amy L. Ruhland*

Amy L. Ruhland
Texas Bar No. 24043561
amy.ruhland@pillsburylaw.com
Benjamin Bernell
Texas Bar No. 24059451
ben.bernell@pillsburylaw.com
401 W 4th Street, Suite 3200
Austin, TX 78701
Tel.: (512) 580-9600

*Attorneys for Appellant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 23, 2026, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

*/s/ Amy L. Ruhland*
Amy L. Ruhland

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2)(A) as it contains 3,553 words, excluding the portions of the document exempted by Rule 32(f).

I further certify that this document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

*/s/ Amy L. Ruhland*
Amy L. Ruhland

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Appellant met and conferred with counsel Appellee concerning the relief requested in this Motion. Counsel for Appellee confirmed that Appellee is opposed to the relief requested herein.

*/s/ Amy L. Ruhland*
Amy L. Ruhland