**No. 25-11185**

# United States Court of Appeals for the Fifth Circuit

IN RE HIGHLAND CAPITAL MANAGEMENT, L.P., *Debtor*,

NEXPOINT REAL ESTATE PARTNERS, LLC (F/K/A HCRE PARTNERS, LLC)
*Appellant*,

v.

HIGHLAND CAPITAL MANAGEMENT, L.P.,
*Appellee.*

On Appeal from the United States District Court
for the Northern District of Texas, Dallas Division
Case No. 3:24-cv-01479-S

## PETITION FOR REHEARING EN BANC

Amy L. Ruhland
Ryan J. Sullivan
PILLSBURY WINTHROP SHAW PITTMAN LLP
amy.ruhland@pillsburylaw.com
ryan.sullivan@pillsburylaw.com
401 W. 4th St., Suite 3200
Austin, Texas 78701
Tel.: (512) 580-9600

Michael Burrage
WHITTEN BURRAGE
mburrage@whittenburragelaw.com
512 N. Broadway Ave., Suite 300
Oklahoma City, OK 73102
Tel.: (405) 516-7800

*Counsel for Appellant NexPoint Real Estate Partners, LLC (f/k/a HCRE Partners, LLC)*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following persons have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate their possible recusal or disqualification:

Appellant:
NexPoint Real Estate Partners, LLC f/k/a HCRE Partners, LLC

Counsel for Appellant in the Fifth Circuit:
Amy L. Ruhland
Benjamin L. Bernell
Ryan J. Sullivan
Pillsbury Winthrop Shaw Pittman LLP

Michael Burrage
Whitten Burrage

Counsel for Appellant in the district court proceedings:
Amy L. Ruhland
Pillsbury Winthrop Shaw Pittman LLP
Charles W. Gameros Jr.
Douglas Wade Carvell
Hoge & Gameros, LLP

Appellee:
Highland Capital Management, L.P.

Counsel for Appellee:
John A. Morris
Jeffrey N. Pomerantz
Gregory V. Demo
Jordan A. Kroop
Hayley R. Winograd
Pachulski Stang Ziehl & Jones LLP
Zachery Z. Annable
Melissa S. Hayward

Hayward PLLC

*/s/ Michael Burrage*
Michael Burrage
Counsel of Record for Appellant

## FED. R. APP. P. 40(b)(2) STATEMENT

The panel decision:

A. Conflicts with Fifth Circuit decisions requiring clear and convincing proof, not a preponderance of the evidence, that the sanctioned party itself deliberately abused the judicial process. *In re Moore*, 739 F.3d 724, 729–33 (5th Cir. 2014); *Crowe v. Smith*, 261 F.3d 558, 563–66 (5th Cir. 2001); *Maguire Oil Co. v. City of Houston*, 143 F.3d 205, 209–12 (5th Cir. 1998).

B. Conflicts with authoritative decisions of other circuits concerning the proof necessary to infer subjective bad faith. *See, e.g.*, *BDT Products, Inc. v. Lexmark International, Inc.*, 602 F.3d 742, 752–54 (6th Cir. 2010).

C. Involves an exceptionally important question because its standard will discourage creditors from preserving contingent or incompletely investigated claims.

# TABLE OF CONTENTS


CERTIFICATE OF INTERESTED PERSONS ........................................ i
FED. R. APP. P. 40(b)(2) STATEMENT ................................................ iii
TABLE OF AUTHORITIES ........................................................................ v
ISSUES PRESENTED ON REHEARING ............................................ vii

I. INTRODUCTION .................................................................... 1
II. STATEMENT OF PROCEEDINGS .......................................... 4
III. STATEMENT OF FACTS ......................................................... 5
IV. ARGUMENT ............................................................................ 8
  A. The panel decision conflicts with this Court's prior decisions by lowering the threshold for inherent-power sanctions ......................................................................... 8
  B. The panel's standard conflicts with decisions of other Circuits ................................................................................ 13
  C. The panel's decision involves an exceptionally important question because its standard will discourage creditors from preserving claims ........................................................ 16
V. CONCLUSION ........................................................................ 18

CERTIFICATE OF SERVICE ................................................................ 20
CERTIFICATE OF COMPLIANCE ........................................................ 20

## TABLE OF AUTHORITIES

### Cases

*BDT Products, Inc. v. Lexmark International, Inc.*,
602 F.3d 742 (6th Cir. 2010) .................................................. iii, 14–15

*Cadle Co. v. Moore (In re Moore)*,
739 F.3d 724 (5th Cir. 2014) .................................................. iii, 9

*Crowe v. Smith*,
151 F.3d 217 (5th Cir. 1998) .................................................. 9

*Crowe v. Smith*,
261 F.3d 558 (5th Cir. 2001) .................................................. iii, 9

*FTC v. Kuykendall*,
466 F.3d 1149 (10th Cir. 2006) .................................................. 14–15

*Goldin v. Bartholow*,
166 F.3d 710 (5th Cir. 1999) .................................................. 1, 9

*Knupfer v. Lindblade (In re Dyer)*,
322 F.3d 1178 (9th Cir. 2003) .................................................. 15

*Maguire Oil Co. v. City of Houston*,
143 F.3d 205 (5th Cir. 1998) .................................................. iii, 9

*Matter of Briscoe Enters., Ltd., II*,
994 F.2d 1160 (5th Cir. 1993) .................................................. 10

*Purchasing Power, LLC v. Bluestem Brands, Inc.*,
851 F.3d 1218 (11th Cir. 2017) .................................................. 15

### Statutes and Rules

11 U.S.C. § 101(5)(A) .................................................. 16

28 U.S.C. § 2412(b) .................................................. 14

Fed. R. App. P. 32(a)(5), (6) .................................................. 20

Fed. R. App. P. 32(f) .................................................. 20

Fed. R. App. P. 35(c) (former rule) .................................................. 5

Fed. R. App. P. 40(b)(2) .................................................. iii

Fed. R. App. P. 40(b)(2)(A) .......... 13
Fed. R. App. P. 40(b)(2)(C) .......... 16
Fed. R. App. P. 40(b)(2)(D) .......... 18
Fed. R. App. P. 40(d)(1) .......... 5
Fed. R. App. P. 40(d)(3) .......... 20
Fed. R. Bankr. P. 3003 .......... 18
Fed. R. Bankr. P. 3003(c)(2) .......... 16–17
Fed. R. Bankr. P. 3003(c)(3) .......... 17

**Other Authorities**

Fed. R. App. P. 40 advisory committee's note to 2024 amendment .......... 5

## ISSUES PRESENTED ON REHEARING

I. Whether the panel lowered the "clear and convincing" standard for inherent-power sanctions by affirming sanctions against an entity whose corporate officer relied on advice of counsel and did not personally investigate the reliability of outside counsel's advice to file a contingent proof of claim and outside counsel's advice to later withdraw it.

II. Whether the panel lowered the "clear and convincing" standard for inherent-power sanctions to a preponderance standard by affirming sanctions against an entity based on what the entity's corporate officer "likely" knew.

## I. INTRODUCTION

Two years ago, a bankruptcy judge imposed sanctions on HCRE for bad-faith litigation conduct. Those sanctions were imposed because: (1) a former bankruptcy judge's law firm advised executives at HCRE to file a proof of claim in the Highland bankruptcy, and they did; (2) other counsel later advised withdrawing it, and HCRE sought to do so; and (3) James Dondero, who oversees a multibillion-dollar business empire that includes HCRE, could not, years later, remember personally reviewing the papers relevant to that proof of claim handled by both outside counsel and HCRE's vice president. But these facts, such as relying on the advice of counsel, hardly support a finding of bad faith, which requires that "the 'very temple of justice . . . [be] defiled' by the sanctioned party's conduct." *Goldin v. Bartholow*, 166 F.3d 710, 722–23 (5th Cir. 1999).

By affirming the bankruptcy judge's bad-faith finding on these facts, the panel effectively changed settled Fifth Circuit precedent on what it takes to meet the "clear and convincing" standard by reducing it to the preponderance standard. Specifically, a bankruptcy court's inherent-power sanctions require clear and convincing evidence of bad faith, evidence sufficient to produce a firm conviction "without

hesitancy." But the panel's decision rests on a finding that Dondero "likely" knew the proof of claim was false, and it effectively ignores that HCRE's vice president and outside counsel reviewed and advised on both the filing and attempted withdrawal of that proof of claim. In fact, the panel drew a negative inference from Dondero's inability, years later, to recall his personal diligence on a single proof of claim among dozens that arose out of the Highland bankruptcy; trial testimony concerning a legal theory not asserted in the original claim; and HCRE's effort to protect assets it believed belonged to it by attempting to preserve future rights. That record does not clearly and convincingly establish that *HCRE*—which filed the claim, not Dondero—deliberately abused the judicial process and "defiled" "the temple of justice."

Indeed, bankruptcy law requires creditors to preserve contingent and unliquidated claims by a fixed bar date, often before discovery permits a complete investigation. If a court may infer bad faith from an incomplete personal investigation by an apex official relying on experienced outside counsel (including a former bankruptcy judge), a later-developed theory's failure, and the claimant's economic motive,

then all creditors are potentially sanctionable for acting to protect their interests in a manner the Bankruptcy Code expressly permits.

This Court should ensure that the demanding legal standards for imposing sanctions are not relaxed by the panel decision. The importance of doing so is demonstrated by the circumstances of this case. The sanctions were imposed to punish HCRE, an entity of Dondero's, who also founded the debtor, Highland. Highland entered bankruptcy in Delaware in 2019 when it faced an unexpected $110 million legal judgment and needed a few months to sell a handful of assets to satisfy it. Dondero was advised by the very lawyers seeking these sanctions now that the bankruptcy would be limited and prompt.

But then the case was transferred to a bankruptcy court that demanded that Dondero be removed from managing Highland during the bankruptcy, prior to any determination of claims or solvency. (After multiple efforts at recusal, in part due to novels written by the judge depicting a villain with striking similarities to Dondero, the bankruptcy judge eventually recused herself.) Highland's new management portrayed Highland as insolvent and in need of a protracted liquidation. That picture of insolvency was false; Highland remains solvent and had

more than enough assets to pay its creditors (even after they inflated their claims), with much left over.

An essential protection against this problem is the high standard for imposing sanctions—including proof of bad faith by clear and convincing evidence—and appellate review that rigorously enforces that standard. The panel's relaxation of the standard for sanctions is a double threat, in the context of this case, to the integrity of the judicial system.

The Court should grant rehearing en banc.

## II. STATEMENT OF PROCEEDINGS

In March 2024, the bankruptcy court issued a Sanctions Order, concluding that HCRE "acted in bad faith and willfully abused the judicial process in filing, prosecuting, and then pursuing an eleventh-hour withdrawal of its Proof of Claim." ROA.582. The bankruptcy court awarded attorneys' fees of $825,940.55, including approximately $375,000 in fees incurred after HCRE sought to withdraw the proof of claim. ROA.17–48.

The district court affirmed. ROA.17591–97. In August 2026, this Court affirmed in a published opinion. Dkt. 60-1. HCRE timely sought panel rehearing. Dkt. 65.

On September 16, the panel denied rehearing, withdrew the original opinion, and entered a substituted opinion. Dkt. 74-1. The substituted opinion affirmed the sanctions in full. Although Rule 40(d)(1) gave HCRE 14 days from entry of that amended decision to seek rehearing en banc, the mandate issued the same day. Dkt. 75-2. HCRE's pending motion asks the Court to recall and stay the mandate pending Supreme Court review. Dkt. 78.

This petition is timely under Rule 40(d)(1). Fed. R. App. P. 40(d)(1); *see also* Fed. R. App. P. 40 advisory committee's note to 2024 amendment ("The amended Rule 40(d)(1) preserves the existing time limit, after the initial entry of judgment, for filing . . . a petition for rehearing en banc (previously found in Rule 35(c)). It adds new language extending the same time limit to a petition filed after a panel amends its decision, on rehearing or otherwise"). Because the mandate issued before the new rehearing period expired, HCRE respectfully requests that the Court recall the mandate as necessary to consider this petition.

## III. STATEMENT OF FACTS

In 2018, Highland and HCRE undertook "Project Unicorn," a transaction involving 26 multifamily properties. Substituted Opinion,

Dkt. 74-1 ("Op.") at 2. They formed SE Multifamily Holdings, LLC to hold the investments. Op. 2. An amended agreement allocated 47.94% to HCRE, 46.06% to Highland, and 6% to an unaffiliated investor. Op. 2–3.

HCRE maintained that those percentages did not reflect the parties' relative economic contributions or their expectation that allocations would change as the transaction evolved. Highland's October 2019 bankruptcy transferred its control to an independent board and, according to HCRE, prevented contemplated adjustments and impeded distributions. ROA.14923–25; ROA.14946–47.

Facing the claims bar date, HCRE filed Proof of Claim No. 146 (the "POC") in April 2020. Op. 4. The POC demanded no liquidated sum and asserted no established right to Highland's interest. ROA.1218. The POC said HCRE "may be entitled" to distributions and "may have a claim," that HCRE had requested information "to ascertain the exact amount," and that the process was "on-going." ROA.1218. Former Bankruptcy Judge D. Michael Lynn's firm prepared the claim and attachment. HCRE relied on outside counsel's advice that the POC was needed to preserve its interests. ROA.16815–24. Matt McGraner—HCRE's vice president and secretary and one of the two officers coordinating Project Unicorn—

reviewed the "whole gamut" of HCRE's financial records and agreements, coordinated with in-house counsel, and directed counsel to provide information to the filing lawyers. ROA.14919–20.

Highland objected to HCRE's POC as part of an omnibus objection to 63 claims. Six months later, HCRE's newly retained counsel responded to Highland's objection, arguing that the organizational documents might warrant reformation, rescission, or modification based on mutual mistake, lack of consideration, or failure of consideration. ROA.16644. The response expressly stated that HCRE needed "additional discovery" to assess those theories. ROA.16645.

After multiple rounds of discovery and separate litigation over counsel's disqualification, HCRE moved to withdraw the POC based on "the cost and uncertainty of continuing to pursue the Claim in the face of Debtor's objection." ROA.2205.

At the hearing, HCRE repeatedly agreed to disposition with prejudice, waived appeal, recognized Highland's existing interest in SE Multifamily, and waived any future challenge based on counsel's legal theories. ROA.3297–3309. The remaining disagreement concerned whether HCRE must guarantee Highland a permanently immutable

46.06% interest regardless of future events under the LLC agreement. ROA.3305–07. The bankruptcy court invited the parties to agree on language for a proposed order granting the withdrawal, but as the bankruptcy court put it, "[a]pparently, counsel were unable to reach an agreement on the terms of an agreed order." ROA.35 n.48.

The bankruptcy court denied the requested withdrawal and required a November 2022 trial. ROA.35 n.48. It disallowed the claim in April 2023. ROA.19. Highland then sought inherent-power sanctions, and the bankruptcy court awarded $825,940.55, including approximately $375,000 in fees incurred after HCRE sought to withdraw the POC. ROA.17–48.

## IV. ARGUMENT

### A. The panel decision conflicts with this Court's prior decisions by lowering the threshold for inherent-power sanctions

The panel deviated from this Court's clear-and-convincing threshold for inherent-power sanctions by setting the bar much lower based on a probability threshold. In other words, the panel accepted an inference of knowledge at a preponderance-of-the-evidence level of certainty in a regime that requires clear and convincing evidence. Its

opinion that sanctions should be upheld because it was "likely" Dondero "knew" the proof of claim was baseless is not enough. *See, e.g.*, *Crowe v. Smith*, 261 F.3d 558 (5th Cir. 2001).

"[T]he standard for the imposition of sanctions using the court's inherent powers is extremely high." *Goldin*, 166 F.3d at 722–23. A court therefore may invoke its inherent power only after finding that the sanctioned party acted in bad faith or willfully abused the judicial process—e.g., "defiled the temple," *id.*—and only if clear and convincing evidence supports that finding, *Cadle Co. v. Moore (In re Moore)*, 739 F.3d 724, 729–30 (5th Cir. 2014). The evidence must be sufficiently "direct and weighty" to produce a clear conviction, "without hesitancy," that the facts establishing bad faith are true. *Crowe*, 261 F.3d at 565. Contradictory evidence, uncertain (e.g., merely "likely") circumstances, and competing inferences cannot satisfy that burden. *Id.* at 565–66. Nor may a court infer bad faith merely because a litigant advanced a claim that ultimately failed. *Maguire Oil Co. v. City of Houston*, 143 F.3d 205, 209–12 (5th Cir. 1998). A court must "probe the record in detail" to determine whether the underlying facts are legally sufficient to support the finding of bad faith. *Crowe v. Smith*, 151 F.3d 217, 236 (5th Cir. 1998).

The panel correctly recited these principles. Op. 6–7. But the panel did not identify clear and convincing evidence that HCRE deliberately abused the judicial process when it filed the POC. Instead, it reasoned that Dondero did not personally investigate the claim, that testimony given years later defeated legal theories developed after the claim was filed, and that HCRE wanted to protect assets it believed belonged to it. Op. 8–9. Those circumstances do not clearly and convincingly establish that HCRE "defiled the temple."

The panel found that Dondero filed the claim "likely knowing it was false." Op. 9. "Likely" is the language of the preponderance standard, which looks at whether something is more likely than not. *See Matter of Briscoe Enters., Ltd., II*, 994 F.2d 1160, 1164 (5th Cir. 1993). "Likely" is not clear and convincing proof. *Id.* ("'Preponderance' means that it is more likely than not. 'Clear and convincing' is a higher standard and requires a high probability of success."). It acknowledges uncertainty about the central fact necessary to sustain the sanction. And the panel never identifies what statement in the proof of claim Dondero supposedly knew was false, offering only a general, conclusory assertion that he knew it was "baseless." Op. 8–9. The claim demanded no fixed amount

and asserted no established entitlement to Highland's interest in SE Multifamily. It said only that HCRE "may be entitled" to distributions and therefore "may have a claim" against Highland. ROA.1218. It added that HCRE had requested information to determine the claim's amount and that the process was "on-going," consistent with the contingent nature of the proof of claim. *Id.*

The panel nevertheless treated Dondero's inability to recall his personal diligence, in spite of evidence of the vice president's and counsel's diligence, as proof of HCRE's bad faith. Dondero testified that he could not recall personally reviewing documents or performing due diligence before authorizing the filing. Op. 8. But the sanctioned party is HCRE, not Dondero, and HCRE diligently prepared the filings with outside counsel. McGraner—HCRE's vice president and secretary and the other officer coordinating Project Unicorn—testified that he reviewed the "whole gamut" of HCRE's financial records and agreements, worked with in-house counsel, and directed counsel to provide information to the outside bankruptcy lawyers. ROA.14919–20. Experienced outside counsel then prepared the POC and its attachment, and HCRE relied on counsel's advice that filing was necessary to preserve its potential rights.

ROA.16815–24. That is not clear and convincing proof that HCRE filed without investigation.

The panel also relied on hindsight. It reasoned that Dondero and McGraner later admitted that the amended LLC agreement reflected the parties' expectations and therefore "admitted that there was no reason to reform the agreement." Op. 8–9. But the POC did not assert a developed claim for reformation. It preserved a potential claim concerning distributions and expressly stated that the investigation remained ongoing, reflecting HCRE's and its officers' state of mind at the time as well as the contingent nature of the POC. ROA.1218. Trial testimony that ultimately defeated later-developed theories does not establish that HCRE knew the earlier, qualified POC was false when filed.

Finally, the panel found an improper motive because HCRE sought to protect SE Multifamily assets from Highland's creditors. Op. 9. But protecting a claimed economic interest is the ordinary purpose of filing a POC.

Nor can the panel's separate criticisms of HCRE's litigation conduct cure the defect. Opposition to disqualification and an attempted withdrawal do not in and of themselves supply clear and convincing

evidence that the POC was filed in subjective bad faith. If they did, one would expect a wealth of authority stating as much. Nor do those activities sustain an unsegregated award of every fee incurred litigating the claim. And because the bankruptcy court did not segregate fees caused by the disqualification and withdrawal disputes from fees incurred litigating the claim's merits, those events cannot sustain the unsegregated award.

The panel's reasoning thus permits a finding of bad faith when an expressly contingent claim later fails, one officer cannot recall personally investigating it, and the claimant hoped to protect its economic interests. None of those circumstances, alone or together, clearly and convincingly establishes deliberate abuse of the judicial process, let alone "defiling the temple." By treating them as sufficient, the panel lowers the governing standard. Rehearing en banc is therefore warranted under Rule 40(b)(2)(A).

### B. The panel's standard conflicts with decisions of other Circuits

The panel's approach conflicts with the bad-faith fee-shifting standards applied in other Circuits, which require proof beyond a claim's lack of merit and the filer's asserted failure to investigate.

The Sixth Circuit separates a claim's merit from the claimant's purpose in asserting it. Under *BDT Products, Inc. v. Lexmark International, Inc.*, a court may impose inherent-power sanctions for pursuing a meritless claim only if: (1) the claim lacked merit, (2) the party knew or should have known that it lacked merit, and (3) the party pursued it for an improper purpose. 602 F.3d 742, 752–53 (6th Cir. 2010). A court must find "something more" than that a party knowingly pursued a meritless claim. *Id.* at 753. An improper purpose cannot be inferred merely from the same evidence that shows a claim lacked merit. *Id.* at 753–54. Similarly, the Tenth Circuit requires "both a complete lack of color and an improper purpose." *FTC v. Kuykendall*, 466 F.3d 1149, 1153 (10th Cir. 2006) (applying the common-law bad-faith exception through EAJA § 2412(b)).

The panel did just what *BDT Products* and *Kuykendall* prohibit. It relied on later testimony to conclude that HCRE's reformation theory lacked merit and that Dondero likely knew the qualified proof of claim was false. Op. 8–9. It concluded that HCRE knew its claim lacked merit and treated HCRE's attempt to obtain the relief contemplated by that claim as the additional improper purpose. Under *BDT Products* and

*Kuykendall*, that circular reasoning cannot support inherent-power sanctions. A meritless claim, without independent proof that the claimant invoked the courts to accomplish an abusive objective, is not enough.

The Eleventh Circuit imposes an equally demanding limitation, requiring direct evidence of subjective bad faith or evidence of conduct "so egregious that it could only be committed in bad faith." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223–25 (11th Cir. 2017) (after removal, district court erred by issuing sanctions for failure to fully investigate LLC's membership). Recklessness alone does not suffice. *Id.* at 1225. Similarly, the Ninth Circuit, in a bankruptcy context, requires "something more egregious than mere negligence or recklessness." *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1196 (9th Cir. 2003).

As to its prefiling investigation, there is no direct evidence that HCRE filed a claim it knew was false. HCRE presented evidence that its officer reviewed relevant records and coordinated with experienced bankruptcy counsel. *See, e.g.*, ROA.1218; ROA.14919–20; ROA.16815–24. Those facts support a straightforward good-faith explanation for the

investigation undertaken, even if Dondero did not personally review documents and the theories developed later proved unsuccessful.

Rehearing is necessary under Rule 40(b)(2)(C) to ensure that the improper-purpose requirement performs independent work rather than merely restating knowing meritlessness. Rehearing is therefore warranted.

### C. The panel's decision involves an exceptionally important question because its standard will discourage creditors from preserving claims

The consequences of the panel's rule extend well beyond this sanctions award. The Bankruptcy Code and Rules require creditors to preserve potential claims at a stage when the underlying facts may remain uncertain and merits discovery may not have begun. A rule that permits sanctions when a qualified claim later fails will deter creditors from doing what the bankruptcy system requires them to do.

Congress deliberately defined "claim" to include rights to payment that are "unliquidated," "contingent," "unmatured," or "disputed." 11 U.S.C. § 101(5)(A). In a Chapter 11 case, a creditor whose claim is unscheduled—or scheduled as disputed, contingent, or unliquidated—"must file a proof of claim." Fed. R. Bankr. P. 3003(c)(2). Failure to do so

means the claimant "will not be treated as a creditor for that claim for voting and distribution." *Id.* The court sets a bar date, after which late claims are permitted only in limited circumstances. Fed. R. Bankr. P. 3003(c)(3). A potential creditor therefore cannot wait until discovery concludes, every witness has testified, and counsel has refined every available legal theory. It must act by the bar date or risk forfeiting its rights.

Thus, the applicable statutes and rules anticipate that creditors must file based on the information reasonably available at the time and then use the claims-resolution process to test the relevant facts and legal theories. That is especially true when the debtor possesses information needed to determine whether a claim exists or how much it is worth. Under the panel's reasoning, however, a creditor cannot safely rely on an investigation conducted collectively through its officers and lawyers. Nor can it safely preserve an expressly contingent claim if later discovery might prove the claim unsuccessful. The panel's reasoning creates a double bind for creditors: forgo their right to preserve a claim that requires additional investigation, or file and risk a finding of bad faith if the claim ultimately fails.

Because the opinion places the threat of inherent-power sanctions in direct tension with the Code's recognition of contingent claims and Rule 3003's forfeiture-backed filing requirement, the question is exceptionally important and warrants rehearing under Rule 40(b)(2)(D).

## V. CONCLUSION

HCRE respectfully requests that the Court recall the mandate as necessary to consider this timely petition, grant rehearing en banc, vacate the panel opinion and judgment, reverse the district court's judgment, and vacate the sanctions order.

September 30, 2026

Respectfully Submitted,

*<u>/s/ Michael Burrage</u>*
Michael Burrage, OBA No. 1350
WHITTEN BURRAGE
512 N. Broadway Ave., Ste. 300
Oklahoma City, OK 73102
T. (405) 516-7800
F. (405) 516-7859
mburrage@whittenburragelaw.com

PILLSBURY WINTHROP SHAW
PITTMAN LLP
Amy L. Ruhland
amy.ruhland@pillsburylaw.com
Ryan J. Sullivan
ryan.sullivan@pillsburylaw.com
401 W 4th Street, Suite 3200
Austin, TX 78701
Tel.: (512) 580-9600

*Attorneys for NexPoint Real Estate Partners, LLC (f/k/a HCRE Partners, LLC)*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 30, 2026, a true and correct copy of this document was served electronically via the Court's CM/ECF system on the parties registered or otherwise entitled to receive electronic notices in this case.

/s/ *Michael Burrage*
Michael Burrage

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the type-volume limitations of Federal Rule of Appellate Procedure 40(d)(3) as it contains 3,533 words, excluding the portions of the document exempted by Rule 32(f).

I further certify that this document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

/s/ *Michael Burrage*
Michael Burrage